Cary B. Colaianni
Boise City Attorney
Scott B. Muir, ISBN 4229
Assistant City Attorney
J. Patrick Riceci, ISBN 1886
Assistant City Attorney
BOISE CITY ATTORNEY'S OFFICE
150 N. Capitol Blvd.
P.O. Box 500
Boise, Idaho  83701-0500
Telephone:  (208) 384-3870
Facsimile:  BoiseCityAttorney@cityofboise.org

Robert A. Anderson, ISB #2124
Phillip J. Collaer, ISB #3447
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone:   (208) 344-5800
Facsimile:   (208) 344-5510
E-Mail:  randerson@ajhlaw.com
          pcollaer@ajhlaw.com

Attorneys for Defendant City of Boise

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMUNITY HOUSE, INC., MARLENE K. SMITH, GREG A. LUTHER, MAY D. BANTA, | Case No. CIV 05-283-S-BLW |
| Plaintiffs, | MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| vs. | |
| CITY OF BOISE, IDAHO, DAVID H. BIETER, Mayor, BOISE CITY COUNCIL; MARYANN JORDAN, ELAINE CLEGG, | |

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1

VERNON BISTERFELDT, DAVID
EBERLE, JEROME MAPP, and ALAN
SHEALY, Boise City Council Members;
BRUCE CHATTERTON, Director,
Planning and Development Services,
JIM BIRDSALL, Manager, Housing and
Community Development,

                    Defendant(s).

In the pending Motion, the Plaintiffs seek a preliminary injunction to prevent the City from ceasing its operation of a homeless shelter known as Community House. Plaintiffs also ask the Court to prohibit the City of Boise from leasing the physical structure to the Boise Rescue Mission, despite the fact the Mission intends to upgrade the facility and operate it as a homeless and low income shelter. **See** Affidavit of Bill Roscoe, Exhibit ____.

In order to prevail on their Motion, the Plaintiffs must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and that the balance of hardships tips in their favor. **See** ***A&M Records, Inc. v. Napster, Inc.,*** 239 F.3d 1004 (9th Cir. 2001). Each alternative requires an examination both potential merits of the asserted claims and the harm or hardships faced by the parties. ***Sammartano v. First Judicial District Court,*** 303 F.3d 959 (9th Cir. 2002).

In the sections below, Defendants will establish that the Plaintiffs have failed to meet their burden to warrant the issuance of a preliminary injunction. Specifically, Community House, Inc. lacks standing in order to assert the claims

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2

being sought in the Complaint.  Additionally, the City's decision to lease the facility which previously housed Community House was not discriminatory.   Finally, because the City has repaid all federal funds which were received pursuant to the community block grant, any federal regulatory restrictions which previously were placed on the building no longer exist.  In short, the City is not engaging in any illegal or unlawful conduct which would warrant of an issuance of an injunction.

## I.

### PLAINTIFF COMMUNITY HOUSE, INC. LACKS STANDING

The threshold question in every federal case, determining the power of the court to entertain the suit, is whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Article III. *Warth v. Seldin*, 422 U.S. 490 (1975).  In addition, "the prudential doctrine of standing has come to encompass 'several judicially self-imposed limits on the exercise of federal jurisdiction'."  *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996).  With respect to the constitutional component of standing, either individual or associational standing may permit federal court jurisdiction.

A. <u>CHI lacks individual standing.</u>

To establish individual or traditional standing, Plaintiff Community House, Inc. ("CHI") must show that:  (1) CHI suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized (injury affects CHI in a personal and individual way), and (b) actual or imminent, not conjectural or

hypothetical[1]; (2) a causal connection between the injury and the conduct complained of–-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

CHI is unable to establish any actual or threatened injury traceable to Defendant's alleged violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq* ("FHA") and the Uniform Relocation Act, 42 USC § 4601, *et seq*. (URA) or the Housing and Community Development Act, 42 USC § 5301, *et seq.* (HDCA).  As previously discussed in *Defs' Resp. to Pltfs' Mot. For TRO and/or Prel. Inj. at pp. 6-7* (Sept. 8, 2005), all Plaintiffs in this matter lack individual standing.  Specific to CHI, the record is devoid of any assertion as to how CHI has been aggrieved by alleged discrimination in violation of federal law.  Rather, Plaintiffs detail only the plight of homeless individuals who no longer reside at Community House with no reference whatsoever to any harm or injury suffered by CHI.[2]  Clearly, CHI may not properly establish individual standing in this matter.

