Howard A. Belodoff, ISB # 2290
Zoe Ann Olson, ISB # 5856
James C. Cook, ISB # 5247
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID  83701
(208) 336-8980, ext. 106

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| COMMUNITY HOUSE, INC.,<br>MARLENE K. SMITH, GREG A. LUTHER,<br>JAY D. BANTA | )<br>)<br>) | |
| | ) | CASE NO. CIV05-283-5-BLW |
| Plaintiffs, | )<br>) | |
| | ) | |
| vs. | )<br>) | AFFIDAVIT OF HOWARD<br>BELODOFF IN REPLY TO |
| CITY OF BOISE, IDAHO, DAVID H.<br>BIETER, Mayor; BOISE CITY COUNCIL;<br>MARYANN JORDAN, ELAINE CLEGG,<br>VERNON BISTERFELDT, DAVID EBERLE,<br>JEROME MAPP, and ALAN SHEALY,<br>Boise City Council Members; BRUCE<br>CHATTERTON, Director, Planning and<br>Development Services; JIM BIRDSALL,<br>Manager, Housing and Community Development, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MEMORANDUM IN OPPOSITION<br>TO PLAINTIFF'S MOTION TO<br>FILE SECOND AMENDED<br>COMPLAINT AND IN RESPONSE<br>TO MOTION TO DISMISS |
| Defendants. | )<br>)<br>) | |

AFFIDAVIT OF HOWARD BELODOFF IN REPLY TO DEFENDANTS MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT AND IN
RESPONSE TO MOTION TO DISMISS- Page 1

STATE OF IDAHO       )
                          ) ss.
County of Ada            )

HOWARD BELODOFF, being first duly sworn on oath, deposes and states:

1.  I am counsel of record for the Plaintiffs in the above-entitled matter.

2.  I certify that the Exhibits attached hereto are true and correct copies of the same.

3.  Exhibit 1 is a copy of the Verified Complaint that was delivered to and received by the offices of the Boise City Clerk on July 20, 2005. The Clerk's office date stamped the Verified Complaint with "BOISE CITY REV'D CITY CLERK 05 JUL 20 AM 11:07" at that time.

4.  Exhibit 2 is a copy of the letter dated August 4, 2005, in which the Boise City Attorney's Office agreed to accept service of the Amended Verified Complaint.

5.  Exhibit 3 is a copy of the Notice of Tort Claim that was delivered to and received by the offices of the Boise City Clerk on February 9, 2007. The Clerk's office date stamped the Notice of Tort Claim with "BOISE CITY REV'D CITY CLERK 08 MAY 8 PM 1:56") at that time.

6.  Exhibit 4 is a copy of the Declaration of Zoe Ann Olson In Support of Plaintiffs' Emergency Motion, filed in the Ninth Circuit Court of Appeals, No.05-36195, with Exhibit C, General Warranty Deed attached, in the appeal from the Court's Memorandum Decision and Order denying Plaintiffs' Motion for a Temporary/Preliminary Injunction to stay the sale of Community House. See Dkt. No. 150

7.  Exhibit 5 is a copy of the December 27, 2006, email from Suzie Boring-Headlee, to all counsel, regarding the Court's Docket Order, Dkt. No. 123, of October 11, 2006, suspending all the deadlines until the Ninth Circuit Court issued a decision on the interlocutory appeal filed in this

AFFIDAVIT OF HOWARD BELODOFF IN REPLY TO DEFENDANTS MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT AND IN RESPONSE TO MOTION TO DISMISS- Page 2

matter and stating this applied to the Motion for a Supplemental Complaint. In addition, there is a response by Phillip J. Collaer to Ms. Headlee's email.

8. Exhibit 6 is a copy of the Memorandum Decision and Order, Dkt. No. 219, filed on March 17, 2003, in *Fort Hall Landowners Alliance, Inc., v. BIA*, Case No. CV-99-52-E-BLW.

DATED this 29th of February, 2008.

Howard Belodoff

SUBSCRIBED AND SWORN to before me this 29th day of February, 2008.

Notary Public for Idaho
Residing at Boise
Commission Expires: 6-2-2012

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of February, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the persons listed below.

Robert Anderson
Phillip Collaer
Anderson, Julian & Hull, LLP
PO Box 7426
Boise ID 83707-7426

Scott Muir
City Attorney's Office
150 N. Capitol Blvd., 4th Floor
Boise, Idaho 83702

Howard Belodoff

AFFIDAVIT OF HOWARD BELODOFF IN REPLY TO DEFENDANTS MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT AND IN RESPONSE TO MOTION TO DISMISS- Page 3

Howard A. Belodoff, ISB # 2290
Zoe Ann Olson, ISB # 5856
James A. Cook, ISB # 5247
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID   83701
(208) 336-8980

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| COMMUNITY HOUSE, INC., MARLENE K. SMITH, GREG A. LUTHER, and JAY D. BANTA, | ) ) ) ) | CIV 05 - 283 - S - BLW |
| Plaintiffs, | ) ) ) | CASE NO. |
| vs. | ) ) ) | VERIFIED COMPLAINT |
| CITY OF BOISE, IDAHO, DAVID H. BIETER, Mayor; BOISE CITY COUNCIL; MARYANN JORDAN, ELAINE CLEGG, VERNON BISTERFELDT, DAVID EBERLE, JEROME MAPP, and ALAN SHEALY, Boise City Council Members; BRUCE CHATTERTON, Director, Planning and Development Services; JIM BIRDSALL, Manager, Housing and Community Development, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

BOISE CITY
REC'D CITY CLERK
05 JUL 20   AM 11: 07

VERIFIED COMPLAINT - Page 1

EXHIBIT
1

COME NOW the Plaintiffs, Community House, Inc., Marlene K. Smith, Greg A. Luther, and Jay D. Banta, and for a cause of action against the Defendants, state and allege as follows:

## PRELIMINARY STATEMENT

1.  This is an action brought by Plaintiff, Community House, Inc., (hereinafter CHI), a nonprofit corporation organized to assist homeless individuals and families in obtaining shelter and safe, decent and sanitary housing for low and very low income residents of the City of Boise, Idaho.  Individual Plaintiffs are tenants and former residents of a homeless shelter named Community House that was located near downtown Boise.   Community House,  provides emergency shelter, transitional housing and single room occupancy units (hereinafter SRO) to homeless and low-income persons,

2.  Plaintiffs allege that Defendants are now in the process of selling Community House without plans to replace the housing and without adequate plans to relocate the displaced tenants.  During this process, the Defendants have violated the requirements of federal and state law.

