# Boise City Attorney's Office

**Cary B. Colaianni**
Boise City Attorney

**Boise City Hall**
150 N. Capitol Boulevard

**Mailing Address**
P. O. Box 500
Boise, Idaho 83701-0500

**Phone**
208/384-3870

**Fax**
208/384-4454

**TDD/TTY**
800/377-3529

**Web**
www.cityofboise.org

**Mayor**
David H. Bieter

**City Council**
**President**
Maryanne Jordan

**Council ProTem**
Elaine Clegg

Vernon L. Bisterfeldt
David Eberle
Alan W. Shealy
M. Jerome Mapp

August 4, 2005

Howard A. Belodoff
Zo Ann Olson
James A. Cook
Idaho Legal Aid Services, Inc.
310 North 5th Street
Boise, Idaho 83701
**VIA FACSIMILE AND HAND DELIVERED**

    Re:    Community House, Inc. *et al.* v. City of Boise *et al.*
            Case No. CIV 05-283-S-BLW

Counselors:

This letter will again confirm Cary Colaianni's and my conversation with Mr. Belodoff on July 26, 2005, in which we agreed that in order to expedite the filing of an Amended Complaint and its service on the defendants and to meet its obligations under Rule 4(d), Federal Rules of Civil Procedure, the City will accept a request for waiver of service on the City's behalf. In so doing, please direct the request to either Scott Muir or me at the Office of the City Attorney.

Thank you for your interest in moving this matter forward in a manner most efficient to all the parties.

           Very truly yours,

           J. Patrick Riceci
           Assistant City Attorney

cc:    Scott Muir





EXHIBIT
2

Howard A. Belodoff
Attorney at Law
Idaho Legal Aid Services, Inc.
P.O Box 913
Boise, Idaho 83701
Tel (208) 336-8980
Fax (208) 342-2561

BOISE CITY
REC'D CITY CLERK

07 MAY -8  PM 1:56

Attorneys for Claimant

## NOTICE OF TORT CLAIM

To:   City Clerk
      City of Boise
      State of Idaho
      May 4, 2007

COMES NOW Community House Inc., hereinafter the Claimant, to hereby give notice to the City of Boise located in the State of Idaho and its officials, employees, agents and contractors, hereinafter the City, pursuant to Idaho Code §§6-901 et. seq. The Claimant and City have entered contractual agreements governing their partnership in constructing, managing and operating a homeless shelter, transitional housing and single resident occupancy facility in the City know as Community House.  On February 8, 1994, the City Council passed Resolution No. 12635, approving a Memorandum of Understanding ("MOU") and partnership with Claimant to provide housing and services to homeless and low-income persons. The City agreed to provide funds necessary to make the project successful. *Id.*

Claimant raised $392,685 from private and corporate contributions, and secured a $657,315 loan from the Federal Home Loan Bank's ("FHLB") Affordable Housing Program as its contribution to the construction costs and to furnish Community House.  The City and Claimant also signed a fifty (50) year lease in 1994 that expires October 1, 2044. The City agreed to maintain and repair the premises.  The City and Claimant also entered into an Operating Agreement for the facility.

EXHIBIT

tabbies

3

The federal funding used to construct CH required the division of the facility into three types of housing. The first floor was designated to house single men and women in separate dorms. The second floor was designated to house families with children in either emergency shelter or transitional housing family units. The third floor contained thirty-nine (39) SRO units leased to rent paying tenants. Federal funding required the City and Claimant to ensure the housing would be affordable to low income persons for a specific period of time. HOME program funding required the SRO and transitional housing units have a twenty (20) year period of affordability expiring March 2010. The FHLB loan requires a fifteen (15) year period of affordability that, if satisfied, would be forgiven, and the Claimant would have owned the facility free and clear. *Id.* The loan also required the FHLB's approval and consent before any transfer or assignment. The FHLB did not consent to any transfer or assignment of the CH loan from Claimant to the City, nor to the sale or lease of the building to a third party.

The City failed to comply with its contractual obligations required by the MOU, Lease Agreement, and Operating Agreement. On or about November 20, 2006, the City, in violation of its contractual obligations and its fiduciary duties and without the notice or consent of the Claimant terminated the contractual agreements between the parties and paid off the Claimant's FHLB loan. On or about February 9, 2007, the City intentionally and in bad faith breached its contractual agreements with the Claimant, by selling, without the consent or permission, the Claimant's interest in Community House and the personal property of the Claimant to a third party. The City took these actions without providing the Claimant notice or opportunity to cure any alleged violations of the contractual agreements.

The action of the City and its officials, employees, agents and contractors, in the scope of their employment, constitute negligent, grossly negligent, intentional, reckless and deliberate

conduct, breaches of its fiduciary duties and failure to train and supervise its officials, employees, agents and contractors. The acts complained of herein were undertaken in bad faith and retaliatory, and in violation of the contractual agreements entered into in good faith by the Claimant and the City. The City had no proper governmental interest or justification to interfere with the Claimant's relationship with the FHLB. The City's objective and purpose in breaching its contractual obligations and inferring with Claimant's contractual and economic relationship with the FHLB was to harm and injure the Claimant and cause it to suffer losses and damages to benefit only the City financially. The City used wrongful means including deceit, misrepresentation and disparaging falsehoods to cause harm and injury to the Claimant's business relationship with the FHLB. The Claimant has suffered economic losses and damages and other injuries. The Claimant seeks compensatory and punitive damages. The total damages are unknown at this time.

DATED this ___7th___ day of ___May___, 2007.

Respectfully submitted,

Howard A. Belodoff
Idaho Legal Aid Services, Inc.
Attorneys for Claimant

Howard A. Belodoff, ISB # 2290
Zoe Ann Olson, ISB # 5856
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID   83701
(208) 336-8980, ext. 106

Attorneys for Plaintiffs/Appellants

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| COMMUNITY HOUSE, INC.,<br>MARLENE K. SMITH, GREG A. LUTHER,<br>JAY D. BANTA<br><br>        Plaintiffs/Appellants,<br><br>vs.<br><br>CITY OF BOISE, IDAHO, DAVID H.<br>BIETER, Mayor; BOISE CITY COUNCIL;<br>MARYANN JORDAN, ELAINE CLEGG,<br>VERNON BISTERFELDT, DAVID EBERLE,<br>JEROME MAPP, and ALAN SHEALY,<br>Boise City Council Members; BRUCE<br>CHATTERTON, Director, Planning and<br>Development Services; JIM BIRDSALL,<br>Manager, Housing and Community Development,<br><br>        Defendants/Appellees. | No. 05-36195<br>D.C. No. CV-05-00283-BLW<br><br><br>DECLARATION OF ZOE ANN<br>OLSON IN SUPPORT OF<br>PLAINTIFFS' EMERGENCY<br>MOTION |

EXHIBIT
**4**

DECLARATION OF ZOE ANN OLSON IN SUPPORT OF PLAINTIFFS' EMERGENCY
MOTION- Page 1

STATE OF IDAHO      )
                          ) ss.

