UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMUNITY HOUSE, INC., et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BOISE, IDAHO, et. al.,<br><br>Defendants. | Case No. 1:05-cv-00283-CWD<br><br>**ORDER RE: MOTIONS IN LIMINE** |

**INTRODUCTION**

Before the Court are the parties' motions in limine requesting the Court to rule on various evidentiary issues they anticipate will arise at the time of trial. (Dkt. 299, 303, 304.) The parties filed responses to the pre-trial motions, (Dkt. 310, 311, 314, 316, 331), and the Court inquired of the parties during the pre-trial conference held on March 29, 2012, regarding stipulations concerning the causes of action proceeding to trial. The Court issues this preliminary ruling on the motions, which may be subject to revision upon consideration of evidentiary issues presented within the context of the trial.

ORDER - 1

## ANALYSIS

### 1.    Claims Remaining for Trial

On July 22, 2008, the Court issued a memorandum decision and order granting in part and denying in part Plaintiffs' motion to amend the complaint. (Dkt. 191.)[1] Specifically, the Court granted the motion to the extent it sought to (1) add state law claims in Counts 12 through 17 without seeking monetary damages; (2) add Count 18 for violation of the First Amendment; and (3) add plaintiffs James Masker, Jessica Schafer, and Jimmy Moore, but not Jim Liddell. The Court held that, because Plaintiffs failed to file a timely notice of tort claim with the City of Boise prior to filing their complaint on July 15, 2005, Plaintiffs may not seek monetary damages as to all existing state law claims but may seek injunctive and declaratory relief, or rescission and specific performance.

Much of Defendants' Motion in Limine focuses on defining the claims remaining for trial. With reference to the Second Amended Complaint, (Dkt. 166-1, 317), Plaintiffs' response provided a chart outlining the claims remaining as a result of prior court decisions over the course of this litigation:

| Claim No. | Compl. Page No. | Status |
|-----------|-----------------|--------|
| **1** | 29–30 | Summary judgment **granted** for Defendants.  Dkt. 261 at 16. |
| **2** | 30 | Summary judgment on 42 U.S.C. § 3604(f)(1) and (2) ("disparate treatment" because of disability) **granted** for Defendants; summary judgment on 42 U.S.C. § 3604(f)(3)(B) (failure to accommodate) **denied**.  Dkt. 261 at 22–23. |

---

[1] Plaintiffs filed the Amended Complaint pursuant to the Court's March 30, 2012 order that they do so. (Dkt. 315.)

| | | |
|---|---|---|
| **3** | 30–31 | Summary judgment on Fair Housing Act religion claims **granted** for Defendants; summary judgment on Fair Housing Act gender and familial status claims **denied**.  Dkt. 261 at 25. |
| **4** | 31–32 | Defendants did not move for summary judgment on this claim, *see* Dkt. 200-2, and the Court has not rendered a decision on it. |
| **5** | 32 | Summary judgment **denied**.  Dkt. 261 at 26. |
| **6** | 32 | Summary judgment **denied**.  Dkt. 261 at 27. |
| **7** | 32–33 | Summary judgment **denied**.  Dkt. 261 at 28. |
| **8** | 33–35 | Summary judgment **granted** for Defendants.  Dkt. 261 at 30. |
| **9** | 36 | Summary judgment **granted** for Defendants.  Dkt. 261 at 30. |
| **10** | 37 | Summary judgment **granted** for Defendants.  Dkt. 261 at 30. |
| **11** | 37–38 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment on equitable aspect **denied**, Dkt. 261 at 31. |
| **12** | 38 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment on equitable aspect **denied**, Dkt. 261 at 31. |
| **13** | 38–39 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment on equitable aspect of the claim **denied**, Dkt. 261 at 31. |
| **14** | 39–40 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment on equitable aspect of the claim **denied**, Dkt. 261 at 31. |
| **15** | 40–41 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment **granted** as to rescission aspect of this claim, but summary judgment on all other equitable aspects (e.g., equitable estoppel, resulting trust, equitable ownership) of the claim **denied**, Dkt. 261 at 31. |
| **16** | 41 | Damage aspect **dismissed**, Dkt. 191 at 7; summary judgment on equitable aspect **denied**, Dkt. 261 at 31. |
| **17** | 41–42 | Summary judgment **denied**.  Dkt. 261 at 13. |
| **18** | 42–43 | Summary judgment **denied**.  Dkt. 261 at 12. |
| **19** | 43 | **Dismissed**.  Dkt. 193. |