---

[1] The injury in fact test requires more than an injury to a cognizable interest, rather, the party seeking review must himself be among the injured. *Lujan*, *supra,* 504 U.S. 15 563, 112 W. C. at 2137.
[2] The injury in fact test requires more than an injury to a cognizable interest, rather, the party seeking review must himself be among the injured.  Contrary to the assertions of CHI, the former residents and guests of Community House have not been abandoned and are not without alternative housing.  The residents have been relocated to housing which they chose.  The City provided financial and logistical assistance for this move.  <u>See</u> Affidavit of Bruce Chatterton, ¶¶10-13. Temporary housing is available to the guests at facilities operated by the Boise Rescue Mission and the Salvation Army.  <u>See</u> Affidavit of Bill Roscoe, ¶4.  <u>See also</u> Affidavit of Bruce Chatterton, ¶12.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4

B. CHI lacks associational standing.

Because CHI lacks individual standing and, therefore, must demonstrate associational standing in order for this court to exercise jurisdiction over the present matter.

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members . . .[t]he possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case of controversy." *Warth*, 422 U.S. at 511. Thus CHI would have standing to bring suit on behalf of its members if (1) its members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 181 (2000).

With respect to the first element, it must be determined whether CHI consists of members who would have standing to bring the same suit. *New York State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 9 (1988). CHI is a non-profit corporation that administratively dissolved on September 9, 2004 but subsequently reinstated on July 6, 2005. <u>See</u> Aff. of Phillip J. Collaer. In its reinstated form, CHI is presently composed of Susan Cobley as President and Jill Van Heel as Secretary. *Id.* There is no evidence of and there has been no affirmative assertion that CHI has <u>any</u> members. The facts in the record fall far

short of even suggesting standing may exist pursuant to an "indicia of membership" theory.  <u>See</u>, e.g., ***Friends of the Earth, Inc. v. Chevron Chemical Co.,*** 129 F.3d 826, 829 (5th Cir. 1997)(court accepted "indicia" theory by looking at who elected the governing body, who financed the organization, whether self-professed members voluntarily associated themselves with the organization, and whether there was a clearly articulated and understandable membership structure).  The lack of members is fatal to any assertion of associational standing and, therefore, CHI's claims are not properly before this court.

II.

**CHI HAS FAILED TO ESTABLISH DISCRIMINATION BY THE CITY OF BOISE**

Plaintiffs' brief is quite clear about Plaintiffs' intentions and goals: "CHI seeks to compel the City to affirmatively provide housing . . . "  ***Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction*** (hereinafter, "Plaintiffs' Brief"), p. 21.  However, Plaintiffs' goal is not to ensure that the City continue to provide housing to low-income and indigent families and generally (the City continues to fund subsidized housing  (<u>See</u> Affidavit of Bruce Chatterton) but to have the Court force the City to continue to operate a particular and specific facility which the City, in its discretion, has determined was not viable.  ***Id.*** ¶¶2-5.

In their ***Brief***, Plaintiffs initially contend that by absolving itself of the Community House program, and leasing the premises to a private entity, the City has discriminated against the tenants in violation of the Fair Housing Act ("FHA"),

42 U.S.C. §§ 3601 *et seq*.  The FHA generally prohibits discrimination in the sale or rental of housing.  **See** 42 U.S.C. § 3604.  Specifically, the FHA makes it unlawful to:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b)  To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a) – (b).

> A.   The Fair Housing Act Cannot Be Used To Force An Entity To Stay In the Business of Providing Residences.

This case involves the City of Boise closing a homeless shelter which it no longer desires to operate.  The Plaintiffs are attempting to use the Court to force the City to continue to operate the facility.   Plaintiffs have not disclosed, and Defendant was unable to locate, any cases or statutes indicating that the Fair Housing Act could be used to prevent or prohibit a person or organization from shutting down a homeless shelter.  By its language, the FHA only applies where a person or entity engages in renting or selling of dwellings.  There is nothing in the statute itself indicating that the FHA applies when a person or entity ceases to engage in offering to rent or sell dwellings.  In fact, a cognizable claim under the FHA requires that the Plaintiff show that the housing opportunity remained

available to other renters or purchases. ***Mitchell v. Shane***, 350 F.3d 39, 47 (2nd Cir. 2003). Because the City is removing itself from the "business" of providing a homeless shelter via the Community House facilities, no housing opportunity "remain[s] available to other renters or purchasers." Accordingly, the FHA cannot be used to prevent the City from selling or leasing the Community House building.[3]

> B.  <u>Plaintiffs Have Failed to Establish a Prima Facie Case of Discrimination as to the Transfer of the Property to the Boise Rescue Mission</u>.