3.   The Plaintiff, Community House, Inc., (hereinafter CHI), seeks monetary damages, declaratory and injunctive relief against the City of Boise, the Boise City Council and individually named Defendants who are officials or employees of the municipality, (hereinafter Defendants), to redress, under color of state law, violations of the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and its implementing regulations, 24 C.F.R. Part 14, *et seq.*; Section 504 of the Rehabilitation Act of 1983, 29 U.S.C. § 706(8)(B) and § 794; the Housing

**AMENDED** VERIFIED COMPLAINT - Page 2

and Community Development Act of 1974, (hereinafter HCDA), 42 U.S.C. § 5301, *et seq.,*
and its implementing federal regulations, 24 C.F.R. Parts 42, 520 and 570; the Home
Investment Partnerships (hereinafter HOME) programs, 24 C.F.R. Part 92; the Uniform
Relocation Act, (hereinafter URA), 42 U.S.C. §§ 4601-4655, and its implementing
regulations, 49 C.F.R Part 24; and the Supremacy Clause and the Due Process Clause of the
Fourteenth Amendment to the United States Constitution.  The Plaintiffs are also seeking
relief for violations of their contractual rights, their partnership agreement, and violations
under Idaho state statutes.  The Plaintiffs seek redress for the Defendants' discriminatory
practices and policies and under color of state law, the violations of civil rights protected by
the United States Constitution and federal statutes and regulations.  The Plaintiffs seek
equitable relief to ensure the Defendants' compliance with the Fair Housing Act and
regulations, Section 504 of the Rehabilitation Act, the HCDA, HOME, and URA Acts and
their regulations, to meet their need for housing and supportive services.

 4. Defendants unlawfully intend to greatly reduce the number of homeless disabled
persons, women and families residing within Community House's area of the City.
Defendants' actions have an unlawful disparate impact on persons with disabilities, women
and families.  Defendants intended to and have discriminated against such persons.

 5. Plaintiffs seek an order enjoining Defendants from continuing to disregard their
statutory duties under the HCDA, Home, and URA Acts:  1) to provide replacement housing
and 2) to provide tenants with adequate relocation benefits, including payment of relocation
assistance and provision of comparable decent, safe, and sanitary housing into which they

**AMENDED** VERIFIED COMPLAINT - Page 3

can move.  As the alternative, the Plaintiffs further seek an order enjoining Defendants from proceeding to transferring or selling in Community House in violation of federal Fair Housing Act.

6.   Plaintiff CHI further seeks equitable relief to rescind the transfer of their assets and termination of their rights and estop the Defendants from selling or transferring their equitable ownership and interest in Community House.  Injunctive and declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the FEDERAL RULES OF CIVIL PROCEDURE.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction under 28 U.S.C. §§ 1331(3) and (4) for violations of federal law, and 1343 to hear actions to vindicate violations of the constitutional and federally protected civil rights of the Plaintiffs under color of state law.

8.   This Court also has jurisdiction over the state law claims asserted herein pursuant to its Supplemental Jurisdiction powers authorized by 28 U.S.C. § 1367.

9.   This action is properly brought in this District under 28 U.S.C. § 131(b) in that it is in this District in which all of the Defendants reside and in which the Plaintiffs' claims arose.

## PARTIES

A.    **PLAINTIFFS**

10.    Plaintiff CHI is a nonprofit Idaho corporation organized exclusively for charitable and educational purposes within the meaning of the Internal Revenue Service

**AMENDED** VERIFIED COMPLAINT - Page 4

Code Section 501(c)(3) and Regulations, section 1.501(c)(3)(d). Since its inception in June 1992, it has provided safe, decent, and sanitary housing and supportive services to homeless individuals and families by constructing and operating Community House.

11. Plaintiff MARLENE K. SMITH is a single parent with two boys, ages six and tem. She is disable and one of her sons has a disability. She has been a tenant in Community House since April 15, 2004. She has been told she has to vacate and leave by August 1, 2005. She has applied for Section 8 public housing but there is a waiting list. She has sought temporary housing at the Salvation Army's Booth Home shelter for families but it is full and there is a waiting list. Her only source of income is TANF funds for state of $ 309.00 per month. She is unable to work due to her disability. She has not been offered any relocation assistance or benefits nor replacement housing by the Defendants. She is currently receiving case management and supportive services at Community House which will be lost when she has to vacate.

12. Plaintiff GREG A. LUTHER has been a tenant in Community House since January 7, 2005. He has been told he has to vacate and leave by August 1, 2005. He is unable to work due to his disability. He has applied for permanent housing but has been told there is a waiting list. He has been unable to find any other temporary housing. He has no source of income and has applied for SSI benefits. He has not been offered any relocation assistance or benefits nor replacement housing by the Defendants. He is currently receiving case management and supportive services at Community House which will be lost when he has to vacate.

**AMENDED** VERIFIED COMPLAINT - Page 5

13. Plaintiff JAY D. BANTA has been a tenant in Community House since May 15, 2005. He has been told he has to vacate and leave by August 1, 2005. He is unable to work due to his disability. He has applied for permanent housing but has been told there is a waiting list. He has been unable to find any other temporary housing. He has no source of income and has applied for SSI benefits. He has not been offered any relocation assistance or benefits nor replacement housing by the Defendants. He is currently receiving case management and supportive services at Community House which will be lost when he has to vacate.

**B.    DEFENDANTS**

14. Defendant CITY OF BOISE is a municipal corporation organized and existing under the laws of the State of Idaho.

15. Defendant CITY COUNCIL is the legally constituted body governing the City of Boise.

16. Defendants DAVID H. BIETER (Mayor), MARYANNE JORDAN, ELAINE CLEGG, VERNON BISTERFELDT, DAVID EBERLE, JEROME MAPP, and ALAN SHEALY are duly elected members of the City Council. They make and implement the policies and programs of the City of Boise and its Planning and Development Services Department (hereinafter PDS) and, in doing so, are required to comply with the laws of the United States and of the State of Idaho. They are sued in their official capacities.

**AMENDED** VERIFIED COMPLAINT - Page 6

17.   Defendant BRUCE CHATTERTON is the Director of the PDS.  He is sued in his official capacity.  Defendant Chatterton is charged with implementing the policies of the City of Boise and the Mayor and City Council.

18.   Defendant JIM BIRDSALL is the Manager of the Housing and Community Development Division (hereinafter HCD) of the City of Boise.  He is sued in his official capacity.  Defendant BIRDSALL is charged with implementing the policies of the City of Boise, the Mayor, the City Council, and the PDS.

19.   Plaintiffs refer to Defendants City of Boise, City Council, Planning and Development Services, Housing and Community Development, the Mayor, members of the City Council, Bruce Chatterton, and Jim Birdsall collectively as "the City."