County of Ada         )

I, ZOE ANN OLSON, do hereby declare:

1.     I am co-counsel of record for the Plaintiffs in the above-entitled action.

2.     On February 21, 2007, at 1:14 p.m. MST, Judge Lynn Winmall denied Plaintiffs'

request to enjoin the sale of the Community House facility by the City of Boise to

the Boise Rescue Mission Ministries. See Exhibit A.

3.     On February 23, 2007, I contacted Defendants' legal counsel, Phil Collaer by

email, and requested that he verify whether the Defendants sold the Community

House facility and Community House Inc.'s personal property to the Boise Rescue

Mission Ministries. I further requested that he provide the documentation of the

sale. The email is attached as Exhibit B.

4.     To date, Mr. Collaer has not responded to my request for verification of the sale.

5.     Today, March 22, 2007, I obtained a copy of the General Warranty Deed at the

Ada County Recorder's Office that shows the Boise Rescue Mission Foundation,

Inc. bought Community House and recorded the General Warranty Deed on

February 21, 2007 at 4:56 p.m. The Warranty Deed is attached as Exhibit C.

DECLARATION OF ZOE ANN OLSON IN SUPPORT OF PLAINTIFFS' EMERGENCY
MOTION- Page 2

I declare, under penalty of perjury that the aforementioned information is true and correct to the best of my knowledge.

DATED this 22nd day of March, 2007.

Zoe Ann Olson

DECLARATION OF ZOE ANN OLSON IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION- Page 3

## CERTIFICATE OF SERVICE

I hereby certify that on the 22[th] day of March, 2007, I caused to be mailed, postage prepaid, a true and correct copy of the foregoing Declaration of Zoe Ann Olson in Support of Plaintiffs' Emergency Motion to:

Robert Anderson
Phillip Collaer
Anderson, Julian & Hull, LLP
PO Box 7426
Boise ID 83707-7426

Brent Sokol
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA   90071


Franklin G. Lee
Martin Hendrickson
Givens Pursley, LLP
PO Box 2720
Boise ID 83701-2720


_____
Howard A. Belodoff

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

## U.S. District Court

## District of Idaho (LIVE Database)Version 3.0.4

## Notice of Electronic Filing and Service

The following transaction was entered on 2/21/2007 at 1:14 PM MST and filed on 2/21/2007
**Case Name:**        Community House, Inc. et al v. City of Boise, et al
**Case Number:**      1:05-cv-283
**Filer:**
**Document Number:** 150

**Docket Text:**
MEMORANDUM DECISION AND ORDER denying [124] Motion for Temporary and/or Preliminary Injunction. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by jlg, )

**1:05-cv-283 Notice has been electronically mailed to:**

Robert A Anderson    raanderson@ajhlaw.com, dlevans@ajhlaw.com, mdonnelly@ajhlaw.com

Howard A Belodoff    howardbelodoff@idaholegalaid.org, bevallen@idaholegalaid.org

Phillip J Collaer    pcollaer@ajhlaw.com, jmoffit@ajhlaw.com, mdonnelly@ajhlaw.com

Martin C Hendrickson    mch@givenspursley.com, terryhancock@givenspursley.com

Franklin George Lee    franklee@givenspursley.com

Scott B Muir    BoiseCityAttorney@cityofboise.org

**1:05-cv-283 Notice will be served by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1089316566 [Date=2/21/2007] [FileNumber=419282-0]
[47af2cfae7e048197b557e601173ccd68a1461b8f36732bd027848f134ae3c41ee7e
0a1f3e4dfba1db973c30a5dc3f18a9ef7fe7d5c0875e38179882741b7e9e]]


EXHIBIT
A

## Howard Belodoff

| | |
|---|---|
| **From:** | "Zoe Ann Olson" <zoeannolson@idaholegalaid.org> |
| **To:** | <pcollaer@ajhlaw.com> |
| **Cc:** | "Howard Belodoff" <howardbelodoff@idaholegalaid.org> |
| **Sent:** | Friday, February 23, 2007 3:49 PM |
| **Subject:** | Verification that the City Sold Community House to the Boise Rescue Mission |

Dear Mr. Collaer:

Could you please verify that the City has sold the Community House facility and personal property to the Boise Rescue Mission.  Please, provide any documents related to the sale.

Sincerely,

Zoe Ann Olson
Attorney at Law



ADA COUNTY RECORDER J. DAVID NAVARRO     AMOUNT 15.00     5
BOISE IDAHO 02/21/07 04:56 PM
DEPUTY Bonnie Oberbillig
RECORDED–REQUEST OF
Title One                                                  107025338

When recorded, please return to:

Givens Pursley LLP
Attention: Franklin G. Lee
601 West Bannock Street
Boise, Idaho 83702
(208) 388-1200

# GENERAL WARRANTY DEED

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, City of Boise City, a municipal corporation of the State of Idaho, whose mailing address is PO Box 500, 150 N. Capitol Boulevard, Boise, Idaho 83701 (hereinafter referred to as the "*Grantor*"), hereby grants, bargains, sells, and conveys unto BRM Foundation, Inc., an Idaho nonprofit corporation, whose current address is 1415 W. Jefferson Street, PO Box 1494, Boise, Idaho 83701 (hereinafter referred to as the "*Grantee*"), the following described real property, located in Ada County, Idaho, to wit (hereinafter referred to as the "*Premises*"):

See Exhibit A attached hereto and incorporated herein by this reference.

TOGETHER WITH all water and water rights, ditch or irrigation company shares, streets, alleys and rights of way adjacent thereto, all mineral rights appurtenant thereto, and all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining, the reversion and reversions, remainder and remainders, rents, issues, and profits thereof; and all estate, right, title, and interest in and to the Premises, as well in law as in equity.

TO HAVE AND TO HOLD the Premises with its appurtenances unto Grantee, its successors, heirs and assigns, forever.

SUBJECT TO the following: (a) matters set forth on Exhibit B to this General Warranty Deed attached hereto and incorporated herein; and (b) the deed restriction set forth on Exhibit C to this General Warranty Deed attached hereto and incorporated herein (the items listed in (a) and (b) are referred to herein collectively as "Permitted Exceptions").

AND Grantor does hereby covenant to and with Grantee, and its successors and assigns forever, that Grantor is owner in fee simple of the Premises; that Grantor has a good right to convey the fee simple; that the Premises is free from any and all liens, claims, encumbrances or other defects of title except the Permitted Exceptions; that Grantor shall and will warrant and defend the quiet and peaceful possession of said Premises by Grantee, and its successors and assigns forever, against all other claims whatsoever except as excluded or excepted herein; and that Grantor and its heirs and assigns will, on demand of the Grantee or its heirs or assigns, execute any instrument necessary for the further assurance of the title to the Premises that may be reasonably required.

EXHIBIT

tabbies

C

DATED effective as of the 21ˢᵀ day of FEBRUARY, 2007.