During the pre-trial conference, the Court inquired about the extent to which the parties agreed concerning the above outline of the claims remaining for trial. The parties agreed that the following claims remain: claim number two, 42 U.S.C. § 3604(f)(3)(B), for failure to accommodate; claim number three for gender and familial status claims under the Fair Housing Act; claims five, six, and seven;[2] claims eleven, twelve, thirteen, fourteen, fifteen,[3] and sixteen subject to the Court's ruling that only the equitable claims survived;[4] and claims seventeen and eighteen. Plaintiffs represented that they are abandoning claim number four.

Based upon the parties' representations at the pre-trial conference, to the extent Defendants argue that Plaintiffs should be prohibited from offering evidence regarding claims that were dismissed or otherwise resolved by the courts' prior rulings, (*see* Def. Supp. Mem. §§ D—T, Dkt. 304), those arguments are moot given the parties' agreement.

The Court will now turn to the substantive evidentiary arguments raised by the parties' motions in limine.

## 2.    Defendants' Motion in Limine

### A.    Damages

Defendants allege that Plaintiffs have not disclosed a computation of each category of damages claimed by each Plaintiff. Plaintiffs' initial disclosures listed damages of $3 million, representing the alleged value of the corporate assets Defendants

---

[2] The Court will separately address Defendants' arguments with respect to claims five, six, and seven.

[3] The Court will separately address Defendants' arguments with respect to claim number fifteen.

[4] The parties agreed further that claims 11—16 involving equitable relief may require presentation of evidence beyond that probative of the claims presented to the jury, considering the Court will be making final decisions on those claims.

took possession of and the money CHI paid to develop the property. Defendants argue

that, under Fed. R. Civ. P. 37(c), Plaintiffs should be barred from introducing any

evidence concerning damages alleged in Plaintiffs' initial disclosures, or any other

damages claimed but not disclosed by any of the Plaintiffs to this action.

Plaintiffs contend, on the other hand, that they made available all documents

supporting their damage claims during the course of discovery. Further, Plaintiffs argue

that the City of Boise took control of all of CHI's property and assets once the City took

over operations of Community House, and therefore knew what those assets consisted of.

CHI asserts that Defendants were provided with expert reports and appraisers' opinions

on the value of Community House and the lease, as well as the value of rents collected

from the residential apartments, considering the City took over all operations. Plaintiffs

assert that the loss of their assets, comprised of furniture and fixtures, the value of rents,

and the value of the lease itself, constitute CHI's damages.

As to the individual plaintiffs named in the suit, Plaintiffs contend that their

damages are based upon emotional distress allegedly suffered as a result of Defendants'

discriminatory practices, and as such, cannot be quantified by mathematical computation.

Rather, those damages are subject to proof at trial.

Other than evidence regarding damages in general, Defendants have not identified

any specific evidence they seek to be excluded. Moreover, at face value, Defendants

would have this Court eliminate all proof of damages, a prima facie element of Plaintiffs'

case. Such is not the purpose of a motion in limine. Further, the motion encompasses

evidence that may or may not be introduced at trial. Given the Court can make more

ORDER - 5

informed rulings on the evidence during trial, the Court will deny this portion of Defendants' motion without prejudice to Defendants raising appropriate objections at trial to any documents, testimony or other evidence they consider inadmissible on the subject of damages.[5]

### B.     Limitation of Testimony of Individual Plaintiffs

In their supplemental memorandum in support of Defendants' motion in limine, Defendants raise an objection to the individual plaintiffs testifying about the religious practices or activities at Community House after the Boise Rescue Mission ("BRM") began leasing Community House, because all claims of religious discrimination have been dismissed. Further, Defendants allege that the testimony of Marlene Smith and Jessica Schaffer should be limited to their individual claims of gender based discrimination, and similarly that Greg Luther's testimony should be limited to his individual disability discrimination claim.