The Ninth Circuit has adopted the shifting burden of proof scheme from ***McDonnell Douglas Corp. v. Green,*** 411 U.S. 792 (1973), to cases brought under the Fair Housing Act. <u>See</u> ***Gilligan v. Jamco Development Corp.,*** 108 F.3d 246, 249 (9th Cir. 1997). <u>See also</u> ***Gamble v. City of Escondido,*** 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining Fair Housing Act discrimination claims.") As Plaintiffs have noted, under the FHA, a plaintiff may establish a *prima facie* case of housing discrimination by showing (1) that the plaintiff is a member of a protected class; (2) that the plaintiff sought and as qualified to rent or purchase the housing; (3) that the plaintiff was rejected; and (4) that the housing opportunity remained available to other renters or purchasers. ***Mitchell v. Shane***, 350 F.3d 39, 47 (2nd Cir. 2003). Should the Plaintiffs establish the *prima facie* case, the burden then shifts to the Defendant to articulate some

---

[3] As outlined in § II.C, *supra,* the lease agreement between the City and the Boise Rescue Mission is non-discriminatory. The Mission is required to guarantee a meal service and 66 beds for temporary guests. The list of approved subtenants for the building includes Children Protective Services and the Womens and Childrens Alliance. <u>See</u> Aff. of Sue Cobley, Lease Agreement, Exhibit F. Any contention the Lease arrangement is discriminatory is simply untrue.

legitimate, nondiscriminatory reason for the challenged action.  ***Harris v. Itzhaki***, 183 F.3d 1043, 1051 (9th Cir. 1999).  "To accomplish this, the defendant is only required to set forth a legally sufficient explanation."  ***Id.***  If the Defendant successfully does so, "the burden shifts back to the plaintiff to raise a genuine factual question as to whether the preferred reason is pretextual".  ***Id.***

As indicated above, the first element of the *prima facie* case requires the Plaintiff belong to a protected class.  In this case, Plaintiffs contend that they are members of a protected class; i.e., women and families with children. **See** Plaintiffs' Brief, p.13.  Ostensibly, under the FHA, protected classes include "race, color, religion, sex, familial status, or national origin".  **See** 42 U.S.C. § 3604; 42 U.S.C. § 3602(k) (defining "familial status" as being an adult with one or more children).

The second element of the *prima facie*  case is that the plaintiffs sought and were qualified to rent or purchase the housing.  Plaintiffs contend that they have met the second element because "Plaintiffs applied for and were found to be qualified to reside in the emergency shelter and transitional housing at Community House."  ***Plaintiffs' Brief***, p. 13.  This contention might make sense if this case were about leasing individual rooms at the Community House.  However, the transaction in question—the transaction which Plaintiffs want blocked—is the lease of the entire facility.  There is absolutely no showing or evidence that any of the individual Plaintiffs (i.e., those Plaintiffs qualifying as members of the protected class as asserted in *Plaintiff's Brief*) ever submitted a bid or otherwise extended an

offer to purchase or lease the Community House building.  Thus, the Plaintiffs have failed to establish the second element of the *prima facie* case.

The third element of the *prima facie*  case is that the Plaintiffs were rejected.  Plaintiffs contend that they were rejected because "they are being evicted and not allowed to reside in the Community House emergency shelter or stay in any of the empty transitional housing units . . ." ***Plaintiffs' Brief***, p. 13. Nevertheless, as noted above, there is no allegation, let alone any facts, showing that any of the individual Plaintiffs ever attempted to purchase or lease the community House facility.  It is axiomatic that without an offer, there can be no rejection. **See** ***Lauture v. IBM Corp***., 216 F.3d 258, 262 (2nd Cir. 2000) ("Obviously, there is no refusal to make a contract where one party offers the other no consideration."). Accordingly, Plaintiffs have failed to establish the third element of the *prima facie* case.

The fourth element of the *prima facie* case is that the housing opportunity remained open "in that the Plaintiffs were not allowed to move into the empty emergency shelter units or stay in any of the empty transitional housing units at Community House because of their gender/familial status as established by the express provisions of the deed/leasing restrictions." ***Plaintiffs' Brief***, p.14.  As Plaintiffs themselves note, "the Defendants prohibited the shelter staff from allowing new homeless people into the shelter; thus emptying the emergency shelter, transitional housing and SRO units by attrition." ***Plaintiffs Brief***, p. 7. Thus, as to the decision to lease the facility, the housing opportunity did not

remain open.  Accordingly, Plaintiffs have failed to establish the fourth element of the *prima facie* case.