## FACTUAL ALLEGATIONS

20.   The City of Boise, Idaho, is the state capital, and is the largest city in the state.

21.   As early as 1986, social service providers began to serve an increasing number of homeless families and homeless persons with severe mental health conditions.

22.  There were only a small number of community providers where homeless women, families, and children could obtain shelter.

23.   The vast need for a more comprehensive approach to the homeless problem in Boise and lack of shelter for women, children, and families was identified.

24.   The reasons for homelessness included the loss or inability to obtain a job,  a severe crisis resulting in the loss of homes and shelter such as domestic violence, chronic disabilities such as severe medical and mental illness, drug dependency, or alcoholism.

**AMENDED** VERIFIED COMPLAINT - Page 7

25.   The citizens of Boise responded to the need. In 1992 Director, Michael Hoffman sponsored actress, Sally Fields, to perform a play that raised over $70,000. The Rotary Club of Boise committed $50,000 and $25,000 in in-kind services to address the homeless crisis in Boise.

26.   In June 1992, the Community Assistance Center, Inc. was incorporated and Bylaws were adopted for the purpose of raising donations to develop a full continuum of programs and services and to address the needs of the homeless and to establish a decent, safe, and sanitary community shelter.

27.   In January 1993, the Articles were amended to change the name of the corporation to Community House, Inc. In August 1993, the Articles were amended to clarify the purposes of the corporation.

28.   Social service agencies, community leaders and the corporate community participated in fundraising, including Terry Reilly Health Clinic, Boise City/Ada County Housing Authority, Job Service of Idaho, Idaho Department of Health and Welfare, YWCA, Idaho Vocational Rehabilitation, Social Security Administration, Veterans Administration Medical Center, El-Ada Community Action Agency, United Way of Ada County, Junior League, Child Care Connections, Salvation Army, City of Boise, Boise Police Department, St. Luke's Hospital, Boise Neighborhood Housing Services, Ada County Community Services, Central District Health Services, Channel 7 KTVB, Oppenheimer Development, WestOne Bank, H.W. Morrison Foundation, and FUNDSY.

29.   In subsequent years, cash and in-kind contributions from individuals and corporations, including Albertsons and Hewlett-Packard, amounted to millions of dollars.

30.   On February 8, 1994, the Defendant City Council passed Resolution No. 12635 that "recognized the importance of establishing a facility for homeless and very low income individuals residing in the City of Boise" and agreed to enter into a Memorandum of Understanding (hereinafter MOU) to enter into a "public/private partnership" to provide housing and services for the homeless.

31.   The **Purpose** of the MOU specified:

It is the intent of the City and Community House to enter into a cooperative public/private partnership with the primary objective being to provide housing and comprehensive services for the homeless in our community.

Community House and the City have worked together for over a year planning and designing a facility to be known as Community House. Community House has been designed as a facility which will met the needs of the homeless based on the parties understanding of the problems encountered by the homeless and based upon their funding capabilities.

Like any good partnership, this one must be based on trust, common interest and philosophy, good communication, and a fair and clearly defined method of dissolving the partnership.

MOU, p. 1.

32.   The MOU further specified: "As evidenced by this Memorandum of Understanding, the City supports Community House and will endeavor to provide funds necessary to make the project successful."

33.   The MOU's **Project Goals** specified that "[t]he City and Community House are entering into a **partnership** to construct a homeless shelter at the intersection of Thirteenth

**AMENDED** VERIFIED COMPLAINT - Page 9

and River Streets in Boise, Idaho" and that Community House would have a lease for fifty
(50) years at a cost of one dollar per year.  Emphasis added in part.

34.   The MOU's terms further provided for an Operating Agreement governing
Community House's operation and for termination, default, and construction financing.

35.   The City agreed to pay for all routine maintenance and repairs to Community
House.

36.   On November 2, 1994, the Defendants and CHI signed a fifty (50) year lease
ending on October 1, 2044, to provide "Single Resident Occupancy Units (SROs), providing
temporary housing to homeless and those at risk of being homeless, an emergency homeless
shelter, and related services including but not limited to day care facilities, and ancillary
services."

37.   The lease provided that the Defendants agreed to maintain and repair the leased
premises.

38.   In May 1993, the City purchased the land on which Community House was
constructed.

39.   The total cost of construction was approximately $2,650,633.

40.   The City used Federal CDBG and HOME program funds, together with a state
HOME program match funds to pay $1,600,633 as their contribution to the construction
costs.

41.   CHI raised $392,685 in private and corporate contributions while securing $657,315 from the Federal Home Loan Bank's ( hereinafter FHLB) Affordable Housing Program as their contribution to the construction costs.

42.   Due to federal grant/loan requirements, Community House was divided into three specific types of housing.

43.   The first floor was designed as an emergency shelter facility for men and women. CDBG and FHLB funds were allocated for the construction.

44.   The second floor was designed for transitional housing and emergency shelter for families.  HOME, FHLB and state Home funds and private contributions were allocated for  the construction.

45.   The third floor was designed for thirty-eight (38) SRO units. The HOME program funds and state HOME program funds were allocated for the construction.

46.   The HOME program funding requirements for the SRO units and transitional housing units mandated that each unit have a twenty (20) year period of affordability that continued to until March 2015.

47.   The FHLB loan received by CHI had a fifty (50) year period of affordability and provided that the loan would be forgiven at the end of fifty (50) years.

48.   The terms of the FHLB loan requires approval and consent to any transfer or assignment of the CHI FHLB loan prior to any transfer.

**AMENDED** VERIFIED COMPLAINT - Page 11

49.   Based upon information and belief, the director of FHLB in Seattle has not consented to the transfer or assignment of the FHLB loan nor did they have knowledge that any transfer or assignment to the City of Boise had occurred.

50.   In November, 2002, the City began a course of conduct that placed the financial stability of CHI in jeopardy.

51.   On November 15, 2002, the then President of the Board of Directors wrote the Defendants about financial and operational concerns due to the Defendants' actions and failure to comply with the MOU, Lease Agreement, and Operating Agreement.  This included reductions in City funding from grants, relocation of the daycare out of Community House, moving the public meals kitchen and program into Community House and failure of the City to pay for the relocations as promised, reductions and eliminations of maintenance and repairs by the City, interference with the operations and management of staff, and the overall failure of the Defendants to provide the financial support necessary to build a strong and supportive relationship and serve the needs of the homeless.

52.   During 2003, the Board of Directors took extraordinary steps to address resolve the financial and operational issues as they arose.  This included reorganizing the Board of Directors, electing a new President, hiring a new Executive Director, reorganizing CHI's staff structure, creating a fundraising/grant writer position, and revising policies and procedures.