GRANTOR:

CITY OF BOISE CITY

_David H. Bieter_ (signature)

David H. Bieter
Mayor

ATTEST:

_Annette P. Mooney_ (signature), DEPUTY FOR,

Annette P. Mooney
City Clerk



STATE OF IDAHO        )
                      ) ss.
County of Ada         )

On this 21 day of February, 2007, before me, a notary public in and for said state, personally appeared David H. Bieter and Annette P. Mooney known to me to be the Mayor and City Clerk of the City of Boise City, who executed the within instrument, and acknowledged to me that the City Boise City executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_(Notary seal: WENDY BURROWS-JOHNSON, NOTARY PUBLIC, STATE OF IDAHO)_

_(signature)_

Notary Public for Idaho
Residing at Caldwell, Idaho
My Commission Expires: 10-14-11

GENERAL WARRANTY DEED - 2
S:\clients\71221\5\General Warranty Deed GP01.doc

## EXHIBIT A

Description of Premises

PARCEL I

Lot 1 and 2 in Block 2 of Riverside Addition to Boise City, Idaho according to the official plat thereof filed in Book 1 of Plats at Page 13, Official records of Ada County, Idaho.

EXCEPT:

That portion Deeded to Ada County Highway District recorded June 29, 1993 as Instrument No. 9350959, records of Ada County, Idaho more particularly described as follows:

A parcel of land for public right-of-way being a portion of Lot 1, Block 2 of Riverside Addition, a Subdivision, as filed for record in the office of the Ada County Recorder, Boise, Idaho, in Book 1 of Plats at Page 13, lying in the Northeast Quarter of Section 9, Township 3 North, Range 2 East, Boise Meridian, Ada County, Idaho and more particularly described as follows:

Beginning at a point marking the Southwest corner of said Lot 1, said point being the REAL POINT OF BEGINNING; thence

North 25°39'23" West (formerly North 25°30' West), 142.00 feet along the Westerly boundary of said Lot 1 to a point marking the Northwest corner of said Lot 1; thence

North 64°30'16" East (formerly North 64°30' East), 2.00 feet along the Northerly boundary of said Lot 1 to a point; thence

South 25°39'23" East (formerly South 25°30' East), 128.96 feet along a line 2.00 feet Easterly of and Parallel to said Westerly boundary of Lot 1 to a point; thence

South 70°29'44" East, 18.44 feet to a point on the Southerly boundary of said Lot 1; thence

South 64°30'16" West (formerly South 6°47'30" West), 15.00 feet along said Southerly boundary of Lot 1 to the REAL POINT OF BEGINNING, said parcel containing 369 square feet, more of less.

PARCEL II

Lots 3 and 4 in Block 2 of Riverside Addition to Boise City, Idaho, according to the official plat thereof filed in Book 1 of Plats at Page 13, Official Records of Ada County, Idaho.

PARCEL III

Lots 5 and 6 in Block 2 of Riverside Addition, according to the plat thereof, filed in Book 1 of Plats at Page 13, records of Ada County, Idaho.

PARCEL IV

Lots 11 and 12 in Block 10 of City Park Subdivision, according to the plat thereof, filed in Book 1 of Plats at Page 14, records of Ada County, Idaho.

PARCEL V

The Southwesterly 2.5 feet of Lot 7 (measured parallel and adjacent to the common line between Lot 7 and Lot 8), all of Lots 8, 9 and 10 of Block 10, CITY PARK SUBDIVISION, as amended, according to the official plat there of, filed in Book 1 of Plats at Page 14, records of Ada County, Idaho.

## EXHIBIT B

Permitted Exceptions

1.  The Premises is located within the boundaries of Boise City and is subject to any assessments levied by Boise City.

2.  Easements, reservations, restrictions, and dedications as shown on the official plat of Riverside Addition.

3.  Easements, reservations, restrictions, and dedications as shown on the official plat of City of Park Subdivision.

4.  All matters, and any rights, easements, interests or claims as disclosed by Jack Kitchens Survey recorded January 26, 1979 as Instrument No. 7905152.

## EXHIBIT C

### Deed Restriction

For a period commencing on the date of recordation of this General Warranty Deed and expiring on the tenth (10th) anniversary thereof ("Restriction Term"), the Grantee shall operate, or cause to be operated, (i) an emergency homeless shelter with a capacity to serve not fewer than sixty-six (66) guests, and (ii) meal service (which may be supplied from an off-Premises facility) with a capacity to serve not fewer than one-hundred (100) guests per meal for two meals per day (collectively "Shelter Services") on the Premises. The Shelter Services shall be operated each and every date of each year of the Restriction Term, except (i) for closures caused by strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefore, governmental restrictions (including entitlement restrictions), governmental regulations, governmental controls, enemy or hostile governmental action, civil commotion, fire or other casualty, and other causes beyond the owner's or operator's reasonable control, (ii) for temporary closures for repairs, maintenance or improvements to the Premises, provided that the Shelter Services shall not be closed for more than forty-eight (48) hours without Grantor's prior written consent (except in the event of a bona fide emergency) and Grantee shall use reasonable efforts, when possible, to cause such closures to occur from June 1 to October 1 each year, and (iii) for such periods of time as Shelter Services from other locations within the City of Boise provide sufficient facilities to accommodate the then current and anticipated demand for Shelter Services required to be operated under this Deed Restriction. This Deed Restriction shall not limit or restrict other programs or activities on the Premises.

If, at anytime during the Restriction Term, Grantee provides evidence to Grantor that Grantee has increased the Shelter Services provided from other facilities in Boise, Idaho ("Alternate Facilities"), and such Alternate Facilities provide sufficient facilities to accommodate the Shelter Services required to be operated on the Premises, then this Deed Restriction shall terminate. Grantor shall promptly execute and record written evidence of the termination of the Deed Restriction.

If, at anytime during the Restriction Term, Grantee breaches the terms of the Deed Restriction and fails to cure such breach within thirty (30) days after receipt of written notice from Grantor stating specifically the violations of the Deed Restriction (the "Default Notice"); provided, however, that if the nature of the default is such that it cannot reasonably be cured within such thirty (30) day period, Grantee shall not be deemed to be in default if within such thirty (30) day period Grantee commences the cure and thereafter diligently prosecutes the same to completion. Grantee acknowledges and agrees that in the event of Grantee's default, damages may not make Grantor whole and, therefore, Grantor agrees that this Deed Restriction shall be subject to specific performance. In the event of Grantee's default, Grantor may, in-lieu-of any other remedies, bring an action against Tenant for (i) specific performance of the Deed Restriction and (ii) the extension of the Restriction Term for a period equal to the period that Grantee was not in compliance of this Deed Restriction after the Default Notice. In such event Grantor prevails on any such claim, Grantor and Grantee shall execute and record a written instrument against the Premises setting forth the extension of the Restriction Term.

Susie

The Ninth Circuit issued its ruling on November 9 2006.  Thereafter, the City of Boise filed a Petition for Reconsideration or Rehearing En Banc.  On December 12, the panel ordered Community House to respond to the petition.  Their brief was due 1/12/07.  An extension of that date has been requested because Mr. Belodoff is scheduled for surgery in late December and will need additional time to recover and prepare his clients response.  Consistent with the courts 10/11/06 Order, once the case before the appellate court is resolved we will immediatly notify the court.  Please let me know if you need any further information.