In its July 29, 2009 order, the Court denied summary judgment on Plaintiffs' Fair Housing Act ("FHA") claims based upon gender and familial status. The Court denied summary judgment on Plaintiffs' failure to accommodate claim with regard to disabled persons. It appears Plaintiffs agree regarding the status of the individuals' FHA claims based upon gender and familial status, and their disability claims. (Dkt. 313.) Therefore, no ruling on this issue appears necessary at this time. Defendants may raise an

---

[5] The Court notes that Plaintiffs' itemized list of special damages (Dkt. 328) does not include any special economic damages attributable to the individual plaintiffs.

**ORDER  - 6**

appropriate objection at trial if proffered witness testimony is irrelevant to the remaining individual discrimination claims.

### C.     Undisclosed Expert or Lay Opinion Testimony

Defendants argue pursuant to Fed. R. Civ. P. 37(c)(1) that undisclosed expert and lay witnesses, or their opinions, should be excluded. Defendants have not identified specifically any witnesses or opinions, however. Any ruling would be premature, as the motion encompasses evidence that may or may not be introduced at trial. The Court can rule during trial, and this portion of Defendants' motion will be denied without prejudice to Defendants raising appropriate objections at trial to any opinion testimony they consider inadmissible due to Plaintiffs' failure to disclose such opinions during the course of discovery.

### D.     Fifth, Sixth, and Seventh Claims for Relief  (Dkt. 304 §§ I, J, K)

Defendants assert that, under the Ninth Circuit's findings and decision in *Community House, Inc. v. City of Boise* ("*Community House II*"), 623 F.3d 945 (9th Cir. 2010), Plaintiffs' claim that the lease and sale of the facility did not violate the Establishment Clause is precluded. Similarly, Defendants assert that the Court of Appeal's holding precludes Plaintiffs' retaliation claim based upon the management agreement and the sale of Community House.

In *Community House II*, the Ninth Circuit held that Mayor Bieter and the members of the Boise City Council were entitled to absolute legislative immunity for their actions in promoting and approving the lease and sale of Community House to the BRM. *Id.* at 952. Further, the court held employees Chatterton and Birdsall, as individuals, were

entitled to qualified immunity because, at the time the City approved the lease and sale, a reasonable official would not have known that such actions would violate the Establishment Clause or the FHA. *Id.* The Ninth Circuit Court of Appeals reversed this Court's decision and remanded for "further proceedings consistent with this opinion." *Id.* at 973. Defendants argue that the appellate court necessarily issued its rulings based upon the undisputed facts of record, and those facts, as the law of the case, preclude Plaintiffs' remaining claims under the FHA, 42 U.S.C. § 3605(a), for discriminatory housing practices.

Pursuant to the Ninth Circuit's holding, Plaintiffs "must be satisfied with the City and the Council as defendants on the substantive issues raised in this case and with Chatterton and Birdsall in their official capacities only." 623 F.3d at 973. However, the appellate court explicitly stated that its decision "has no effect on CHI's claims against them." *Id.* Moreover, the appellate court's holding did not find that the sale and lease of the facility did not violate the Establishment Clause, only that Chatterton and Birdsall were entitled to qualified immunity on that claim because reasonable officials "would not have known that the BRM lease violated the Establishment Clause."[6] *Id.* at 971. Thus, the appellate court holding has no preclusive effect upon the claims remaining against the City and Chatterton and Birdsall in their official capacities.

---

[6] In their reply brief, Defendants argue that the appellate court decided the first prong of the qualified immunity test, and that the court held no constitutional right had been violated. (Def. Reply at 7, Dkt. 331.) Defendants are in error. The appellate court explicitly stated that it was deciding the second prong. 623 F.3d at 965 ("Instead, we examine this immunity issue according to *Saucier's* second prong: whether the rights allegedly violated were clearly established at the relevant times.").

Accepting Defendants' premise---that the Ninth Circuit's holding regarding Defendants sued in their individual capacity has  preclusive effect upon a suit against city officials sued in their official capacities--- effectively would negate the Ninth Circuit's holding that the decision did not affect the remaining claims. Moreover, the Defendants' argument is contrary to *Monell v. Dep't. of Social Services of City of New York*, 436 U.S. 658 (1978). *Monell* holds that local governing bodies, and local officials sued in their official capacities,

> can be sued directly under Section 1983 for monetary, declaratory, and injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

436 U.S. 690—91.

The Court therefore rejects Defendants' argument that *Community House II* has preclusive effect over Plaintiffs' claims against the remaining Defendants. The Ninth Circuit explicitly held that its decision did not, and Defendants' arguments would eliminate the distinction between official capacity and individual capacity suits. Furthermore, the facts relied upon for the appellate court's qualified immunity analysis may be different than the facts and evidence presented at trial in CHI's attempt to establish liability against the City of Boise.