> C.   Plaintiffs Have Failed to Establish the *Prima Facie* Case As to the Lease Provisions.

Plaintiffs contend that the lease between the City and the Boise Rescue Mission requires that the Rescue Mission provide 66 beds for single, adult males.  Even a cursory reading of the lease shows that this is incorrect.  **See *Aff. of Sue Cobley in Support of Motion for TRO and/or Preliminary Junction,*** Exhibit 28.  The lease approved by the City Council on September 2, 2005 (Resolution No. 18765) specifically provides that "Tenant shall operate (i) an emergency homeless shelter with a capacity to serve not fewer than sixty-six(66) guests, and (ii) meal service . . . with a capacity to serve not fewer than one hundred (100) guests per meal for two meals per day (collectively "Shelter Services") on the Premises."  ***Id.,*** Exhibit 2, "Lease Agreement", ¶5.2.  Contrary to the Plaintiffs' argument, the lease does not exclude women or children as potential tenants.  In fact, the list of approved subtenants includes children or adult protective services, the Idaho Youth Ranch, and the Womens and Childrens Alliance.  ***Id***, Exhibit F.  The plain language in the lease reveals the transaction between the City and the Rescue Mission is not discriminatory.  For that reason alone, the discrimination claims are without merit.  However, even if one assumes the first element of a discrimination claim existed, Plaintiffs have failed to establish the other three elements of the *prima facie* case.

The second element of the *prima facie* case is that the Plaintiffs sought and were qualified to rent or purchase the housing. ***Mitchell v. Shane***, 350 F.3d 39, 47 (2nd Cir. 2003). Plaintiffs contend that "the Plaintiffs applied for and were found to be qualified to reside in the emergency shelter and transitional housing at Community House," and that one of the Plaintiffs had lived there for "over a year." ***Plaintiffs' Brief***, p.13. By implication, Plaintiffs would presumably apply for and be qualified for housing in the future. However, there is no evidence that *but for the lease provisions* Plaintiffs would qualify for services from the Boise Rescue Mission. In fact, the long term plans of the Rescue Mission envision the upgrade of the Community House. Former residents are free to apply for housing with that entity. <u>See</u> Aff. of Bill Roscoe.

The third element of the *prima facie* case is that the Plaintiffs were rejected. ***Mitchell***, 350 F.3d 15 47. Plaintiffs contend that they "were rejected by the Defendants in that they are being evicted and not allowed to reside in the Community House emergency shelter or stay in any of the empty transitional housing units . . ." ***Plaintiffs' Brief***, p.13. As noted above, the lease provision requires a minimum number of beds be made available for "guests". The Lease does not attempt to create any distinction as to gender or familial status. In fact, the approved subtenants include organizations that will refer women and children as potential tenants. Hence, the lease, by its terms, does not "reject" Plaintiffs. Moreover, Plaintiffs have not shown that they have, in fact, been rejected by the lessee.

The fourth element of the *prima facie* case is that the housing opportunity remained open to the buyers or purchases.  Plaintiffs contend that a housing opportunity remained open "in that the Plaintiffs were not allowed to move into the empty emergency shelter units or stay in any of the empty transitional housing units at Community House because of their gender/familial status as established by the express provisions of the deed/leasing restrictions." ***Plaintiffs' Brief***, p. 14.  As Plaintiffs themselves note, "the Defendants prohibited the shelter staff from allowing new homeless people into the shelter; thus emptying the regency shelter, transitional housing, and SRO units by attrition." ***Plaintiffs' Brief***, p.7.  In other words, during the transition from the City to the new lessee, Boise Rescue Mission, the opportunity to remain living in the facility was not open to any other persons.  Plaintiffs have offered no evidence that they would be denied services by the Boise Rescue Mission because of the lease.  Accordingly, Plaintiffs have failed to establish the fourth element of the *prima facie* case.

> D.  <u>Even If the Lease was Discriminatory, the Appropriate Remedy is the Revision of the Lease Provision, Not the Blocking of the Lease</u>.