53.   CHI worked openly and tirelessly with the Defendants to resolve all grant compliance and monitoring issues that were brought to their attention.

**AMENDED** VERIFIED COMPLAINT - Page 12

54.   The Defendants, during this time, withheld federal funding which had been awarded, refused to sign new agreements for funding, and failed to respond to repeated requests for technical assistance and information regarding specific compliance concerns so they could be addressed.

55.   The person assigned by the Defendants to oversee compliance and performance monitoring of CHI's operations was not properly trained and failed to clarify requirements or provide technical assistance to ensure CHI was meeting the Defendants' grant and compliance requirements.

56.   The President of CHI repeatedly informed the Defendants of these ongoing issues but they were never addressed or responded to by them.

57.   In July 2003, the Defendants undertook secret negotiations for the purpose of selling CHI to a local nonprofit and dissolving CHI so it could transfer all the assets of CHI to its selected nonprofit.

58.   CHI only became aware of the Defendants' secret plan when a story appeared in the local news media.  CHI continued to make organizational and operational changes to improve the operations of Community House.

59.   Due to the publicity about the City's negotiations with another provider, CHI's ability to raise private donations were severely hampered because of a lack of confidence in CHI's continued viability.

60.   The then President of CHI, Deanna Watson, personally presented the Defendants with a document addressing the Board's concerns and requested answers to questions and

**AMENDED** VERIFIED COMPLAINT - Page 13

full disclosure of the City's intent.  She further promised the Board's full cooperation in resolving the issues.

61.   On May 5, 2003, Jim Fackrell, the Manager of the HCBD, wrote a letter to the then Mayor, regarding operation of Community House and that proposed Community House be sold by the Defendants.  This information was not disclosed to CHI.

62.   During 2003, the Board, the dedicated staff, and numerous volunteers and corporate contributors made tremendous progress in resolving the Defendants' concerns about grant compliance issues.

63.   In late January 2004, the then President of the Board met with the Mayor and members of the City Council. The Mayor suggested that she contact the then manager of the HCBD, Jan Blickenstaff,  to address the continuing financial needs of Community House.

64.   On February 2, 2004, Ms. Watson wrote Mr. Blickenstaff requesting short-term funding assistance and cooperation in finding a long term solution to all outstanding concerns.

65.   On February 6, 2004, Mr. Blickenstaff wrote Ms. Watson requesting information including "[a] business plan that shows cash flow projections and a sources and uses statement for at least the next sixty days;" a staffing plan, information on obligations of embezzlement, and a description of private fundraising activities.

66.   On February 9, 2004, the then President of the Board wrote Mr. Blickenstaff to reply to each of his requests.  She addressed all issues that were raised by him and agreed to provide all of the requested information.

**AMENDED** VERIFIED COMPLAINT - Page 14

67. On February 11, 2004, the then Executive Director of Community House, Peggy Sedivey, at the then Board President Watson's request, wrote Mr. Blickenstaff responding to and addressing his request for a solvency plan and description of the fundraising efforts.

68. CHI, as requested, prepared a 60-day Outlook of Income and Expenses, a list of liabilities, and a budget for 2004, establishing it was financially solvent if the City would fulfill its prior agreements and funding obligations.

69. On February 19, 2004, the Defendants requested a special meeting of the Board of Directors at which the Mayor's assistant and a City Attorney advised them that the City would no longer financially support Community House, would unilaterally and without notice, terminate CHI's right to manage and operate Community House, that its MOU and lease were "expired," and requested that CHI dissolve and turn over all its assets or it would close the doors and evict all the residents of the shelter.  The City threatened that it would seek repayment of the grants and informed the Board members they would be personally liable for any of CHI's liabilities if the transfer was not made.

70. The Defendants informed the Board of Directors that the Salvation Army was going to operate and manage the facility.

71. The Board of Directors rejected the Defendants' demand that they dissolve, but in order to prevent over 200 people, including the disabled, women, and children from becoming homeless in the middle of winter, agreed to accept the City's short term plan to have them assume control and have the Salvation Army manage Community House on an interim basis under certain conditions, including retaining current staff, covering the costs

**AMENDED** VERIFIED COMPLAINT - Page 15

and liability for the upkeep and operation of the facility, and start assisting in a fundraising campaign.

72.   This agreement was memorialized in a March 18, 2005 document.

73.   The Defendants' plan to operate Community House was a complete failure and in a short period of time, the Salvation Army turned over the operation of Community House back to the City.

74.   In the next two months, the Defendants' attorney communicated with then President Watson proposing to dissolve the corporation and transfer all its assets to the Defendants.

75.   On May 17, 2004, the Board met to discuss the City's proposal to transfer all of Community House's approximately $2,000,000 in assets to the City, relinquish oversight responsibilities for Community House, and to terminate the MOU, Lease and Operating Agreements.

76.   The Defendants, in acquiring Community House, agreed that it would bring it into compliance with HUD and other applicable requirements and provide oversight for the federal CDBG and HOME grants, including implementing procedures for compliance with HUD requirements, and assume responsibility for the FHLB grant.

77.   The Defendants agreed to assist in finding a long-term solution to meet the needs of Boise's homeless people," manage Community House, be responsible for any costs incurred after March 2, 2004, establish a $25,000 fund to assist CHI in resolving their legal

and financial liability occurring before March 2, 2004, due to the management and operation of Community House.

78.  No Board action was authorized at this meeting because a majority of the Board of Directors necessary to establish a quorum was not present at the meeting.

79.  On May 25, 2004, a majority of the Board of Directors met to establish a quorum. The Board refused to take any action on the Defendants' proposed Management Agreement.

80.  During this meeting, the Defendants' City Attorney, who was present, informed the Board that the Defendants, as part of the compliance and monitoring responsibilities under federal law, would find CHI in default for lack of compliance of the CDBG and HOME grants and would require the Board to personally pay all funds back to the City.  She further told the Board that the Defendants had authority to sell Community House.

81.  On June 2, 2004, Ms. Watson signed the proposed Management Agreement without any authorization, agreement or notice to the Board of Directors and in violation of the provisions of the corporation's Articles, Bylaws, and the Idaho Nonprofit Corporation Act.

82.  The Defendants knew or should have known that there was no authorization for Ms. Watson to sign the proposed Management Agreement, the requirements of CHI's Articles and Bylaws and the requirements of Idaho statutes.

83.  The Defendants failed to find a long term solution to meet the needs of Boise's homeless.

**AMENDED** VERIFIED COMPLAINT - Page 17

84.   On June 29, 2004, the Defendants declared their intent to sell Community House and all its assets to the highest bidder on July 15, 2005, pursuant to Idaho Code § 50-1404 which requires city property to be "underutilized" or no longer used for a public purpose.