Phillip J. Collaer
Anderson Julian & Hull
P.O. Box 7426
Boise, Idaho 83707-7426
Telephone: (208) 344-5800
Fax: (208) 344-55510
email: pcollaer@ajhlaw.com

    -----Original Message-----
**From:** Susie_Boring-Headlee@id.uscourts.gov [mailto:Susie_Boring-Headlee@id.uscourts.gov]
**Sent:** Wednesday, December 27, 2006 5:21 PM
**To:** howardbelodoff@idaholegalaid.org; Phil Collaer; Rob Anderson; BoiseCityAttorney@cityofboise.org
**Subject:** Fw: Ninth Circuit No. 05-36195 (D.C. No. CV-05-283-S-BLW)


Hi counsel.  I sent a note to the Ninth Circuit to inquire about the Interlocutory Appeal in this case.
Please see the response I received below.  I will let you know if I hear anything further about this motion.
I just thought I would check on the status of this case.  As you  know, the Judge entered the order (see below) on the motion to Supplement Amended Complaint (Docket No. 5).  Susie

| 10/11/2006 | 123 | DOCKET ENTRY ORDER - The conference set for October 19, 2006, is hereby VACATED. This case is presently on appeal to the Ninth Circuit. All deadlines are suspended. Counsel are directed to contact Dave Metcalf at (208) 334-9025 when Circuit has rendered a decision. Signed by Judge B. Lynn Winmill. (sbh) |
|---|---|---|



**Susie Boring-Headlee**
**Chambers of Chief Judge**
**B. Lynn Winmill**

**Phone (208) 334-9145**
**FAX   (208) 334-9209**

----- Forwarded by Susie Boring-Headlee/IDD/09/USCOURTS on 12/27/2006 05:18 PM -----

**Polly Estes/CA09/09/USCOURTS**

12/27/2006 05:13 PM

    To  Susie Boring-Headlee/IDD/09/USCOURTS@USCOURTS

    cc

    Subject  Re: Ninth Circuit No. 05-36195   (D.C. No. CV-05-283-S-BLW) Link


The panel is considering the motion for reconsideration.  I'm afraid I don't know anything further.  I haven't been involved with this case for some time, but let me know if you have any further questions.  Once the panel rules on the motion for reconsideration, you should receive an order.

EXHIBIT

5

Thank you,

Polly J. Estes
Motions Attorney
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA  94103-1526
(415) 556-9225

---

**Susie Boring-Headlee/IDD/09/USCOURTS**

12/27/2006 04:10 PM

To  Polly Estes/CA09/09/USCOURTS@USCOURTS

cc

Subject  Ninth Circuit No. 05-36195    (D.C. No. CV-05-283-S-BLW)

---

Hi Polly.  What is the status of this appeal?  Thank you very much!

| 02/28/2006 | ☒ 121 | ORDER of USCA as to <u>114</u> Notice of Interlocutory Appeal filed by Community House, Inc.,, Marlene K Smith,, Greg A Luther,, Jay D Banta, (wm, ) (Entered: 03/03/2006) |
|---|---|---|



**Susie Boring-Headlee**
**Chambers of Chief Judge**
**B. Lynn Winmill**

**Phone (208) 334-9145**
**FAX   (208) 334-9209**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FORT HALL LANDOWNERS ALLIANCE, INC., ELI MOSHO, and FRANK PAPSE, SR., ET AL., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| BUREAU OF INDIAN AFFAIRS, UNITED STATES DEPARTMENT OF THE INTERIOR, and GAYLE NORTON, Secretary, U.S. Department of the Interior, | ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. CV-99-52-E-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Court has before it Defendants' Motion to Reconsider (Docket No. 206),

Plaintiffs' Motion to Substitute Class Representatives (Docket No. 209), and the issue of

notice raised at the January 16, 2003 hearing (Docket No. 218). The Court has

considered the briefing and oral arguments and issues the following decision.

Defendants' Motion to Reconsider is granted in part: Fort Hall Landowners Alliance and

Eli Mosho will be struck from the class. Plaintiffs' Motion to Substitute Class

Representatives will be denied without prejudice, and notice shall be sent to all allotment

owners in the Fort Hall Indian Reservation from February 5, 1993, through the present to

MEMORANDUM DECISION AND ORDER – PAGE 1



EXHIBIT

6

219

the extent that record keeping is available.

## BACKGROUND

The Court has fully discussed the background of this litigation in the Court's Memorandum Decision and Order of March 28, 2001 (Docket No. 166). The Court will not repeat that discussion here. Instead, the Court will only provide a brief overview of the relevant procedural history in this case.

On August 20, 2002, the Court certified the class of "all owners of trust land on the Fort Hall Indian Reservation who had their names, addresses, and land ownership information disclosed by Defendants in violation of federal regulations and the Privacy Act." *Memorandum Decision and Order, August 20, 2002*, p.11 (Docket No. 204). Defendants subsequently filed a Motion to Reconsider, in which Defendants move to dismiss the original three plaintiffs in the case. In their response, Plaintiffs stipulate to the dismissal of two of these plaintiffs, Fort Hall Landowners Alliance ("FHLA") and Eli Mosho.[1] Frank Papse is the only original plaintiff still remaining in the suit.

## DISCUSSION

I.    *The Court's Authority to Entertain Defendants' Motion for Reconsideration*

In the Court's August 20, 2002, Memorandum Decision and Order, which conditionally certified the Plaintiff class, the Court did not address Defendants' claims

---

[1]FHLA was dismissed because corporate entities like FHLA do not have rights under the Privacy Act. Eli Mosho was dismissed since he died after the initiation of the suit and privacy rights die with the individual.

MEMORANDUM DECISION AND ORDER – PAGE 2

that the statute of limitations had run, because the Court stated that a more developed factual record was necessary. *Memorandum Decision and Order, August 20, 2002*, p.9. Defendants filed a Motion for Reconsideration claiming that the class representatives are time-barred by the statute of limitations. Defendants bring their Motion for Reconsideration under Rules 23(c)(1), 23(c), 59, and/or 60 of the Federal Rules of Civil Procedure. After additional briefing, the Court finds it possible to determine whether the statute of limitations had run based on the pleadings alone. The Court therefore will apply the standards governing a Rule 12(b) motion to dismiss.[2]

In considering a motion to dismiss for the running of the statute of limitations, the Court must take the non-moving party's factual allegations as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. Of Bus., Inc.*

---

[2]Because the Privacy Act is not jurisdictional, *see infra Equitable Tolling*, the Court will consider Defendant's Motion for Reconsideration as a Rule(12)(b)(6) motion to dismiss for failure to state a claim. *See Capital Tracing, Inc. v. United States*, 63 F.3d 859, 861 n.3 (9th Cir. 1993). Plaintiffs argue that the law of the case doctrine bars the Court from entertaining a motion to dismiss for failure to state a claim. At first blush, Plaintiffs' argument seems to have merit. In its March 28, 2001, Memorandum Decision and Order, the Court denied in part Defendants' motion for summary judgment. Ordinarily, denying a motion for summary judgment would preclude the Court from granting a motion to dismiss for failure to state a claim. In this case, however, Defendants have not previously raised the statute of limitations argument. Therefore the statute of limitations argument falls outside the scope of the Court's prior holding in its March 28, 2001, Memorandum Decision and Order. *See Memorandum Decision and Order, March 28, 2001*, p. 13 (Docket No. 166).