**ORDER  - 9**

Defendants further assert that, under *IFHC v. BRMM*, 657 F.3d 988 (9th Cir. 2011), the BRM's management and operation of their shelter was found not to have violated the Fair Housing Act. However, the court in *IFHC* was examining another issue, that of BRM's preference to persons of its religion as a condition of participation in its drug treatment program and other charitable services. 657 F.3d at 996. *IFHC* was not examining the City's actions that are at issue in this case under *Monell*.

The Court has another concern with Defendants' motion. It essentially seeks a ruling as a matter of law that the holding in *Community House II* and *IFHC* has preclusive effect on the remaining claims in this case. It is not a motion seeking a ruling in advance of trial concerning whether certain evidence falls within the scope of Rule 406, and is therefore not relevant, or should be precluded under some other evidentiary rule. For this reason, in addition to the substantive analysis set forth above, the Court will deny this portion of Defendants' motion.

### E.   Claims for Relief Number Thirteen, Fourteen, Sixteen, Seventeen and Eighteen

Again, Defendants argue that this Court's and the Ninth Circuit's rulings preclude certain of Plaintiffs' claims. With respect to claims thirteen through sixteen, Plaintiffs agree that their money damage claims were dismissed, but contend this Court's rulings preserved their equitable claims for relief on these counts. (Dkt. 313). The Court specifically held that Plaintiffs could seek equitable remedies on claims thirteen through sixteen. (Dkt. 191.)

**ORDER - 10**

Plaintiffs' thirteenth claim alleges that the City's ordinance authorizing the sale of Community House does not allege or support a finding that Community House was either underutilized or not being used for a public purpose, and therefore violated Idaho Code § 50-1401 requiring one or the other condition before the City could sell real property. Defendants rely upon the Ninth Circuit's finding in *Community House II* that, "having received no viable bids at the auction, the City was not required to begin the entire process all over again. Because the facility did not sell at the auction, the City Council was specifically empowered by Idaho law to dispose of the property however it believed was 'in the best interest of the [C]ity.' Idaho Code § 50-1403(1). And it did so." 623 F.3d at 972.

Idaho Code § 50-1403(1) grants the City the power to sell real property "as it deems in the best interest of the city" after a public auction fails to bring in bids based upon a minimum declared value. The statute expressly incorporates Idaho Code § 50-1401, which requires a determination that the property is either underutilized or is not used for public purposes before the City "shall have the power to sell" real property. Defendants argue that the Ninth Circuit's ruling, relying upon Idaho Code § 50-1403(1), necessarily implies the appellate court determined the City Council complied with Idaho Code § 50-1401. However, the Ninth Circuit's decision made no such determination. Moreover, the Ninth Circuit only decided the qualified immunity issues and left alone the official capacity claim. The court was not adjudicating state law claims asserted against the Defendants by Plaintiffs.

Plaintiffs' fourteenth claim for relief alleges that the unauthorized actions of CHI's president in signing the Management Agreement transferring all assets of CHI were in violation of the legal requirements for nonprofit corporations organized under Idaho law, and are therefore void and unenforceable. Defendants contend that the Court previously held CHI had ratified the Management Agreement and therefore it was enforceable. (Dkt. 260 at 15.) However, the Court made this determination in the context of its decision granting summary judgment on count one, for the alleged breach of CHI's procedural due process rights. In so ruling, the Court did not consider whether the actions of CHI's president violated the legal requirements for nonprofit corporations organized under Idaho law. Further, the Court held that there were issues of fact which prevented the Court from concluding, as a matter of law, that Mrs. Watson, CHI's president at the time, had apparent authority to enter into the management agreement. (Dkt. 261 at 15.)