Even if the lease provisions are discriminatory in violation of the FHA, the appropriate remedy is not blocking the lease and/or requiring the City to continue to operate the facility.  Instead, the Court can strike the offending contract language.  <u>See</u> ***LeBlanc-Sternberg v. Fletcher,*** 67 F.3d 412, 434 (2nd Cir. 1995) (where village had enacted ordinance violating FHA by restricting religious services in private homes, injunctive relief striking or modifying the ordinance was

proper).  Plaintiffs have not requested a preliminary injunction striking the offending provisions.  **See *Plaintiffs' Brief*,** p. 2.  Plaintiffs are not entitled to a preliminary injunction blocking the implementation of the lease.

      **C.   OBLIGATIONS UNDER THE FAIR HOUSING ACT ENDED WHEN FEDERAL MONEY WAS REPAID IN FULL.**

**THE RETURN OF ALL FEDERAL MONIES BY THE CITY OF BOISE
ENDED ANY FUTURE LEGAL DUTIES OWNED BY THE CITY
UNDER THE HOUSING AND COMMUNITY DEVELOPMENT ACT
OR THE HOME INVESTMENT PARTNERSHIP PROGRAM.**

In the Complaint, it is alleged that the City of Boise received federal funds pursuant to a number of federal programs which were intended to benefit homeless individuals and families.  **See** Complaint ¶5.  The federal programs in question include the Housing and Community Development Act of 1974 (HCDA); 42 U.S.C. § 5301, et seq., Home Investment Partnership Program (HOME), 24 CFR Parts 42, 520 and 570.  *Id.*  These programs envision block grants from the federal government to eligible communities.  The HCDA program establishes a system of federal assistance for community development activities which are administered by the Department of Housing and Urban Development (HUD).  **See** 42 U.S.C. § 5305; 24 CFR 570.200(a).  The program is an exercise of the spending power provided to Congress by the federal Constitution.  **See** U. S. Const., Art. I; § 8, Cl. 1.

It is well settled that "incident to this power, [spending power] Congress may attach conditions to the receipt of federal funds.  **See *South Dakota v. Dole***, 483 U.S. 203, 206 (1977); **See also *Davis v. Monroe County Board of Education,***

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 14

526 U.S, 629 (1999).  This power may be exercised to achieve goals that are not within other enumerated powers of Congress.  **See *South Dakota v. Dole,*** 483 U.S. at 207; ***U.S. v. Butler***, 497 U.S. 1 (1936).   As stated in ***Barnes v. Gorman***, 536 U.S. 181, 186 (2002), the Court has repeatedly characterized Spending Clause legislation as "much in the nature of a <u>contract</u>:  in return for federal funds, the [recipients] agree to comply with federally imposed conditions."  *Id*, citing ***Pennhurst State School and Hospital v. Halderman***, 451 U.S. 1, 17 (1981) (emphasis added).  While the Court has not ruled that all contract law rules apply to Spending Clause legislation, the Court has utilized contract law to determine the obligations of entities that accept federal monies.  In ***Barnes v. Gorman, supra,*** the Court wrote:

> ". . .  we have regularly applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages.  Thus, a recipient may be held liable to third-party beneficiaries for intentional conduct that violates the clear terms of the relevant statute, ***Davis***, *supra*, 526 U.S. 629 at 642, but not for its failure to comply with vague language describing the objectives of the statute, ***Pennhurst, supra***, 451 U.S. 1 at 24-25; and, if the statute implies that only violations brought to the attention of an official with power to correct them are actionable, not for conduct unknown to any such official, **see *Gebser,*** *supra*, 524 U.S. 274 at 290.  We have also applied the contract-analogy in finding a damages remedy available in private suits under Spending Clause legislation.  ***Franklin, supra***, 503 U.S. 60 at 74-75.

<u>See</u> 536 U.S. at 186-187.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 15

In this case, the Supreme Court's reliance upon contract law for defining the obligations and rights of parties under Spending Clause legislation is instructive. Absent the City of Boise's decision to accept federal monies under the HCDA and the HOME program, the City would not be legally obligated to operate a homeless shelter or provide low income housing.  When the City made the decision to get out of the shelter business, it returned the funds it had received from the federal government. **See** Affidavit of Bruce Chatterton, Exhibit 1.  As in any contract, the parties can make the decision to mutually rescind their agreement and end their contractual relationship.  **See _Mohr v. Shultz_**, 86 Idaho 531, 539, 388 P.2d 1002m 1007 (1964); citing **Corbin on Contracts**,  Vol. 5, § 1236 (1954).  By rescinding, the parties return to the status quo.  **See _Mohr at 539._**  Here, using contract principles, HUD and the City have returned to the status quo.  The City of Boise has returned the consideration it received from the federal government.  The federal government, through HUD, has agreed to the repayment of the federal funds would remove the regulatory restrictions on the building.  Aff. of Bruce Chatterton, **_Id._** Exhibit 1. (E-mail from Doug Carlsen, Regional Director of Planning and Development, HUD).  As a result, the City is no longer obligated to comply with the conditions which were accepted as a condition to the receipt of the federal funds.