85.   The Defendants published the terms of the sale on July 5, 2005. However, the terms were amended at the City Council's meeting the night of July 12, 2005.

86.   The amended terms of the sale contained a deed restriction for ten years that requires the property be maintained as a soup kitchen serving two meals a day to a minimum of 100 persons and a shelter for a minimum of 66 single, homeless adult males.  There was no requirement that Community House provide shelter or services for women and families.

87.   The terms further provide that the deed restrictions can be removed if:

> [S]ervices within the Boise City limits have <u>increased</u> to provide: (1) an additional long term, permanent soup kitchen, serving, at each meal, a minimum of 100 persons from the general community and/or shelter.  The additional meals shall be shown to be provided at a minimum of two meals a day, 7 days a week, 52 weeks a year; and (2) an additional long term, permanent shelter shall be shown to be provided for a minimum of 66, single, homeless, men, ages, 18 years or older.   The additional shelter shall be provided 7 days a week, 52 weeks a year.

88.   Upon information and belief, the Defendants have used CDBG and HOME funds to acquire Community House for the purpose of substantial rehabilitation and conversion of the property to other uses.

89.   In anticipation of the sale of Community House, the Defendants have notified tenants that CHI will close on August 1, 2005, and they will have to vacate the premises.

**AMENDED** VERIFIED COMPLAINT - Page 18

90.  On June 29, 2005, the City passed Ordinance No. 6402, setting the terms and date for a public auction for the sale or exchange of Community House as surplus property.

91.  On July 12, 2005, the City amended the Ordinance to include a ten (10) year deed restriction, including that the property be used as a shelter for a minimum of 66, single homeless men, ages 18 years or older.

92.  At the auction held on July 15, 2005, CHI was the only bidder.

93.  The City accepted the CHI bid of $2.5 million of its equitable ownership interest.

94. The CHI bid was based upon, and in compliance with, the terms of the Ordinance.

95. On July 26, 2005, the City Council refused to complete the transfer of Community House under the terms of the Ordinance.

96.  The Defendants have failed to offer tenants comparable or, in some cases, no housing and relocation assistance and benefits required under federal regulations.

97.  The Defendants' actions will result in the Plaintiffs being homeless or forced to live in housing that is not safe, decent and sanitary and will result in a decrease of low income housing in the City of Boise.  Defendants' action will especially affect women and families with children due to an inadequate supply of shelter for them.

98.  Based upon information and belief, the few shelters in Boise for women and families have no room for additional homeless persons and routinely have waiting lists.

99.  The tenants residing at Community House have little or no income and rely upon welfare or SSI benefits.  A majority of them, including the individual Plaintiffs, suffer medical and mental health disabilities and have limited earning capacities.

**AMENDED** VERIFIED COMPLAINT - Page 19

100.   Defendants' actions have had and continue to have a disparate impact on members of the class of persons with disabilities, women and families with children to acquire decent and safe housing.

101.   Defendants have undertaken no similar actions which disproportionately affect persons who are not disabled or men.

102.   The supply of low income and public housing for homeless individuals and families with children is extremely scarce and a disproportionate number of them reside in Community House.

103.   Community Development Block Grant (CDBG) and Home Improvement Partnership Programs (HOME) funds are administered by the U.S. Department of Housing and Urban Development (HUD).  Funds must be spent primarily to benefit extremely low, very low and low-income persons and households.

104.   The City of Boise receives an annual funding allocation under the Community Development Block Grant entitlement cities program and as a participating jurisdiction under the Home Investment Partners Program.

105.   In January 2001, the City of Boise developed and submitted to HUD a Five Year Consolidated Housing and Community Development Plan that established priorities, goals, and objectives for the use of CDBG and HOME funding expected to be allocated to the City by HUD during the five year period (2001-2005) covered by the Plan.

106.   The City of Boise prepares a one year action plan that details programs and/or activities which the City expects to assist with CDBG and HOME program funds.  The uses

**AMENDED** VERIFIED COMPLAINT - Page 20

of funding assumed in FY 2005 included a CDBG allocation of $1,477,071 and a HOME program allocation of $869,682.

107.   A total of $10,291,872 in CDBG and HOME program funding is estimated by the City to be available for its use in FY 2005.

108.   This total includes $2,383,477 (23%) in new funds; $5,873,416 (57%) in carry-forward funds from past CDBG entitlements, HOME formula funding cycles, and Revolving Loan Funds; and $2,034,979 (20%) program income generated by CDBG and HOME activities.

109.   When a City displaces people using CDBG and HOME funds, the City is responsible for relocation assistance to the displaced persons and for building replacement housing.

110.   Defendants have engaged in a pattern or practice of discrimination on the basis of disability/handicap, gender and familial status.  Defendants, acting individually and in concert with others, directly and through agents, have discriminated against persons, including the individual Plaintiffs, because of their disability/handicap, gender and familial status.  Defendants have pursued this pattern or practice of discrimination for the purpose of and/or with the effect of excluding those persons from the downtown area and from the City. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

111.   By reason of Defendants' unlawful acts and practices, the individual Plaintiffs have suffered loss of housing, violation of civil rights, and other special and general damages according to proof.

112.   Defendants' failure to comply with federal obligations to provide housing relocation benefits to displaced persons will cause and continue to cause harm to the individual Plaintiffs displaced from their homes without adequate relocation benefits or replacement housing.  Such harm includes living in substandard housing, loss of housing, financial losses associated with looking for new housing and emotional distress.  Each unit that is lost makes it more difficult for the individual Plaintiffs to find another dwelling to call "home."  The individual Plaintiffs would materially benefit from the replacement housing, comparable housing, and relocation benefits that Defendants are obligated by law to provide.

113.   In doing the acts of which Plaintiffs complain, Defendants and their agents and employees acted with oppression, fraud and malice, and with wanton and conscious disregard of the rights of Plaintiffs.

114.   Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and from the pattern or practice of discrimination against disabled persons unless relief is provided by this Court.  Accordingly, Plaintiffs are entitled to injunctive relief.

115.   Plaintiffs have no right to appeal nor any plain, speedy, or adequate remedy in the ordinary course of law.  Plaintiffs have been and will be irreparably harmed by losing their homes, being forced to live in substandard or unaffordable dwellings, being forced to live in dwellings outside of the City of Boise, or even living in the streets if Defendants are permitted to continue violating their legal obligations.  Plaintiffs have been and will be irreparably harmed as long as Defendants fail to meet their obligation to provide relocation benefits and replacement housing in compliance with the law.  This harm cannot be compensated in damages, and any amount of damages sustained would be extremely difficult to ascertain or compute.  No money damages or other legal remedy can adequately compensate Plaintiffs for the irreparable harm Defendants' conduct has caused, continues to cause, and threatens to cause Plaintiffs.