Although Defendants did not raise the statute of limitations as an affirmative defense in their answer, the defense is not waived prior to trial so long as no prejudice results. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). Plaintiffs do not assert that prejudice resulted, and the Court finds no prejudice.

MEMORANDUM DECISION AND ORDER – PAGE 3

*v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court must draw all reasonable

inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d

556, 561 (9th Cir. 1987). The Court may grant a motion to dismiss based on the running

of a statute of limitations period only "if the assertions of the complaint, read with the

required liberality, would not permit the plaintiff to prove that the statute was tolled."

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (quoting

*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "In fact, a complaint

cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

facts that would establish the timeliness of the claim." *Supermail Cargo*, 68 F.3d at 1208.


II.     *When Plaintiffs Knew or Should Have Known of the Violation*

Plaintiffs have two years from the date they knew or should have known of a

Privacy Act violation to file their claims. *Englerius v. Veterans Administration*, 837 F.2d

895, 897 (9th Cir. 1988); 5 U.S.C. § 5522(g)(5). Plaintiffs argue that knowledge of a

Privacy Act violation requires both awareness of the disclosure and acquisition of the

legal knowledge that the Privacy Act prohibited the disclosure. Plaintiffs assert that the

case law's use of the term "violation" instead of "disclosure" requires this reading.

Despite the half-dozen cases cited by Plaintiffs, the Court is aware of no case that

squarely supports Plaintiffs' position. Instead, statutes of limitations are "triggered by

[claimants'] knowledge of the transaction that constituted the alleged violation, not by

MEMORANDUM DECISION AND ORDER – PAGE 4

their knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)

(holding that statute of limitations had run on ERISA claim).  Plaintiffs' Privacy Act

claim accrued as soon as Plaintiffs either were aware, or should have been aware, of the

existence of and source of injury, not when the Plaintiffs knew or should have known that

the injury constituted a legal wrong. *See United States v. Kurbrick*, 444 U.S. 111, 122-23,

100 S.Ct. 352, 359-60 (1979) (differentiating between ignorance of legal rights and

ignorance of injury or its cause in medical malpractice case); *Lee v. United States*, 809

F.2d 1406, 1410 (9th Cir. 1987) (finding quiet title claims accrue on awareness "of the

existence of and source of his injury, not when [claimant] knows or should know that the

injury constitutes a legal wrong").  To hold otherwise would require insufficient diligence

by Plaintiffs in protecting their rights.

    The pleadings clearly indicate when Plaintiffs knew or should have known of the

alleged Brady-Fremont Privacy Act violations.  According to Plaintiffs' original

Complaint, Idaho Power Company mailed a letter to each individual landowner with an

allotment crossed by the Brady-Fremont transmission line. *Complaint*, ¶39-40 at p.11-12

(Docket No. 1).  By January 6, 1998, Mr. Papse, chairman of the Fort Hall Landowners

Alliance, wrote a letter to the Superintendent of the Fort Hall Indian Association, stating

"a current and complete ownership list, with addresses and individual ownership interests

. . . has already been provided to Idaho Power Co. as evidenced by the consent to lease

forms they have already mailed, by certified mail, to the landowners." *Complaint*,

Plaintiff's Exhibit 15; *see also Complaint*, ¶40 at p.11-12. The plain language of Mr.

Papse's request demonstrates that Mr. Papse knew or should have known of the alleged

Brady-Fremont Privacy Act violations by January 6, 1998.[3] Without more, however, the

Court cannot say as a matter of law that all Plaintiffs knew or should have known of the

alleged violations by the date of Mr. Papse's letter. Based on the pleadings alone, the

Court cannot dismiss the Privacy Act claims of all Plaintiffs as being time-barred.

The Court can, however, address whether Mr. Papse's claims are time-barred. The

statute of limitations runs two years from the date Plaintiffs knew or should have known

of a Privacy Act violation. *Englerius*, 837 F.2d at 897. Therefore, Mr. Papse had until

January 6, 2000, two years from the date of his letter, to file a Privacy Act claim.

However, Plaintiffs did not file their first Privacy Act claim until April 12, 2000, in the

Amended Complaint. Mr. Papse's Privacy Act claims are time-barred unless the statute

of limitations was tolled or the First and Second Amended Complaints relate back to the

original Complaint.


III.   *Equitable Tolling*

Defendants argue that the Privacy Act statute of limitations is not subject to

equitable tolling, because they claim that the statute of limitations is jurisdictional. In

---

[3]Mr. Papse could also be charged with knowledge of the violations as early as December 21, 1997, the date of Idaho Power's letter to the various Brady-Fremont right-of-way allotment holders.

MEMORANDUM DECISION AND ORDER – PAGE 6

order for a statute of limitations to be jurisdictional, the statute must use the language of jurisdiction. *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997). The Privacy Act, however, does not use such language, and therefore does not present a jurisdictional bar. *See* 5 U.S.C. § 5522(g)(5).[4] Instead, the Privacy Act's statute of limitations is subject to a rebuttable presumption of equitable tolling. *Cedars-Sinai*, 125 F.3d at 770; *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S.Ct. 453 (1990).

Plaintiffs make three separate arguments that the statute of limitations was equitably tolled; all three of Plaintiffs' arguments fail. Plaintiffs first claim that the statute of limitations under the Privacy Act is properly tolled until September 30, 1998, the date the Department of the Interior finished its administrative review of Plaintiffs' Freedom of Information Act claims. Regardless of whether the Freedom of Information Act claims could be brought before the Court prior to the conclusion of the administrative review, Privacy Act claims seeking civil damages have no administrative review requirements. *See Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir. 1986). The statute of limitations on the Privacy Act claims therefore were not tolled by the administrative

---

[4] The Privacy Act states in relevant part: "An action . . . may be brought . . . within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, this action may be brought at any time within two years after discovery by the individual of the misrepresentation." 5 U.S.C. § 5522(g)(5).

**MEMORANDUM DECISION AND ORDER – PAGE 7**

review of Plaintiffs' Freedom of Information Act claims.

Second, Plaintiffs argue that the statute of limitations should be tolled until July 9, 1999, the date that the Department of the Interior officially issued a policy statement directing that the BIA would cease to issue information in violation of the Privacy Act. Plaintiffs' theory is that, even after the Brady-Fremont allotment owners received their mailings by the Idaho Power Company, the BIA fraudulently misrepresented and concealed that the BIA had an ongoing policy of distributing material in violation of the Privacy Act.