Plaintiffs' sixteenth claim for relief alleges violation of Idaho's landlord tenant laws regarding the eviction of Community House's tenants. The parties agree Plaintiffs are precluded from seeking money damages on this claim. Defendants contend, however, that Plaintiffs did not seek injunctive relief under this claim. Further, Defendants contend the individual Plaintiffs did not have a rental agreement, and therefore the unlawful detainer statutes do not apply. The Court in its July 29, 2009, decision held, however, that Plaintiffs' claims for injunctive relief survived, and that Defendants had not met their burden of establishing that all of Plaintiffs' claims for injunctive relief were moot. (Dkt. 261 at 31.) Plaintiffs made a general prayer for injunctive relief to prevent Defendants from disregarding their statutory duties. (Am. Compl. at 44, Dkt. 166-1.) Plaintiffs'

complaint, by referencing statutory duties in general, encompassed their claim under the landlord tenant act, an Idaho statute.

Plaintiffs' seventeenth and eighteenth claims for relief allege that the City's actions have subsidized the operations of the BRM in violation of the Idaho Constitution and the First Amendment prohibiting religious discrimination. Defendants argue that, to decide the issue of qualified immunity on these two claims, the Ninth Circuit in *Community House II* necessarily had to decide the Establishment Clause claim as it applied to the City. However, as discussed above, Defendants' assumption is incorrect under *Monell* and the Ninth Circuit's holding that its decision has "no effect on CHI's claims" against the City, the Council, and Chatterton and Birdsall in their official capacities.

### F.   Plaintiffs' Fifteenth Claim for Relief

Plaintiffs' fifteenth claim alleges that CHI was misled by the City, resulting in Defendants obtaining CHI's investments and assets, and terminating CHI's contractual rights for no consideration. Plaintiffs seek rescission of the Management Agreement. Defendants argue that the Court's July 22, 2008 decision holding that CHI had ratified the Management Agreement, and therefore that it was enforceable and could not be rescinded, precludes this claim. Plaintiffs assert otherwise, arguing that the Court's holding did not absolve their other equitable claims for relief asserted in connection with claim number fifteen.

In its memorandum decision on Defendants' motion for summary judgment, the Court held that CHI had no continuing interest in Community House, and that the Court

could not return the parties to their pre-contract positions. (Dkt. 261 at 31.) Therefore, the Court held that Plaintiffs' claim for equitable rescission failed. The Court did not comment upon Plaintiffs' alternate theories of recovery, or decide the issues of equitable estoppel or resulting trust. Plaintiffs claim that they have requested relief pursuant to theories of equitable estoppel or resulting trust, and that these equitable claims survived the Court's grant of summary judgment.

The fifteenth claim includes a claim for rescission, an equitable remedy. *White v. Mock*, 104 P.3d 356, 361 (Idaho 2004.) Equitable estoppel, on the other hand, is a theory of liability, not a remedy. *Mountain Restaurant Corp. v. ParkCenter Mall Assoc.*, 833 P.2d 119, 126 (Idaho Ct. App. 1992). Similarly, a resulting trust is a theory of recovery, but not a remedy in its own right. *See Rexburg Lumber Co. v. Purrington*, 113 P.2d 511, 514 (Idaho 1941) (explaining that a trust arose, and that "equity delights to do justice and suffers no wrong without a remedy"). Thus, the theories equitable estoppel and of resulting trust are simply different vehicles put forth to support Plaintiffs' requested remedy of rescission.

The Court previously granted summary judgment as to the remedy only, however, and did not foreclose other equitable remedies under the equitable theories asserted by Plaintiffs. In their trial brief, Plaintiffs assert they intend to prove entitlement to the equitable remedy of an accounting. *Cox v.* Cox, 71 P.3d 1028, 1031—32 (Idaho 2003) (noting that an accounting is an equitable remedy); (Dkt. 306 at 6.) Defendants' position is therefore in error, as the Court's prior ruling did not foreclose this equitable remedy based upon the theories asserted.

### G.   References to Motions in Limine, Settlement, Rebuttal Evidence, and Insurance

Defendants contend that references to other motions in limine; settlement discussions or mediation; evidence in rebuttal that should be a part of Plaintiffs' case in chief; unverified pleadings; and the existence or availability of liability insurance should be excluded. All of these requests are based upon evidentiary rules and principles, but do not contain any specific allegations that Plaintiffs will attempt to introduce any such evidence. Any ruling would therefore be premature, as the motion encompasses evidence that may or may not be introduced at trial. The Court will be in a better position to rule during trial, and Defendants' motion will be denied without prejudice to Defendants raising appropriate objections at trial to documents, testimony or other evidence it considers inadmissible.