A preliminary injunction requires proof that ongoing illegal or tortious conduct is occurring.  Even if one accepted the argument the HCDA required the funds the City received be utilized to operate Community House and to keep the facility in the

City's name and exclusively under City control; once the federal funds were returned, the City's ongoing obligations under HCDA and HOME ended. Because a continuing legal obligation does not exist, the preliminary injunction should not be entered.

### D. DEFENDANTS DID NOT VIOLATE FEDERAL RELOCATION ASSITANCE OBLIGATIONS.

Plaintiffs allege that Defendants failed to comply with federal law pertaining to relocation of former Community House tenants and/or emergency shelter guests. The Uniform Relocation Assistance and Real Property Policy Act, 42 U.S.C. 4601, *et seq.* ("URA") specifically referred to by Plaintiffs is not applicable to the present matter. The URA was enacted for the purpose of ensuring that persons displaced as a direct result of programs or projects undertaken by a Federal agency or with federal financial assistance would not suffer disproportionate injuries and to minimize the hardship of displacement. 42 U.S.C. § 4621(b).

The term "displaced person" is defined by the URA as any person who moves from real property as a direct result of the acquisition of such property for a program or project undertaken by a federal agency or with federal financial assistance. 42 U.S.C. § 4601(6). "Displacing agency" is defined as the entity carrying out said program or project which causes displacement. 42 U.S.C. § 4601(11). Contrary to such definitions, former Community House tenants were not displaced as a result of the "acquisition" of property for a federal or federally

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 17

funded program or project.  **See *Alexander v. U.S. Dept. of Housing and Urban Development,*** 441 U.S. 39, 62-63 (1979) (definition of "displaced person" envisions the individual being displaced must be so as a result of the acquisition of property for a federal program.)  Rather, the former tenants moved from Community House because Defendants ceased operation of the facility in accord with its determination that it would get out of the homeless shelter business.[4]  Thus, by its terms and very purpose, the URA is not applicable to Defendants in the present matter.

Regardless of the above, Defendants did in fact provide all former tenants and, for the duration of their leases, an offer of replacement housing which was comparable and, in most cases better, than the housing they formerly received at Community House.  **See** Aff. of Bruce Chatterton, ¶12.  Individuals residing at properties operated by the City undergo routine screening.  The current policy of the City renders violent offenders ineligible for City housing if their conviction occurred within five years.  **See** Second Aff. of Dawn Sanchez.

## CONCLUSION

Based upon the above and foregoing, Defendants respectfully request that this Court deny Plaintiffs' request for a preliminary injunction.

---

[4] While Defendant City of Boise does presently offer subsidized housing at other locations within Boise City, Defendants do not operate any homeless shelters.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 18

DATED this 20<u>th</u> day of September, 2005.

BOISE CITY ATTORNEY'S OFFICE


_____/s/_____
Scott B. Muir, Assistant City Attorney

ANDERSON, JULIAN & HULL LLP


By_____/s/_____
    Phillip J. Collaer,. Of the Firm
    Attorneys for Defendants

<u>CERTIFICATE OF MAILING</u>

I HEREBY CERTIFY that on this <u>20</u><sup>th</sup> day of September, 2005, I served a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

Howard A. Belodoff       [  ]  U.S. Mail, postage prepaid
Zoe Ann Olson           [  ]  Hand-Delivered
James C. Cook           [  ]  Overnight Mail
IDAHO LEGAL AID SERVICES, INC.  [  ]  Facsimile
310 N. 5th Street         [  ]  Electronic Delivery
P.O. Box 913
Boise, Idaho  83701
Telephone:  (208) 336-8980, ext. 106
*Attorneys for Plaintiffs*

Cary B. Colaianni        [  ]  U.S. Mail, postage prepaid
Scott Muir             [  ]  Hand-Delivered
CITY ATTORNEY'S OFFICE   [  ]  Overnight Mail
P.O. Box 500          [  ]  Facsimile
Boise, Idaho  83701     [  ]  Electronic Delivery
Telephone:  (208) 384-3870

_____
/s/
Phillip J. Collaer