116.   Plaintiffs are entitled to a declaration of their legal rights from the Court, as well as preliminary and permanent injunctive relief requiring Defendants to refrain from violating their legal obligations.

## FIRST CLAIM FOR RELIEF

### Deprivation of Plaintiffs' Rights Protected Under 42 U.S.C. § 1983

117.   Plaintiffs reallege paragraphs 1 through 116 above, and incorporate them by reference as though fully set forth herein.

118.   At all relevant times, Defendants acted under color of state law in the conduct complained of in this Complaint to carry out their policies or customs.

**AMENDED** VERIFIED COMPLAINT - Page 23

119.   By taking and selling CHI's assets, the Defendants deprived the CHI of its property.

120.   Defendants' actions and conduct, as alleged above, violates rights secured to the Plaintiffs by the Supremacy and the Due Process Clauses of the United States Constitution, in that it deprived the Plaintiffs of their rights under federal law and without due process of law.

121.   The individual Plaintiffs had a right to be notified of their right to relocation assistance and benefits which was triggered by the scheme of Defendants to acquire and sell Community House.

122.   Defendants failed to notify them of those rights and undertook affirmative steps to conceal the fact that the tenants were entitled to such relocation assistance and benefits.

123.   As described herein, Defendants acted to deprive the individual Plaintiffs and other tenants of their federal rights to relocation assistance, replacement housing, and the due process of law, which rights are protected under 42 U.S.C. §1983.

124.   Defendants' conduct, as alleged in this section and throughout the complaint, violates rights secured to the individual Plaintiffs by the Equal Protection Clause of the United States Constitution, in that it was undertaken with the intent of discriminating against them because of their gender.

## SECOND CLAIM FOR RELIEF

### Discrimination on the Basis of Disability/Handicap
### (Federal Fair Housing Act: 42 U.S.C. §3601 *et seq.*)

125.   Plaintiffs reallege paragraphs 1 through 124 above, and incorporate them by reference as though fully set forth herein.

126.   Defendants injured Plaintiffs in violation of the federal Fair Housing Act by committing the discriminatory housing practices that otherwise make unavailable or deny dwellings because of disability/ handicap status, in violation of 42 U.S.C. § 3604(f)(1) and (2).   Handicap status means having or being regarded as having a physical or mental impairment.  42 U.S.C. § 3602(h).

## THIRD CLAIM FOR RELIEF

### Discrimination on the Basis of Familial Status and Gender

### (Federal Fair Housing Act: 42 U.S.C. §3601 *et seq.*)

127.   Plaintiffs reallege paragraphs 1 through 126 above, and incorporate them by reference as though fully set forth herein.

128.   Defendants injured Plaintiffs in violation of the federal Fair Housing Act by committing the discriminatory housing practices that otherwise make unavailable or deny, a dwelling to any person because of sex or familial status in violation of 42 U.S.C. § 3604(a).

129.   Defendants injured Plaintiffs in violation of the federal Fair Housing Act by committing the discriminatory housing practices that discriminates against any person in the terms, conditions, or privileges of the rental of a dwelling and in the provision of services or

**AMENDED** VERIFIED COMPLAINT - Page 25

facilities in connection therewith, because of sex and familial status or national origin, in violation of 42 U.S.C. § 3604(b).

## FOURTH CLAIM FOR RELIEF

### Discrimination on the Basis of Disability/Handicap
### Under a Program or Activity Receiving Federal Financial Assistance
### (Vocational Rehabilitation Act: 29 U.S.C. §§ 794 *et seq.*)

130.  Plaintiffs reallege paragraphs 1 through 129 above, and incorporate them by reference as though fully set forth herein.

131.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, and its implementing regulations prohibit discrimination against disabled individuals by recipients of federal financial assistance.

132.  Defendants are, and were at all relevant times, recipients of such federal financial assistance.

133.  Defendants have violated Section 504 by committing the discriminatory housing practices alleged in the claims for relief under the federal Fair Housing Act.

## FIFTH CLAIM FOR RELIEF

### Failure to Provide Adequate Comparable Replacement Housing,
### or in the Alternative, Failure to Provide Adequate Last Resort Housing
### (42 U.S.C. §§5301 *et seq.*; 42 U.S.C. §§4601 *et seq.* and 49 C.F.R. §§24.2 *et seq.*)

134.  Plaintiffs reallege paragraphs 1 through 133 above, and incorporate them by reference as though fully set forth herein.

135.  The Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 *et seq.* and its implementing regulations, including 24 C.F.R. §§ 570 *et seq.* and 24 C.F.R. §§ 42

**AMENDED** VERIFIED COMPLAINT - Page 26

*et seq.*, and the HOME Investment Partnership Act, 42 U.S.C. §§ 12721, *et seq.*, and its implementing regulations, 24 C.F.R. part 92, *et seq.*, set forth Defendants' obligations to persons displaced as a result of a project assisted with federal funds.

136.   Congress enacted the Housing and Community Development Act and HOME Investment Partnership Act in order to ensure that the housing and relocation needs of low- and very low income persons who are displaced as a result of projects assisted with federal CDBG and HOME funds are met.

137.   The U.S. Department of Housing and Urban Development requires that all HUD assisted programs and projects are subject to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA).   42 U.S.C. §§ 4601, *et seq.*, and its implementing regulations, 49 C.F.R. §§ 24, *et seq.*, and 24 C.F.R. § 42.1(a).

138.   In addition to the URA, the Community Development Block Grant (CDBG) and HOME Investment Partnership funds (HOME) are subject to the Housing and Community Development Act of 1974. 42 U.S.C. § 5304(d), 25 C.F.R. § 42.1(b).   Applicable program regulations may also include additional relocation provisions.   24 C.F.R. § 42.1(c).

139.   Displaced tenants are entitled to relocation benefits pursuant to the Uniform Relocation Act whenever federal funds are used to acquire or rehabilitate property with federal funds. 42 U.S.C. §§ 4601 *et seq*.   The requirements of the Housing and Community Development Act and the Uniform Relocation Act both apply when CDBG funds are used.

140.   On information and belief, CDBG and HOME funds were and are being used by the Defendants for the monitoring and compliance enforcement of the CDBG and HOME

**AMENDED** VERIFIED COMPLAINT - Page 27

grants provided to CHI, the transfer and sale of CHI assets, and the termination of tenancy of the tenants of Community House so it can be acquired, converted, or rehabilitated for other housing uses.