Plaintiffs' argument does not toll the statute of limitations for the Brady-Fremont right-of-way disclosures. Plaintiffs do not argue that the fraudulent misrepresentation or concealment *prevented* the landowners from learning of the Brady-Fremont disclosures. Instead, Plaintiffs argue that the fraudulent misrepresentation or concealment occurred after the landowners were already aware of the disclosure. Defendants' alleged misrepresentation or concealment did not induce or trick Plaintiffs into allowing the filing deadline to pass. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990); *see generally Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-96, 117 S.Ct. 1984, 1992-94 (1997). At best, Plaintiffs' argument could only toll the statute of limitations for violations after the Brady-Fremont disclosures. The Court presently sees no facts in the pleadings alleging other specific disclosures. Therefore, this argument does not toll the statute of limitations based on the facts currently before the Court.

MEMORANDUM DECISION AND ORDER – PAGE 8

Third, Plaintiffs claim the statute of limitations was tolled due to the lack of clarity in the law over whether the landowners' information was protected by the Privacy Act. Lack of clarity in the law may be a rationale for equitable tolling, but it does not apply in this case. Courts have tolled statutes of limitations for lack of clarity when the lack of clarity relates to a jurisdictional element of the claim. For example, in *Valenzuela v. Kraft, Inc.*, plaintiff's improper filing in state court tolled the federal statute of limitations because the law regarding the proper forum was unclear at the time, the purpose of the statute of limitations was satisfied, and plaintiff "exercised great diligence, however unartfully, in pursuing her claim." *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174-75 (9th Cir. 1986). In *Dempsey v. Pacific Bell Co.*, plaintiff filed a premature complaint, and the Court noted that the doctrine of equitable tolling may be available if plaintiff could show excusable ignorance due to a lack of clear precedent concerning jurisdictional requirements. *Dempsey v. Pacific Bell Co.*, 789 F.2d 1451, 1453 (9th Cir. 1986); *see also Capital Tracing, Inc. v. United States*, 63 F.3d 859 (9th Cir. 1995) (tolling limitations period for wrongful levy action while bondholder litigated and Ninth Circuit decided whether levy could be contested in criminal action or whether separate suit must be filed). Plaintiffs' reasoning of the doctrine of equitable tolling, on the other hand, would dramatically expand the doctrine. The lack of clarity cited by Plaintiffs relates to the *substantive scope* of the Privacy Act, not a lack of clarity regarding timing (*Dempsey*), jurisdiction (*Valenzuela*), or form (*Capital Tracing*) of a claim.

MEMORANDUM DECISION AND ORDER – PAGE 9

The Court finds that Plaintiffs can prove no set of facts that would toll the statute of limitations for the specific claims currently alleged in the Second Amended Complaint. The doctrine of equitable tolling does not toll the statute of limitations in this case.

IV.   *Relation Back Theory*

In order for the claims in the Amended Complaint and Second Amended Complaint to survive, these two complaints must relate back to the original Complaint. Over the course of amending the complaints, three factors change: the identity of the plaintiffs, the legal theories of the claims, and whether the claims focus primarily on the Brady-Fremont right-of-way. The original Complaint included three plaintiffs, made claims primarily under the Freedom of Information Act, and focused on the Brady-Fremont right-of-way. The Amended Complaint changed only the second of the three factors. The Amended Complaint was filed by the same plaintiffs, expanded the claims to include alleged Privacy Act violations, and continued to focus on the Brady-Fremont right-of-way. The Second Amended Complaint changed the first and third factors. It expanded the number of plaintiffs to include a class of plaintiffs; although it made the same Privacy Act claims, it expanded the focus to include alleged Privacy Act violations outside of the Brady-Fremont right-of-way.

In analyzing whether the Amended Complaint and Second Amended Complaints relate back, the Court must answer three questions: First, do Mr. Papse's Privacy Act

MEMORANDUM DECISION AND ORDER – PAGE 10

claims relating only to the Brady-Fremont right-of-way relate back?[5]  Second, do Mr.

Papse's Privacy Act claims covering Privacy Act violations outside of the Brady-Fremont

right-of-way relate back?   Third, do any or all of the additional plaintiffs' claims relate

back?

A.   The Privacy Act claims filed by Mr. Papse in the Amended Complaint
relate back to the original Complaint.

The Amended Complaint adds new claims alleging violations of the Privacy Act

through the disclosure of protected information about the allotment owners along the

Brady-Fremont right-of-way.  Mr. Papse's Privacy Act claims relate back to the filing

date of the original Complaint if "the claim or defense asserted in the amended pleading

arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in

the original pleading[.] " Fed. R. Civ. P. 15(c)(2).  The Court "consider[s] whether the

original and amended pleadings share a common core of operative facts so that the

adverse party has fair notice of the transaction, occurrence, or conduct called into

question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989); *see also Santana v.*

*Holiday Inns, Inc.*, 686 F.2d 736, 738 (9th Cir. 1982) (noting that a defendant is not

prejudiced if another claim, arising out of the same facts, is added).  The amendment will

relate back even if it changes the legal theory on which the action is brought, as long as

---

[5]The focus relates primarily upon Mr. Papse's claims since he is the only original
plaintiff remaining in the case.

MEMORANDUM DECISION AND ORDER – PAGE 11

the underlying facts remain the same and as long as those facts have been brought to the

defendant's attention by the original pleading. *See* 6A Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497 (2nd ed. 1990).

Mr. Papse's Amended Complaint incorporates all of the original Complaint's

factual background and adds essentially no new facts. The only change of any

importance between the original Complaint and the Amended Complaint is the addition

of the Privacy Act claims relating to the Brady-Fremont right-of-way. *Compare*

*Complaint* (Docket No. 1) *with Amended Complaint* (Docket No. 139).

The facts in the original Complaint provide the BIA fair notice of potential Privacy

Act claims. The Complaint alleges, "The Fort Hall Realty Office of the Bureau of Indian

Affairs provided the names and mailing addresses of each landowner to Idaho Power

Company[.]" *Complaint*, ¶26 at p.8 (Docket No. 1); *see also Complaint* ¶¶ 21, 23 at p. 7.

The Complaint continues:

> [The BIA] formally denied the Plaintiffs' FOIA request under the
> Privacy Act, 5 U.S.C. § 552a(b)(1)-(12) and the Freedom of Information
> Act, 5 U.S.C. § 552(b)(6) which permits withholding of information when
> disclosure "would constitute a clearly unwarranted invasion of personal
> privacy."

*Complaint*, ¶37 at p.7-8; *see also Complaint* ¶ 48 at p. 12. The clear thrust of the original

Complaint and the two paragraphs cited above gave the BIA fair notice of potential

Privacy Act claims.

The claims also arise out of the same "transaction, occurrence, or conduct." *See*

*Martell*, 872 F.2d at 325. Defendants gave information to the Idaho Power Company but refused to give the same information to Plaintiffs. Either Plaintiffs had a right to the information under the Freedom of Information Act or its prior disclosure was a violation of the Privacy Act. The Privacy Act claims clearly arise out of the same transaction, occurrence, or conduct. In addition, the very fact that Defendants used the Privacy Act as a defense should have placed them on notice that Privacy Act claims could be forthcoming. The Court finds that Mr. Papse's Privacy Act claims as alleged in the Amended Complaint, and which refer only to the Brady-Fremont right-of-way, relate back to the original Complaint.

B.   Mr. Papse's Privacy Act claims covering disclosures beyond the Brady-Fremont right-of-way as filed in the Second Amended Complaint relate back to the original Complaint.