### 3.   Plaintiffs' Motion in Limine

Plaintiffs' motion primarily centers around their Fair Housing Act ("FHA") claim and Defendants' anticipated evidence and lay witness testimony on Defendants' defense to this claim. Plaintiffs contend Defendants violated the FHA, 42 U.S.C. § 3601, which makes it unlawful for the City to discriminate on the basis of sex, familial status, or disability, because of the City's imposition of a "men only policy" on residents of Community House. In *Community House, Inc. v. City of Boise* ("*Community House I*"), 490 F.3d 1041, 1045 (9th Cir. 2007), the Ninth Circuit Court of Appeals held that the City's men only policy was facially discriminatory because it treated women and families different from men. However, the court adopted the approach of the Sixth and Tenth

Circuits, which permits the City to show either: (1) that the restriction benefits the protected class; or (2) that the restriction responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes. 490 F.3d at 1050. In the context of the motion for preliminary injunction and the later appeal, the appellate court found that the City did not submit sufficient evidence to establish its safety justifications for the men-only policy. The appellate court therefore reversed the Court's denial of a preliminary injunction that would have required reinstatement of all former residents excluded by the men-only policy. 490 F.3d at 1045, 1052.

In support of its opposition to Plaintiffs' motion for preliminary injunction, Defendants offered the testimony of Mr. Roscoe concerning his opinion that, based upon a comparison of the number of police calls attributable to the BRM with calls attributable to Community House, mixed gender shelter environments are inherently unsafe. The Ninth Circuit rejected Mr. Roscoe's unsubstantiated opinion as insufficient, noting that the City did not submit "a single police report, incident report or any other documentation that supported any safety concerns." 490 F.3d at 1051.

Plaintiffs contend that Defendants will attempt to introduce at trial a police officer's testimony about the number of police calls made to Community House and to BRM, which testimony Plaintiffs contend is insufficient considering the Ninth Circuit's ruling in *Community House I*, and the anticipated testimony does not satisfy Fed. R. Evid. 401 regarding relevance or Rule 602 which requires personal knowledge. Further, Plaintiffs believe that the police officer's testimony will rely upon "unauthenticated

statistical data on the number of police calls" without proper foundation, such as how the statistics were gathered, contrary to Rule 801(c).

Plaintiffs point out also that Defendants have not disclosed an expert witness to testify regarding the alleged safety justifications raised by housing a mixed gender population. Rather, Plaintiffs believe the unidentified police officer will offer his own opinions on the safety justifications based upon the number of police calls to the shelters. Plaintiffs request an order prohibiting Defendants from presenting any testimony, evidence or argument on the number of police calls made to Community House.

Plaintiffs present the same arguments concerning the anticipated testimony of Jean Lockhart, the Director of BRM's City of Light Shelter for women. Plaintiffs anticipate Ms. Lockhart will offer her opinions about the circumstances that create security or safety issues in a homeless shelter. Plaintiffs contend Ms. Lockhart's opinions should be excluded because she lacks personal knowledge concerning the environment at Community House, she only worked at BRM's City of Light Shelter for four months, and her opinions are unsubstantiated personal opinions lacking any relevance to the issues before the jury.

Similarly, Plaintiffs anticipate Defendants will elicit opinion testimony from existing and former BRM shelter residents on safety issues present at a different shelter that did not have a men-only policy and upon their feelings about safety in the BRM shelter. Plaintiffs claim any personal opinions as to whether individuals believed they were safe are not relevant to the issues that the City had to consider.

**ORDER - 17**

Any rulings on the above issues would be premature, as the motion encompasses evidence that may or may not be introduced at trial, and Defendants may be able to establish a proper foundation for the testimony. Fed. R. Evid. 701 permits lay opinion testimony if the opinion or inference is: (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The Court will be in a better position to rule after hearing the foundation laid for proffered lay opinion testimony at the time of trial, and Plaintiffs' motion will be denied without prejudice to Plaintiffs raising appropriate objections at trial to any witnesses, testimony, or other evidence it considers inadmissible. However, the Court cautions the parties about mentioning such testimony in opening statements or referencing Defendants' witnesses before knowing whether the evidence will be admitted.