141.   The Housing and Community Development Act requires that the Defendants make available comparable replacement housing into which any displaced tenants can move prior to undertaking any activity which would result in the displacement of a person from his or her residence due to activities assisted with CDBG grant funds.   42 U.S.C. § 5304(d)(2)(A)(iv).

142.   The regulations implementing the Housing and Community Development Act define comparable units as dwelling units which meet the Uniform Relocation Act's definition of comparable housing set forth at 49 C.F.R. § 24.2(d).   24 C.F.R. § 42.305.   This definition states, among other things, that the units must be decent, safe and sanitary; functionally equivalent to the displaced dwelling, in a location not less desirable than the location of the displaced person's dwelling with respect to public utilities and commercial and public facilities, and reasonably accessible to the person's place of employment.   49 C.F.R. § 24.2.

143.   The Uniform Relocation Act also provides that the public agency must assure that comparable housing is available to any person who is required to move from his dwelling on account of any program undertaken with federal funds. 42 U.S.C. § 4626(b); 49 C.F.R. § 24.204(a).   Comparable replacement housing must be decent safe and sanitary as defined in 42 U.S.C. § 4601(10) and 49 C.F.R. § 24.2.   Comparable replacement housing

AMENDED VERIFIED COMPLAINT - Page 28

must be within the displaced person's financial means, functionally equivalent to the displaced dwelling, in a location not generally less desirable than the location of the displaced person's dwelling with respect to public utilities and commercial and public facilities, and reasonably accessible to the person's place of employment. *Id.*

144.   The Defendants have failed to assure that comparable housing is available to the tenants displaced from CHI.

145.   Defendants must create last resort housing if comparable housing does not exist. 49 C.F.R. § 24.404(a). Methods of providing last resort housing may include a rental assistance subsidy, rehabilitation of or additions to an existing replacement dwelling, and construction of a new replacement dwelling. 49 C.F.R. § 24.404(c)(1). In no event shall a displaced person be required to move into a dwelling that is not functionally equivalent. 49 C.F.R. § 24.404(c)(1). Functionally equivalent means that the dwelling performs the same function, provides the same utility, and is capable of contributing to a comparable style of living. 49 C.F.R. § 24.2.

146.   Comparable housing does not exist; nevertheless Defendants have not made last resort housing available in the manner required by 49 C.F.R. § 24.404.

## SIXTH CLAIM FOR RELIEF

### Failure to Comply with the Relocation Benefits Requirements of the Housing and Community Development Act, HOME Investment Partnerships Programs, and Uniform Relocation Act
### 42 U.S.C. §§ 5301 *et seq.*; 24 C.F.R. §§ 42 *et seq.*
### 42 U.S.C. §§ 12721 *et seq.*; 24 C.F.R. §§ 92 *et seq.*
### 42 U.S.C. §§ 4601 *et seq.*; 49 C.F.R. §§ 24.2 *et seq.*

147.    Plaintiffs reallege paragraphs 1 through 146 above, and incorporate them by reference as though fully set forth herein.

148.    When tenants are displaced due to a project assisted with CDBG and HOME funds, the Housing and Community Development Act and HOME program provides that tenants who are displaced when housing is converted to a use other than for low and moderate income housing shall receive and may elect to receive relocation benefits pursuant to the Housing and Community Development Act provisions, 42 U.S.C. § 5304(d)(2)(A)(iii); 24 C.F.R. part 42, or the HOME program 24 CFR §§ 92.353(c) or Relocation Assistance Act provisions, 42 U.S.C. § 4622; 49 C.F.R. §§ 24 *et seq.*  42 U.S.C. § 5304 (d)(2)(B); 24 C.F.R. § 42.350.

149.    Defendants have failed to lawfully compute and provide the benefits that displaced tenants, including the individual Plaintiffs, are entitled to in accordance with the requirements of the Housing and Community Development Act or the Relocation Assistance Act, Defendants have failed and refused to offer such benefits to displaced tenants.

150.    The Defendants have failed to provide tenants who are displaced and must be relocated with comparable replacement housing that is decent, safe, and sanitary, adequate

**AMENDED** VERIFIED COMPLAINT - Page 30

in size to accommodate the occupants, functional equivalent, and in an area not subject to
unreasonable or adverse environmental conditions. 42 U.S.C. § 5304(d)(2)(A)(iv), and 24
C.F.R. § 92.353 and 42 U.S.C. § 4601 (6) and (10).

## SEVENTH CLAIM FOR RELIEF

### Failure to Comply with the Change of Use Regulations for Property
### Acquired or Improved with CDBG Funds
### (24 C.F.R. § 570.505)

151.   Plaintiffs reallege paragraphs 1 through 150 above, and incorporate them by
reference as though fully set forth herein.

152.   The land and construction of Community House was acquired and improved in
1993 and 1994 with CDBG and HOME funds.

153.   The Defendants have failed to provide affected citizens with reasonable notice
and opportunity to comment on the proposed change in use of Community House.

154.   Based upon information and belief, the new use for Community House does not
qualify or meet one of the national objectives in 42 C.F.R. § 570.208.

155.   Based upon information and belief, the proposed sale of Community House will
be for less than the current fair market value of the property, less the portion attributed to
non-CDBG funds.

156.   Defendants have violated the requirements of 24 C.F.R. § 570.505.

**AMENDED** VERIFIED COMPLAINT - Page 31

## EIGHTH CLAIM FOR RELIEF

## Breach of Contract/Duty of Good Faith and Fair Dealing

157.   Plaintiffs reallege paragraphs 1 through 156 above, and incorporate them by reference as though fully set forth herein.

158.   The Memorandum of Understanding, the Lease, and the Operating Agreement (hereinafter Contracts) between the parties constitute the Contracts between the parties.

159.   The conduct of the Defendants under the Contracts, including the execution of the Community House Management Agreement, constitutes a breach of contracts between the parties.

160.   The conduct of and the omissions by the Defendants constitutes a breach of the terms and duties imposed on the parties under the Contracts.

161.   Idaho law created a duty of good faith and fair dealing between parties to a contract.

162.   The intentional, deliberate, and wilful acts and omissions of the Defendants in their performance under the Contracts constitutes a breach of the Defendants' duties of good faith and fair dealing.

## NINTH CLAIM FOR RELIEF

## Breach of Partnership

163.   Plaintiffs reallege paragraphs 1 through 162 above, and incorporate them by reference as though fully set forth herein.

**AMENDED** VERIFIED COMPLAINT - Page 32

164. The Plaintiffs and Defendants formed a "public/private partnership" to build, operate, and manage Community House.

165. The Contracts provide the terms and conditions of that partnership.

166. Defendants' acts and omissions violated of the terms and conditions of the Contracts and the partnership agreement.

167. Defendants' acts and omissions violated of the fiduciary and other duties imposed on partners by Idaho law.

**TENTH CLAIM FOR RELIEF**

**Violations of Idaho Code §§ 50-1401, *et seq.***

168. Plaintiffs reallege paragraphs 1 through 167 above, and incorporate them by reference as though fully set forth herein.