In his original Complaint and Amended Complaint, Mr. Papse's claims primarily focus upon the Brady-Fremont right-of-way. The Second Amended Complaint, however, expands the claims to cover all disclosures at the Fort Hall Indian Reservation that were allegedly made in violation of the Privacy Act regardless of whether the disclosures were related to the Brady-Fremont right-of-way. Federal Rule of Civil Procedure 15(c)(2) likewise governs the analysis of whether these expanded Privacy Act claims relate back.

The Court's January 9, 2002, Memorandum Decision and Order, which granted Plaintiffs leave to file the Second Amended Complaint, stated that "after carefully

MEMORANDUM DECISION AND ORDER – PAGE 13

comparing the Amended Complaint with the Second Amended Complaint, the Court

finds that the factual allegations remain the same." *Memorandum Decision and Order,*

*January 9, 2002*, p. 2 (Docket No. 181). The Court still agrees with its prior finding. The

factual allegations between the original Complaint, the Amended Complaint, and the

Second Amended Complaint remain the same.

Mr. Papse relies on two sets of facts contained in the original Complaint to expand

his Privacy Act claims beyond the Brady-Fremont right-of-way to cover all BIA Privacy

Act violations on the Fort Hall Indian Reservation. In the original Complaint, Mr. Papse

alleges the following facts:

> The Fort Hall Realty Office of the Bureau of Indian Affairs
> routinely, and as a matter of practice, provides the names and addresses of
> Indian landowners to non-Indians who are interested in obtaining
> agriculture leases or rights-of-way on the Fort Hall Indian Reservation.
> *Complaint,* ¶27 at p.7.

> Defendant's policy of disclosing the names and addresses of Indian
> landowners to entities seeking rights-of-way and easements but not to the
> landowners has prevented Indian landowners from receiving fair and
> adequate compensation for the use of their land. *Complaint,* ¶47 at p.12.

The Court finds that this statement of facts in the original Complaint was sufficient to put

Defendants on notice of the additional claims which have arisen in this case.[6]

---

[6]Plaintiffs cite the Declaration of Ronald Appelbaum, a Realty specialist at the
BIA, for the proposition that the Fort Hall Agency of the BIA "does regularly give
ownership information to individuals seeking leases and to utilities who desire to acquire
a right-of-way." *Plaintiffs' Response to Defendants' Motion to Reconsider,* p.10 (Docket
No. 207) (citing *Declaration of Ronald Appelbaum* (Docket No. 21)). Plaintiffs continue
that the BIA only investigated and subsequently changed its disclosure policies as a result

The concept of a common "conduct, transaction, or occurrence" embodied in Rule 15(c) is not limited to one discrete event but may relate to a series of events or a pattern of behavior. *See, e.g., Tripp v. Dep't of Defense*, 219 F.Supp.2d 85, 92 (D.D.C. 2002) (finding specific Privacy Act violation related back when "original Complaint generally alleges repeated improper disclosures of Privacy-Act protected information"); *Wells v. Harris*, 185 F.R.D. 128, 131 (D.Conn. 1999) (finding new RICO claim related back to a complaint "alleging an ongoing pattern of wrongful conduct"). The original Complaint alleged the BIA had a routine pattern of conduct of disclosing information which was later alleged to violate the Privacy Act. While the claims in the Amended Complaint focused on one specific manifestation of that conduct, the Brady-Fremont right-of-way disclosures are but one part of the broader pattern alleged. The broader Privacy Act claims contained in the Second Amended Complaint "share a common core of operative facts [with the original Complaint] so that [Defendants have] fair notice of the transaction, occurrence, or conduct[.]" *Martell*, 872 F.2d at 325. Therefore, Mr. Papse's Privacy Act claims covering disclosures beyond the Brady-Fremont right-of-way as filed in the Second Amended Complaint relate back to the original Complaint.

---

of the facts alleged in the original Complaint. *Plaintiffs' Response to Defendants' Motion to Reconsider*, p.10-12. These arguments by Plaintiffs go beyond the face of the complaints and therefore could only be considered on a motion for summary judgment rather than a motion to dismiss. The Court did not consider these arguments in reaching this decision.

MEMORANDUM DECISION AND ORDER – PAGE 15

C.   The Plaintiff Class's Privacy Act claims relate back to the original
     Complaint.

Rule 15(c) "differentiate[s] between pleadings attempting to amend *claims* from

those seeking to amend *parties*. Amendments seeking to add claims are to be granted

more freely than amendments adding parties." *Union Pacific R.R. Co. v. Nevada Power

Co.*, 950 F.2d 1429, (9th Cir. 1991) (citations omitted). In the Ninth Circuit,

> An amendment adding a party plaintiff relates back to the date of the
> original pleading only when: 1) the original complaint gave the defendant
> adequate notice of the claims of the newly proposed plaintiff; 2) the relation
> back does not unfairly prejudice the defendant; and 3) there is an identity of
> interests between the original and newly proposed plaintiff.

*Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th Cir. 1996) (citing *Besig v. Dolphin

Boating & Swimming Club*, 683 F.2d 1271, 1278-79 (9th Cir. 1982)); *see also Immigrant

Assistance Project of the Los Angeles County Fed'n of Labor v. Immigration and

Naturalization*, 306 F.3d 842, 857-59 (9th Cir. 2002) (applying the three-part test).[7]

The additional plaintiffs satisfy the notice requirement of Rule 15(c). "An

amendment equitably may relate back when the prior complaint has given adequate notice

of the facts supporting a claim." *Besig*, 683 F.2d at 1278; *see also Immigrant*, 306 F.3d at

857-58. The original Complaint alleged that the BIA "routinely, and as a matter of

practice, provides the names and addresses of Indian landowners to non-Indians who are

interested in obtaining agriculture leases or rights-of-way on the Fort Hall Indian

---

[7]The three elements of the test have a significant amount of overlap. According to
*Besig*, however,"Notice is the critical inquiry." *Besig*, 683 F.2d at 1278.

MEMORANDUM DECISION AND ORDER – PAGE 16

Reservation." *Complaint*, ¶27 at p.7; *see also id.*, ¶47 at p.12. The facts supporting the Second Amended Complaint are thus contained in the original Complaint. The BIA was therefore on notice that any Fort Hall landowner whose name and address was disclosed was a potential plaintiff. *See Immigrant*, 306 F.3d at 857-58; *In re Glacier Bay*, 746 F.Supp. 1379, 1391 (D.Alaska 1990).

Furthermore, one of the original plaintiffs in the case was Fort Hall Landowners Alliance, which represents the interests of the Shoshone-Bannock Tribes landowners. *Complaint*, ¶3 at p.2-3. While the FHLA has no rights under the Privacy Act, their inclusion is an obvious attempt to represent the broader interest of landowners. Either the Complaint language or the corporate representative alone would be sufficient to put Defendants on notice of these additional potential plaintiffs.