Next, Plaintiffs argue that evidence or argument regarding the BRM's recent addition in 2009 of new shelter space for women as justification for the men-only policy adopted in 2005 should be precluded. Plaintiffs contend that the BRM's addition of bed space for women some four years after women and children were evicted from Community House was not in response to the City's adoption of the discriminatory men-only policy, and therefore is not relevant under Fed. R. Evid. 401 and 402, and is prejudicial under 403.

The record indicates that the City Council members "questioned the BRM regarding the [men-only] policy, [and] were assured that the women could stay at the

City Light shelter." *Community House II,* 623 F.3d at 969. The record further indicates that the BRM's winning bid proposal contained a plan to turn the existing BRM facility on Front Street into a shelter for homeless women and children. *Community House I*, 490 F.3d. at 1046. Thus, at the time of the lease and sale, the City believed that women and families would receive increased shelter space at the existing BRM facility on Front Street, while men would be moved from the Front Street facility to Community House. *Id.* at 1052. Clearly, what the City knew during 2005 is relevant.

The facts surrounding what the City knew and when, and what information the City considered in making its policy decisions, is temporal in nature. Without more information, the Court fails to see how events in 2009 impacted the City's justifications for its decisions in 2005. The Court therefore grants this portion of Plaintiffs' motion in limine, subject to an offer of proof at trial by Defendants, outside the presence of the jury, concerning the relevancy of any proffered evidence or testimony about the addition of new shelter space in 2009.

Plaintiffs also seek to exclude audit reports of consulting activities prepared by the City as inadmissible hearsay, irrelevant, and because of the lack of expert disclosure. The audit reports were prepared after the City took control of Community House's operation to determine budget issues, and therefore Plaintiffs claim the audit reports were not relevant to the City's decision to oust CHI from operating Community House. Plaintiffs claim further that the reports are not relevant to the men-only policy and the lease of Community House to the BRM. Moreover, Plaintiffs claim that Defendants have not

disclosed how the evidence was compiled, or who has the expertise to offer opinions about the reports.

Considering the Court does not know whether these reports will be offered into evidence and what Defendants intend to show with respect to this evidence, any ruling would be premature. The Court can rule at trial regarding relevancy, and Plaintiffs may raise appropriate objections at that time. The Plaintiffs may ask that this issue be taken up by the Court outside the presence of the jury for an offer of proof by Defendants in the morning or afternoon before such evidence is to be offered to the jury.

Finally, Plaintiffs generally seek to prevent expert witnesses from giving expert opinions simultaneously with lay opinions. Specifically, Plaintiffs' concern is with the police officer and the auditor, who may or may not testify at trial, and who may or may not offer both lay and expert opinion testimony. In *U.S. v. Freeman*, 498 F.3d 893 (9th Cir. 2007), the court considered whether it was error for the district court to allow a police offer to testify both as an expert witness concerning coded drug terms and as a lay witness concerning his general knowledge about the police investigation at the heart of the trial. The court noted its concerns, both that the officer who testifies as an expert may receive "unmerited credibility" for lay testimony, and also that the officer's lay opinions may usurp the jury's function. *Freeman*, 498 F.3d at 903—04. However, the court held that, despite such concerns, the categorical prohibition of the use of law enforcement agents as both lay and expert witnesses is not required. *Id.* at 904. Rather, the court can caution the jury regarding any potential witness's dual role, and the distinction between a

**ORDER - 20**

witness's role as lay and expert witness can be revealed through direct or cross examination. *Id.*

No ruling at this time is necessary regarding combined lay and expert testimony. The Court can make appropriate rulings at the time of trial, and the parties may propose a cautionary instruction for the jury in accordance with the suggestion in *Freeman*.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Motion in Limine (Dkt. 299) is **DENIED in part and GRANTED in part,** in accordance with the above memorandum.

2) Defendants' Motion in Limine as supplemented (Dkt. 303, 304) is **DENIED** in accordance with the above memorandum.

**IT IS FURTHER ORDERED THAT** the parties shall advise opposing counsel as well as the Court in advance of when they anticipate evidentiary issues to arise so that, if necessary, the Court can consider such issues outside the presence of the jury. The parties are instructed to jointly communicate with the Court's Staff Attorney throughout the day and at the end of each day of trial regarding upcoming issues.

Dated: April 11, 2012

Honorable Candy W. Dale
United States Magistrate Judge

ORDER  - 21