169. Defendants are in violation of the Idaho requirements for selling city real property as set forth at Idaho Code §§ 50-1401, *et. seq.*

170. The Defendants have no authority to sell real property it owns unless it can establish the real property is either: (a) underutilized, or (b) not used for public purposes.

171. Defendants' Ordinance authorizing the sale of Community House does not allege or support a finding that Community House is underutilized.

172. Defendants Ordinance authorizing the sale of Community House does not allege or support a finding Community House is not being used for a public purpose.

173. Community House is not underutilized because thousands of Boise's low income, homeless, and disabled residents, including individuals, families, women, and

**AMENDED** VERIFIED COMPLAINT - Page 33

children on an annual basis utilize the services it provides so they have shelter from the elements, food to subsist upon, and supportive services on which they depend.

174.   The housing and supportive services provided by CHI constitutes a public purpose which has been repeatedly recognized and used by the Defendants.

175.   Defendants are not authorized to sell Community House because of their failure to comply with Idaho Code §§ 50-1401, *et. seq.*

176.   Alternatively, the City's refusal to complete the sale of Community House pursuant to the terms of the Ordinance, violates Idaho Code §§ 50-1401, *et seq.*

## ELEVENTH CLAIM FOR RELIEF

### Violation of Idaho Nonprofit Corporations Act

177.   Plaintiffs reallege paragraphs 1 through 176 above, and incorporate them by reference as though fully set forth herein.

178.   The unauthorized actions and omissions of the then President of CHI in signing the proposed Community House Management Agreement transferring all assets of CHI and terminating its rights under the Contracts constituted violations of the Articles and Bylaws of CHI and the legal requirements for nonprofit corporations pursuant to Section 501(c)(3) of the Internal Revenue Service Code.

179.   These unauthorized actions and omissions constitute a breach of Idaho's Nonprofit Corporations Act, Idaho Code §§ 30-3-1, *et seq.*, and therefore, are void and unenforceable.

## TWELFTH CLAIM FOR RELIEF

### Equitable Estoppel, Equitable Ownership Interests and Equitable Rescission

180.   Plaintiffs reallege paragraphs 1 through 179 above, and incorporate them by reference as though fully set forth herein.

181.   Defendants made false representations and concealed material facts with actual or constructive knowledge of the truth.  CHI did not and could not have discovered the truth. Defendants had intent that CHI relied upon and CHI did rely upon the misrepresentation and concealment of the truth.  CHI was prejudiced as a result.

182.   The dishonest and bad faith acts and conduct of the Defendants constitutes a substantial injustice.

183.   The Defendants should be estopped from asserting its claims of ownership of CHI assets and terminating its rights under the Contracts.

184.   CHI made substantial investments, including millions of dollars in cash and in-kind donations and thousands of hours of time by countless volunteers in constructing, operating, managing, improving, maintaining and repairing Community House.

185.   CHI relied upon the Defendants' good faith and placed their trust in the Defendants.  CHI was manipulated, mislead, threatened, and suffered financial difficulties caused by the Defendants.  This resulted in the Defendants' obtaining all of CHI's investments, assets, and personal property and termination of their contractual rights for no or minimal consideration.

186.   The Community House Management Agreement should be rescinded by the Court and the Management Agreement resulted in a trust, not a transfer of any assets or property of CHI.

187.   CHI's substantial investment in cash and in-kind contributions from community donations and federal grants constituted and resulted in trust and established CHI's equitable interest and ownership in Community House.

### THIRTEENTH CLAIM FOR RELIEF

### Federal Fair Housing Act: 42 U.S.C. §§ 3601, et *seq.*

188.   Plaintiffs reallege paragraphs 1 through 187 above, and incorporate them by reference as though fully set forth herein.

189.   Defendants through their conduct, have unlawfully coerced, intimidated, threatened, or interfered with Plaintiff CHI, on account of having aided or encouraged other persons in the exercise or enjoyment of the rights granted or protected by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of a Judgment against Defendants that:

1.   Declares that Defendants have violated the provisions of the applicable laws governing Federal Family housing programs and requiring replacement housing and relocation assistance;

AMENDED VERIFIED COMPLAINT - Page 36

2.   Declares that Defendants have violated the provisions of the applicable Federal Constitutional rights, Fair Housing Act, section 504, State laws, breaches of the contracts and partnership obligations.

3.   Grants temporary and/or preliminary and permanent injunctive relief restraining and enjoining Defendants, their employees, assignees, successors, and agents from continuing to disregard their statutory duties, including, but not limited to:

a)   Provide one-for-one replacement for the units that were and are made unavailable as a result of the transfer, sale, or closing of the shelter, transitional, and SRO housing units;

b)   Make available comparable replacement housing into which displaced tenants can move, or, in the alternative, create adequate last resort housing;

c)   Notify all persons who have been displaced from Community House of their right to relocation assistance and of how to apply for assistance; and

d)   Provide relocation benefit payments and relocation advisory assistance to each displaced persons in compliance with federal laws.

4.   Enjoins all practices complained about herein and imposes affirmative injunctive relief requiring Defendants, their partners, agents, employees, assignees and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to disability/handicap, familiar, status, and gender.

**AMENDED** VERIFIED COMPLAINT - Page 37

5.  Grant equitable relief to rescind any transfer of Community House's  assets and termination of rights and award equitable ownership and interest in Community House to CHI.

6.  Award compensatory and punitive damages according to proof;

7.   Awards Plaintiffs their costs incurred herein;

8.  Awards Plaintiffs their reasonable contractual attorneys' fees;

9.  Awards all such other relief as the Court deems just.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a jury trial.

DATED this 1st day of August, 2005.

Howard A. Belodoff
Attorney for Plaintiff

**AMENDED** VERIFIED COMPLAINT - Page 38

STATE OF IDAHO          )
                        : ss.
County of Ada           )

SUE COBLEY, being first duly sworn on oath, deposes and says:

That she is the President of Plaintiff Community House, Inc., in the above matter, has read the foregoing document, knows the contents thereof and believes the same to be true and correct.

DATED this 1st day of August, 2005.

                                        Sue Cobley
                                        Sue Cobley, President
                                        Community House, Inc., Plaintiff

SUBSCRIBED AND SWORN to before me this 1st day of August, 2005.

                                        Notary Public for Idaho
                                        Residing at Boise
                                        Commission Expires: 6/2/06

**AMENDED** VERIFIED COMPLAINT - Page 39