Defendants are not prejudiced by the addition of the Plaintiff Class. "Relation back imposes no prejudice when an amendment restates a claim with no new facts." *Besig*, 683 F.2d at 1278. The Second Amended Complaint contains no new relevant facts. According to the *Immigrant* decision, "similarly situated" plaintiffs do not cause prejudice. *Immigrant*, 306 F.3d at 858. The original plaintiffs, which included the FHLA, were all landowners on the Fort Hall Reservation who had information allegedly disclosed in violation of the Privacy Act. The Plaintiff Class from the Second Amended Complaint consists of "all owners of trust land on the Fort Hall Indian Reservation who had their names, addresses, and land ownership information disclosed by Defendants in

MEMORANDUM DECISION AND ORDER – PAGE 17

violation of federal regulations and the Privacy Act." *Memorandum Decision and Order, August 20, 2002*, p.11 (Docket No. 204). The Plaintiff Class from the Second Amended Complaint is therefore similarly situated to the original plaintiffs. No prejudice results.

The Plaintiff Class also meets the identity of interest requirement. Because the two sets of plaintiffs are similarly situated, the identity of interest requirement is met. *Immigrant*, 306 F.3d at 858. Further, the same actions by the BIA gave rise to the claims asserted in the original Complaint as well as the claims asserted in the Second Amended Complaint. *See id.; see also Raynor Brothers v. American Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982).

The Court therefore will not alter its prior certification of the Plaintiff Class, which consists of "all owners of trust land on the Fort Hall Indian Reservation who had their names, addresses, and land ownership information disclosed by Defendants in violation of federal regulations and the Privacy Act." *Memorandum Decision and Order, August 20, 2002*, p.11.


V.    *Substituting Class Representatives*

Plaintiffs seek to expand the list of class representatives to include Ernestine Werelus, Alene Auck Menta, Wilverna Covington, Althea Wetchie, Lee Stone, Twila Pahvitse Bear, Lee Bear, Nino Bear, and Inez Preacher. Each of these plaintiffs are named members of the class.

MEMORANDUM DECISION AND ORDER – PAGE 18

Under Rule 23, the Court's class certification order may be amended at any time prior to a decision on the merits. Fed. R. Civ. P. 23(c)(1). Rule 23 allows for the substitution of class representatives. *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1158 (7th Cir. 1999); 1 Herbert B. Newberg & Albe Conte, *Newberg on Class Actions* § 2.26 (3d ed. 1992). In order for Plaintiffs to substitute named representatives, Plaintiffs must show their suitability as class representatives.

Plaintiffs must show that the individual plaintiffs seeking to serve as class representatives satisfy the typicality requirement under Rule 23(a)(3). To satisfy this requirement, Plaintiffs must demonstrate that the claims of the representative parties are typical of the claims of the class. The Supreme Court has repeatedly held that, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974)). The Ninth Circuit has added that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In addition, the typicality test is described as " 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

MEMORANDUM DECISION AND ORDER – PAGE 19

(quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Plaintiffs must also show that the individual plaintiffs fairly and adequately protect the interests of the class according to Rule 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). Accordingly, there are two things Plaintiffs must demonstrate to satisfy the adequacy requirement of Rule 23(a)(4). First, Plaintiffs must show that, as the class representatives, Plaintiffs and their counsel do not have any conflict of interest with the other class members. *Hanlon*, 150 F.3d at 1020. Second, they must demonstrate that, as the class representatives, Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Id.*

Plaintiffs have failed to meet to satisfy that the proposed substituted class representatives satisfy either the typicality or adequacy requirement. Plaintiffs assert only that the individual plaintiffs seeking to be class representatives are trust land owners at the Fort Hall Reservation. Plaintiffs do not detail any specific Privacy Act violations suffered by these individuals. Being a member of a group potentially affected by an alleged routine practice of disclosure does not guarantee that the individuals themselves actually suffered injury. Unless and until individual plaintiffs allege an actual injury, they cannot serve as class representatives. Furthermore, Plaintiffs make no effort to show that

MEMORANDUM DECISION AND ORDER – PAGE 20

the individual plaintiffs would fairly and adequately protect the interests of the class.  For

these reasons, the Court will deny the Plaintiffs' Motion to Substitute Class

Representatives without prejudice to it being refiled if the Plaintiffs can make a proper

showing that the proposed substituted class representatives satisfy the typicality and

adequacy requirements.


VI.     *Notice Requirement*

        As already indicated, the Court's Orders have broadened the class to include "all

owners of trust land on the Fort Hall Indian Reservation who had their names, addresses,

and land ownership information disclosed by Defendants in violation of federal

regulations and the Privacy Act." *Memorandum Decision and Order, August 20, 2002,*

p.11. As discussed at the Telephone Status Conference held on January 16, 2003, notice

of the class action shall be sent to all individual owners holding an undivided interest in

an allotment at the Fort Hall Indian Reservation at any time between February 5, 1993,

through the present.  This shall be done to the extent that record keeping is available.  The

Court finds that this is the best notice practicable under the circumstances.  Fed. R. Civ.

P. 23(c)(2).

### ORDER

        NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to

Reconsider (Docket No. 206) is GRANTED in part.  Plaintiffs Fort Hall Landowners

MEMORANDUM DECISION AND ORDER – PAGE 21

Alliance and Eli Mosho are dismissed. The remainder of Defendants' Motion to Reconsider is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Substitute Class Representatives (Docket No. 209) is DENIED without prejudice.

IT IS FURTHER ORDERED that, as discussed at the January 16, 2003 hearing (Docket No. 218), notice of the class action shall be sent to all individual owners holding an undivided interest in an allotment at the Fort Hall Indian Reservation at any time between February 5, 1993, through the present. This shall be done to the extent that record keeping is available. Fed. R. Civ. P. 23(c)(2).

DATED this _14th_ day of ~~February~~ *March*, 2003.

B. LYNN WINMILL
Chief Judge, United States District Court

**MEMORANDUM DECISION AND ORDER – PAGE 22**

 

dkh

United States District Court
for the
District of Idaho
March 17, 2003

\* \* CLERK'S CERTIFICATE OF MAILING \* \*

Re:  4:99-cv-00052

I certify that I caused a copy of the attached document to be mailed or faxed
to the following named persons:

        Howard A Belodoff, Esq. 1-208-342-2561
        IDAHO LEGAL AID SERVICES
        PO Box 913
        Boise, ID  83701

        Walter H Bithell, Esq.   1-208-343-8869
        HOLLAND & HART
        PO Box 2527
        Boise, ID  83701

        Mary V York, Esq.        1-208-343-8869
        HOLLAND & HART
        PO Box 2527
        Boise, ID  83701

        Nicholas J Woychick, Esq.       1-208-334-1414
        US ATTORNEY'S OFFICE
        Box 32
        Boise, ID  83707


        ✓  Chief Judge B. Lynn Winmill
           Judge Edward J. Lodge
        ✓  Chief Magistrate Judge Larry M. Boyle
           Magistrate Judge Mikel H. Williams

        Visiting Judges:
           Judge David O. Carter
           Judge John C. Coughenour
           Judge Thomas S. Zilly


                                Cameron S. Burke, Clerk

Date: _____3-17-03_____          BY: _____
                                     (Deputy Clerk)