Phillip J. Collaer, ISB #3447
Mark D. Sebastian, ISB #6012
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone:     (208) 344-5800
Facsimile:     (208) 344-5510
E-Mail:   pcollaer@ajhlaw.com

Attorneys for Defendants City of Boise

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMUNITY HOUSE, INC., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF BOISE, IDAHO, et al.<br><br>Defendants. | 1:05-cv-00283-CWD<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS** |

## A.      PLAINTIFFS' MOTIONS ARE PREMATURE.

A motion for attorney's fees and costs are to be brought after the entry of final judgment. In this case, although a jury trial has occurred as to some issues, no decision or judgment has been issued regarding the claims for injunctive relief. The Court has also reserved the issue of preemption for the proceedings on the equitable claims. Consequently, because a final, appealable judgment has not been entered, it is premature for the Court to entertain and consider the Plaintiffs' motions for fees and costs.

**B.**   **PLAINTIFFS WERE NOT THE OVERALL PREVAILING PARTY**.

42 U.S.C. § 3613(c)(2) provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." (Emphasis added). Thus, an award of fees under the FHA is discretionary, not mandatory. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 758 (2nd Cir. 1998); *Webster v. Advanced Management Group Nevada, LLC,* 2012 WL 893738, *1 (D. Nev. March 15, 2012). *See also Perez-Arellano v. Smith,* 279 F.3d 791, 794 n. 4 (9th Cir. 2002) (noting that the use of the word "may" connotes discretion).

The Plaintiffs were not the overall prevailing party in this matter. Plaintiffs initially sought a preliminary injunction to prohibit the lease and sale of the facility and require the City to continue operating the shelter to maintain the status quo. The Plaintiffs broad request for injunctive relief was denied. **Docket No. 108.** The Plaintiffs appealed, still seeking a broad injunction to maintain the status quo. Again, the Plaintiffs were unsuccessful. *See Community House, Inc. v. City of Boise,* 490 F.3d 1041 (9th Cir. 2006) ("***Community House I***"). During the pendency of the appeal, the Plaintiffs sought to enjoin the sale of the facility to the BRM. This Court denied the injunction. **Docket No. 150**.

When Plaintiffs filed a Second Amended Complaint, the Court denied the amendment as to any state law claims for money damages, struck the claims of Jim Liddell, and did not allow the amendment as to Plaintiffs' proposed 19th claim for relief. **Docket No. 191**.

The Court later granted summary judgment to the Defendants as to: (i) the claimed violations of due process, (ii) the FHA claims for disparate treatment and/or impact, (iii) the FHA claims alleging discrimination on the basis of religion, (iv) claims arising under the URA, (v) claims arising under the Housing and Community Development Act and Home Investment Partnership Act, (vi) and the claim for rescission. *See* **Docket No. 261**. On appeal, Defendants

prevailed on its defenses of legislative and qualified immunities. _See_ **_Community House, Inc. v._**

**_City of Boise,_** 623 F.3d 945 (9th Cir. 2010) ("**_Community House II_**").

By the time of trial, only two of the individual Plaintiffs remained—Marlene Smith and

Jay Banta. They only prevailed as to one claim—the Court's directed verdict ruling that

concluded the ordinance which declared the building to be surplus property that could be sold at

auction violated the FHA because it contained language stating the building must provide beds

for at least 66 homeless men.[1] Defendants prevailed as to the claims for discrimination in terms

of a residential real estate-related transaction, the failure to accommodate Plaintiffs' disabilities,

and the Establishment Clause. Although the jury found discrimination on the basis of familial

status and gender, Plaintiffs failed to prove their damages for those claims, and therefore were

not prevailing parties. While the jury found that there was a violation of the Idaho Constitution,

the issue of preemption has been reserved for determination at a later date. Thus, the Defendants

were the overall prevailing party with respect to the individual plaintiffs.  The Court should

exercise its discretion and not grant the Plaintiffs motion for attorneys' fees.

**C.    PLAINTIFFS' FEE AWARD SHOULD BE REDUCED BECAUSE CHI DID NOT PREVAIL ON THE MAJORITY OF ITS CLAIMS.**

Under the FHA, a party is only allowed attorney's fees where they have received a

judgment on the merits, or obtained a court-ordered consent decree. **_Buckhannon Bd. and Care_**

**_Home, Inc. v. West Virginia Dept. of Health and Human Resources,_** 532 U.S. 598, 605 (2001).

If a party does not litigate an issue to judgment, it is not entitled to attorney's fees. **_Perez-_**

**_Arellano v. Smith,_** 279 F.3d 791, 794-95 (9th Cir. 2002). The prevailing party standard under the

FHA requires more than "some success" on the merits. _See_ **_Environmental Protection_**

---

[1] As outlined in _Defendants' Motion for Judgment Notwithstanding the Verdict_, the ordinance (Exhibit 333) did not prohibit potential owners from operating both a men's and women's shelter in the building.  For that reason, the ordinance was not, on its face, discriminatory.

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 3**

*Information Center v. Pacific Lumber Co.,* 229 F.Supp.2d 993, 1003 (N.D. Cal. 2002). The Supreme Court has recognized that where the plaintiff's claims are based on different facts and legal theories, and a plaintiff has prevailed on only some of those claims, the congressional intent to limit fee awards to "prevailing parties" requires that unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claims. *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 789 (1989).

1.  <u>**Preliminary Injunctions And First Appeal**</u>.

The initial Complaint was filed on July 15, 2005; an Amended Complaint was filed on August 1, 2005. Plaintiffs filed a *Motion for Temporary Restraining Order and/or Preliminary Injunction* on September 6, 2005. The District Court issued its decision on the Motion on October 28, 2005. Plaintiffs subsequently filed a Notice of Appeal on November 25, 2005. The Ninth Circuit issued its original opinion in *Community House, Inc. v. City of Boise,* 490 F.3d 1041 (9th Cir. 2006) ("*Community House I*"), on November 9, 2006. After a Motion for Reconsideration, a revised opinion was issued on June 9, 2007. In the interim, on January 26, 2007, the Plaintiffs filed a second *Motion for Temporary Restraining Order and/or Preliminary Injunction*. This Motion was denied by an order of the District Court entered on February 21, 2007.

Plaintiffs seek attorney fees devoted to attempting to obtain a preliminary injunction, preparing for an appeal of the decision denying the preliminary injunction, addressing the petition for rehearing, or otherwise related to the appeal or preliminary injunction motions. *See* **Aff. of Counsel In Opposition to Costs and Fees,** Exhibit D. Of this time, Mr. Belodoff spent some 535.6 hours on or related to the first appeal; Mr. Cook spent 154.1 hours on the first appeal; Mr. Fisher spent 5.2 hours; and Ms. Olson spent 524.8 hours. These amounts include

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 4**

time entries for January and February 2007 which Mr. Belodoff spent considerable time on the second motion seeking an injunction. _See_ **Docket No. 391-2,** pp. 22-25.

Plaintiffs' preliminary injunction sought "to prevent the Defendants from evicting the named Plaintiffs and other Community House residents and to prevent the sale or lease of the Community House shelter and CHI's assets during the pendency of this action"; preserve the status quo "which is to keep Community House open and permit homeless persons to occupy the shelter, transitional housing, and single room occupancy (SRO) units"; and "require Defendants to cease their unlawful and discriminatory activities." **Docket No. 12,** p. 2. At the time of the motion, the Establishment Clause and Idaho Constitution claims had not been asserted. The Establishment Clause issue was raised _sue sponte_ by the Court.

Plaintiffs did not prevail on the preliminary injunction. _See_ **Docket No. 108**. The court did not grant an injunction to prevent the lease or sale of the property or to force the City to keep the facility open as requested by the Plaintiffs. Plaintiffs also failed to prevail on the discrimination claims. The court granted a limited injunction prohibiting the BRM from directly or indirectly requiring attendance at religious meetings and placing any former resident of Community House in close proximity to the known residence of a registered sex offender. Thus, Defendants prevailed at this stage of the litigation. _See also_ **Aff. of Counsel In Opposition to Costs and Fees,** Exhibit N ("Appellants' Opening Brief"), p. 4 (acknowledging that Plaintiffs had not prevailed before the District Court).

Plaintiffs appealed the preliminary injunction decision but only prevailed in part. _See generally **Community House I**_. The court upheld the District Court's decision denying an injunction as to the disability discrimination claims. _Id._ at 1053. The Court of Appeals refused to consider Plaintiffs' Idaho Constitution claims. _Id._ at 1054. As for the Establishment Clause claims, the Court held that there was no evidence of excessive entanglement. _Id._ at 1056.

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 5**

However, it held that the District Court should consider a broader injunction as to religious services at the facility. *Id.* at 1059. This issue was never raised again at the district court. Nevertheless, the Ninth Circuit did not enjoin the City from evicting shelter residents or blocking the sale or lease of the facility, forcing the City to keep running the facility as operated by CHI, or provide relocation benefits. *See* **Aff. of Counsel In Opposition to Costs and Fees,** Exhibit N ("Appellants' Opening Brief"), p. 4 (listing the preliminary injunctive relief sought by the Plaintiffs). In short, Plaintiffs were not the overall prevailing party at this first appeal. *See also Community House I* at 1060 (ordering that each party to bear their own costs). In addition, if the Plaintiffs were entitled to fees on appeal, they needed to timely move the 9th Circuit for those costs and fees. *See* **F.R.A.P. 39; Circuit Rule 39-1**. Having failed to do so, the Plaintiffs have waived their right to recover those charges. Finally, the jury's verdict favored the City by finding the Plaintiffs had not suffered discrimination in the terms of a residential real estate related transaction. The only real estate transaction at issue was the closure of the facility and its lease and sale to the BRM. These were the issues litigated in the first appeal. Because the City ultimately prevailed on these issues, CHI is not entitled to attorneys' fees arising from those issues.

Plaintiffs' second Motion for Preliminary Injunction, which sought to enjoin the sale of the facility to the BRM, was denied in its entirety by the District Court. *See* **Docket No. 150**.

In sum, Plaintiffs were not the prevailing party as to the first motion for preliminary injunction. Plaintiffs were not the prevailing party as to the first appeal and waived their rights to any such fees or costs by not timely requesting those fees and costs. Plaintiffs were clearly not the prevailing party as to the second motion for preliminary injunction. Consequently, the Court should deny Plaintiffs' attorneys' fees as to the preliminary injunction and first appeal.

2.    **Motion to Dismiss**.

On January 22, 2008, Defendants filed their *Motion to Dismiss State Law Claims*. **Docket No. 170**. On July 22, 2008, the Court issued its decision on the foregoing Motion to Dismiss and an outstanding motion from Plaintiff to file its *Second Supplemental Complaint*. **Docket No. 191**. In that decision, the Court granted the Defendants' Motion to Dismiss as to all state law claims for money damages. *Id.* at pp. 5, 10, and 11. The Court also struck the claims of Jim Liddell and did not allow the amendment as to Plaintiffs' proposed 19th claim for relief. Plaintiffs' related motion for additional time was denied, and Defendants' motion to strike was granted. Thus, Defendants were the prevailing party as to the motion to dismiss and all state law claims seeking monetary damages.

Defendants have set out in the **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit B, those time entries that appear to be related to the foregoing issues. Mr. Belodoff claims 124.3 hours on these areas, while Ms. Olson spent 1.3 hours. For the reasons set out above, the Court should deny Plaintiffs' claim for fees related to the Motion to Dismiss and/or the issue of tort claim notices.

  **3.**  <u>**Motion to Compel**</u>.

On October 31, 2008, Plaintiffs filed a *Motion to Compel* (Docket No. 196). After briefing by both parties, the Court issued a *Memorandum Decision and Order* on June 12, 2012 (Docket No. 256). The Court denied Plaintiffs' motion. The only issue which the Court granted relief was the minor point requiring Defendants supply a written response indicating that certain of the documents (the initial 5 boxes supplied by Defendants) were intended as full compliance with the first set of requests for production. *Id.* at 4. Accordingly, Defendants were the prevailing party as to the Motion to Compel.

Plaintiffs have asserted a claim for 92.2 hours incurred by Mr. Belodoff in relation to the Motion to Compel. **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit C. Because

Defendants were the prevailing party, the Court should not allow Plaintiffs' request for costs or fees associated with the Motion to Compel.

Moreover, a request for fees and costs for the Motion to Compel should have been made pursuant to Rule 37(a). Since the Plaintiffs made no such motion, and the District Court did not grant fees under Rule 37, the Court should deny Plaintiffs' fees as to the Motion to Compel.

    **4.**    **Establishment Clause**.

Plaintiffs claimed that the lease and sale of the facility to the Boise Rescue Mission violated the Establishment Clause of the First Amendment. *See* **Second Amended Complaint** (Docket No. 166-1), pp. 42-43. Plaintiffs have asserted a claim for 232.2 hours incurred by Mr. Belodoff, 11.4 hours asserted by Richard Eppink, 6.8 hours for Ms. Olson, and 37.3 hours by Mr. Cook related to the Establishment Clause claim, including the valuation of the facility. **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit E.  However, the jury found that there had not been a violation of the Establishment Clause. *See* **Docket No. 375,** p. 2. Consequently, Defendants were the prevailing party, and Plaintiffs are not entitled to attorneys' fees.

    **5.**    **Sale of the Facility to the BRM**.

As noted above, Plaintiffs challenged and twice attempted to obtain a preliminary injunction as to the lease and sale of the facility. During the pendency of the first appeal, Plaintiffs filed a second *Motion for Temporary Restraining Order and/or Preliminary Injunction* on January 26, 2007. **Docket No. 124.** Plaintiffs' second Motion for Preliminary Injunction was denied in its entirety by the District Court. *See* **Docket No. 150**. Consequently, Defendants were the prevailing party.

Plaintiffs have asserted a claim for 204.3 hours incurred by Mr. Belodoff, and 9.3 hours for Ms. Olson, related to the second *Motion for Preliminary Injunction*, and their efforts to challenge the lease and sale to the BRM. **Affidavit of Counsel In Opposition to Costs and**

**Fees,** Exhibit F.  Because Defendants were the prevailing party as to those issues, the Plaintiffs are not entitled to fees.

### 6.   Individual Plaintiffs' FHA Claims.

Plaintiffs brought or attempted to bring, multiple claims under the Fair Housing Act for the individual Plaintiffs Marlene K. Smith, Greg A. Luther, Jay D. Banta, Jim Liddell, James Masker, Jessica Schafer and Jimmy Moore. Plaintiffs were not permitted to amend their complaint to include Jim Liddell. **Docket No. 191**. All the others, except for Marlene Smith and Jay Banta, were dismissed prior to trial. Thus, Defendants clearly were the prevailing party as to the claims related to Mr. Luther, Mr. Liddell, Mr. Masker, Ms. Schafer, and Mr. Moore.

Moreover, Ms. Smith's and Mr. Banta's claims for disparate treatment, religious discrimination, and their claims under the Uniform Relocation Assistance and Real Property Acquisitions Policy Act ("URA"), Housing and Community Development Act and Home Investment Partnership Act were dismissed on summary judgment. *See* **Docket No. 261**.

Ms. Smith and Mr. Banta were not prevailing parties as to the claims that survived to trial. The jury found that there was no discrimination against them as to the alleged failure to accommodate for a disability. **Docket No. 375**, p. 2. To the extent that Ms. Smith's and Mr. Banta's claims included claims for discrimination in the terms of a residential real estate-related transaction, the jury found against them. *Id.* Although the jury found that the Plaintiffs had been discriminated against on the basis of gender and familial status in violation of the FHA, the jury found that Ms. Smith and Mr. Banta had not suffered any damages or that defendants had proven their affirmative defenses. *Id.*, pp. 1 and 3. Because a violation of the FHA does not equate to a violation of a fundamental constitutional right, nominal damages are not required. *See* ***Louisiana ACORN Fair Housing v. LeBlanc,*** 211 F.3d 298, 303-304 (5th Cir. 2000); ***Barker v. Niles Bolton Assoc., Inc.,*** 2009 WL 500719, 316 Fed.Appx. 933, *943-944 (11th Cir. 2009).

Nevertheless, even if the Plaintiffs were entitled to nominal damages, the Supreme Court has held that "[w]hen a plaintiff [in a civil rights case] recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." ***Farrar v. Hobby,*** 506 U.S. 103, 115 (1992) (citation omitted).

Plaintiffs claim fees for 272.3 hours by Mr. Belodoff, 21.9 hours by Mr. Eppink, and 130.9 hours by Ms. Olson relating to the claims raised by the individual Plaintiffs. **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit G.  Accordingly, because Plaintiffs were not the prevailing party as to the claims by the individual Plaintiffs, their request for fees should be denied.

7.      <u>**Summary Judgment Rulings**</u>.

Defendants prevailed on a substantial number of issues at summary judgment. Specifically, the Court granted summary judgment to Defendants on the following issues and claims: (i) the claimed violations of due process, (ii) the FHA claims for disparate treatment and/or impact (the Court held that the issue of reasonable accommodation had not been raised in the summary judgment), (iii) the FHA claims alleging discrimination on the basis of religion, (iv) claims arising under the URA, (v) claims arising under the Housing and Community Development Act and Home Investment Partnership Act, (vi) and the claim for rescission. <u>*See*</u> **Docket No. 261.** In addition, on appeal, Defendants prevailed on its defenses of legislative and qualified immunities. <u>*See*</u> ***Community House, Inc. v. City of Boise,*** 623 F.3d 945 (9th Cir. 2010) ("***Community House II***"). Accordingly, Defendants were the prevailing party as to all of the foregoing issues, and Plaintiffs' claims for fees related to those issues should be denied. **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit H.  This reduction totals 238.5 hours for Mr. Belodoff, 5.5 hours for Mr. Fisher, and 23.6 hours for Mr. Eppink.

8.      <u>**Second Appeal**</u>.

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 10**

Contrary to Plaintiffs' assertion, they seek to recover fees related to the second appeal. The materials seek 11.7 hours for Mr. Belodoff. Following the July 29, 2009, decision on the Defendants' Motion for Summary Judgment, *see* **Docket No. 261**, Defendants' filed an interlocutory appeal as to the District Court's decision on legislative and qualified immunity. The Ninth Circuit reversed, finding that the individual defendants were entitled to legislative and/or qualified immunity. *See generally* **Community House II**. Consequently, Defendants were the prevailing party as to the second appeal. Moreover, if the Plaintiffs were entitled to fees on appeal, they needed to timely move the Court of Appeals for those costs and fees. *See* **F.R.A.P. 39; Circuit Rule 39-1**. Having failed to do so, the Plaintiffs have waived their right to recover those costs and fees. Finally, the second appeal focused upon the individual defendants' entitlement to legislative and qualified immunity as to the Establishment Clause and FHA claims. The appellate court ruled in favor of the individual defendants on all issues. Plaintiff is not entitled to attorneys' fees for the second appeal as they were not the prevailing party on those issues. Thus, the Court should deny the fees requested for matters related to the second appeal. *See* **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit I.

C.   **PLAINTIFFS HAVE ASSERTED FEES FOR ACTIVITIES UNRELATED TO THE LITIGATION.**

Plaintiffs request for fees includes numerous items which are not compensable because they are unrelated to this litigation (i.e., entries that are obviously related to other clients or matters, such as the numerous entries throughout 2006 related to a conditional use permit (CUP) for the Sanctuary shelter; obtaining IMPACT grant funds; CHODO bylaws, repairs, and other matters; reading cases on homelessness criminalization; meetings with the Interfaith Sanctuary, etc.) or otherwise noncompensable, such as time spent preparing for or attending interviews with

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 11**

the media. These entries total 132.1 for Mr. Belodoff; and 2.3 hours for Ms. Olsen. **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit J.

Given the paucity of details as to certain entries, the Court should also disallow fees where the description is too vague to determine whether the time entry was related to this matter. For instance (and not limited to just these entries), in January, February and March 2005, Mr. Belodoff lists numerous time entries related to a case involving the Boy Scouts, "CHODO" (apparently another property owned by CHI), obtaining a conditional use permit (CUP), obtaining IMPACT grants, and meetings with HUD—all activities unrelated to this litigation. *See* Docket 391-2, Exhibit 2-1, pp. 12-16. Among those time entries are other time entries generally describing "meetings," reading and responding to emails, and telephone conferences for which it is impossible to determine if they are related to the litigation or the work that Mr. Belodoff was performing for these other matters and/or clients. The Court should not grant Plaintiffs attorney's fees for vaguely worded entries that could apply to any matter, when it is clear that Plaintiffs' counsel has intermixed time entries from other matters.

Plaintiffs' counsel also has substantial time listed for attending meetings described as being for the purpose of "sheltering CH residents." *See* Time entries for 12/7/2005, 12/8/2005, and 12/9/2005. Even if these meetings fall within Mr. Belodoff's duties at Legal Aid, these are not fees arising out of this litigation and/or relate to the individual plaintiffs or individual claims where the City was the prevailing party.

Attorneys' fee awards are not intended to be a windfall. *See, e.g.,* **Geier v. Sundquist,** 372 F.3d 784, 791 (6th Cir. 2004). Plaintiffs have interposed claims for fees for which they clearly are not entitled to reimbursement. The Court should deny the Plaintiffs' request for such fees.

**D.      MANY OF THE CLAIMS FOR FEES ARE UNREASONABLE.**

Many of the Plaintiffs' claims for attorney's fees are unreasonable either in the amount of time spent on an activity or issue, or the type of activity. *See* **Affidavit of Counsel In Opposition to Costs and Fees,** Exhibit K.

For instance, Mr. Belodoff indicates that he spent 95.5 hours preparing the initial complaint in this matter, in addition to the 31 hours spent by Ms. Olson doing "[r]esearch re FHA" during the same time period. **Docket No. 391-4**, Exhibit 2.3, p. 6. Plaintiffs' claim of 126.5 hours—essentially 3 work weeks—drafting a Complaint is exorbitant and unreasonable, particularly considering the expertise Plaintiffs' counsel claims and the hourly rate they assert.

Plaintiffs also claim time for tasks that are not normally compensable as attorney's fees because they represent non-recoverable overhead, including (but not limited to) downloading court documents, organizing files, preparing docketing sheets, making travel arrangements, and so on. *See, e.g.*, Belodoff Time Entries for 8/18/2005, 9/7/2005, 9/9/2005, 9/12/2005, 9/27/2005, 10/11/2005, 12/29/2005, 12/30/2005, 4/1/2006, 4/4/2006, 4/17/2006, 5/2/2006, 5/8/2006, 1/17/2007, 2/13/2007, 3/26/2007, 8/7/2007, 3/4/2008, 3/7/2008, and 7/24/2009.

## E.    APPLICATION OF THE LODESTAR FACTORS.

As discussed above, the award of attorney's fees under 42 U.S.C. § 3613(c)(2) is discretionary. Courts typically apply the "lodestar" method to determine appropriate fees in civil rights cases, including the FHA. *See, e.g.*, ***Quigley v. Winter,*** 598 F.3d 938, 957 (8th Cir. 2010). *See also* ***Morales v. City of San Rafael,*** 96 F.3d 359, 363 (9th Cir. 1996). Obviously, a court is not required to go through the lodestar analysis where the ***Farrar*** exception applies because the plaintiff only obtained nominal damages. ***Morales*** at 362-63.

The lodestar method multiplies a reasonable number of hours by a reasonable hourly rate. ***Ballen v. City of Redmond,*** 466 F.3d 736, 746 (9th Cir. 2006). The Ninth Circuit has indicated

that the "presumptively reasonable lodestar figure" may be adjusted on the basis of twelve

factors, to-wit:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*McGrath v. County of Nevada,* 67 F.3d 248, 252 n. 2 (9th Cir. 1995). The Supreme Court has

also adopted this "hybrid" approach. *Penn. V. Del. Valley Citizens' Council for Clean Air,* 478

U.S. 546, 564 (1986). However, the Supreme Court has limited the application of many of the 12

factors. For instance, the lodestar amount may not be enhanced for contingency arrangements.

*See City of Burlington v. Dague,* 505 U.S. 557, 567 (1992). *See also Flight Attendants v. Zipes,*

491 U.S. 754, 758 n. 2 (1989) (Supreme Court case law construing what is a "reasonable" fee

applies uniformly to all federal fee-shifting statutes). Rather, "many of [the 12 factors] usually

are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly

rate" and "cannot serve as independent bases for increasing the basic fee award." *Penn. v. Del.*

*Valley Citizens' Council for Clean Air,* 478 U.S. at 564 and 565.

The Supreme Court has also cautioned that fee shifting statutes "were not designed as a

form of economic relief to improve the financial lot of attorneys, nor were they intended to

replicate exactly the fee an attorney could earn through a private fee arrangement with his

client." *Penn. v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. at 564. The Supreme

Court has noted that Congress only intended "that statutory fees awards be adequate to attract

competent counsel, but … not produce windfalls to attorneys." *Riverside v. Rivera,* 477 U.S. 561, 580 (1986).

1.     <u>**Hourly Rates.**</u>

In determining a "reasonable hourly rate," "the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate." *Blum v. Stenson,* 465 U.S. 886 n. 11 (1984). "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir. 1986). Conclusory affidavits as to what constitutes a reasonable rate—even if from other attorneys working in the same area of law—are insufficient to establish the prevailing market rate. <u>*See*</u> *Widrig v. Apfel,* 140 F.3d 1207, 1209-10 (9th Cir. 1998).

Here, Plaintiffs claim $400 per hour for Mr. Belodoff's work and $275 per hour for his co-counsel from Idaho Legal Aid; and $325 per hour for Vaughn Fisher's work. Although Plaintiffs have submitted an affidavit from Thomas Banducci in support of the requested rates, it is notable that Mr. Banducci's testimony is based on what his own firm charges (¶ 9), and that the hourly rates sought is comparable for "work performed in Boise <u>and the Northwest</u> by attorneys of similar experience and reputation in cases involving <u>complex commercial litigation</u> <u>and appellate work</u>." (¶ 11) (emphasis added). The issue, however, is what is the <u>prevailing rate</u> in Boise for <u>civil rights litigation</u>—not the rates in Seattle or Portland for complex commercial litigation (which this case was not) or appellate work (at which the Plaintiffs were singularly unsuccessful). At to the relevant issues, Joseph McCollum states in his affidavit that Hawley Troxell Ennis and Hawley, LLP, charges between $250 and $320 per hour <u>for senior partners</u> for complex commercial litigation (and between $195 and $280 for partners with less than 15 years' experience), and in practice charge lower rates of between $180 to $260 per hour <u>for civil rights</u>

litigation. *McCollum Aff.*, ¶¶ 4-5. Mr. McCollum also noted that associate attorneys' fees would typically be between $145 and $195. *Id.* ¶ 6. Mr. McCollum concedes that a reasonable attorney fee for southwest Idaho might be $280 to $320 for someone with 15 to 40 years of trial experience; $195 to $280 for a lead attorney with 5 to 15 years trial experience; and $150 for associate attorneys. *Id.* ¶ 7. Defendants would also note the Court's recent decision in *Mays v. Stobie,* 3:08-cv-552-EJL-CWD, in which the Court determined in a civil rights case that the lead attorney was only entitled to $300/hour and the second chair attorney to $175/hour. *See Id.*, Docket No. 247, p. 14.

     2.    **The Lodestar Factors**.

Defendants would also note the following concerning the lodestar factors:

(i)    As discussed above, the time and labor claimed by Plaintiffs is not reasonable and includes a substantial number of hours for issues and claims on which Plaintiffs did not prevail;

(ii)    Plaintiffs did not prevail on the issues that could be considered complex and/or novel;

(iii)    The skill needed does not support the hourly rate requested by Plaintiffs;

(iv)    Plaintiffs have not presented any facts to show other employment was precluded, or that Idaho Legal Aid was impacted by taking this matter;

(v)    As discussed above, the "customary fee" for civil rights litigation is much less than claimed by Plaintiffs, which represent the uppermost fees for complex commercial litigation;

(vi)    There is no evidence of a fee agreement with the Plaintiffs;

(vii)    Although there may have been time limitations as to the initial application for preliminary injunction (at which Defendants' prevailed), time limitations have not played a role in this case;

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 16**

(viii)   Although Plaintiffs obtained significant results as to one of their claims, there were 18 other claims (including significant claims under the Establishment Clause and the FHA), two preliminary injunction motions, and two appeals at which Plaintiffs did not succeed; and Plaintiffs did not obtain the primary relief they sought, which was blocking the lease and sale to the BRM and return of the facility to Plaintiffs;

(ix)   The experience and reputation of the attorneys does not justify claiming top tier rates for the whole of the Pacific Northwest for complex commercial litigation;

(x)   Plaintiffs have not alleged nor shown any facts indicating that the case was undesirable; and the fact that Plaintiffs had support from interns and national organizations that filed amicus briefs supporting Plaintiffs, the case was one that can only be described as desirable;

(xi)   There is no evidence as to the nature and length of the professional relationship between counsel and the Plaintiffs; and,

**F.**   **COSTS**.

Plaintiffs' claims for costs are excessive and/or include expenses for which they are not entitled to reimbursement. Defendants object to all of the costs claimed by Plaintiffs on the grounds that Plaintiffs were not the overall prevailing party. Alternatively, the costs should be apportioned or reduced.

Defendants further object to costs as a matter of right for the following reasons:

(i)   Travel expenses for Fawn Pettet, from Memphis, TN. Although 28 U.S.C. § 1821(c)(1) allows recovery of actual expenses for traveling by common carrier, the local rules are also clear that "[m]ileage fees for travel outside the District must not exceed 100 miles each way without prior Court approval." **Civ. R. 54.1(c)(4).** Defendants are not aware that Plaintiffs obtained prior approval. More important, Ms. Pettet did not testify at trial. These costs should not be allowed.

(ii)   Plaintiffs claim $2,000 for four (4) copies of trial exhibits. However, the Local Rules only allow recovery of expenses for exhibits that were filed. **Civ. R. 54.1(c)(5).** Thus, Plaintiffs should only be permitted one (1) copy. This would reduce the copy costs to $500.00

Plaintiffs also claim "out-of-pocket" litigation expenses, which are considered to be part of a claim for attorney's fees. *See* ***Trustees of Const. v. Redlands Ins. Co.,*** 460 F.3d 1253, 1257 (9th Cir. 2006). To the extent Plaintiffs are not entitled to attorney's fees, Plaintiffs are also not entitled to the "out-of-pocket" expenses they have claimed. Plaintiffs have also failed to cite the Court to any cases allowing recovery of "out-of-pocket" expenses under the FHA.

Defendants further object to specific costs as follows: (i) Plaintiffs claim $531.38 in costs noted by Plaintiffs' counsel as shipping, but also included travel and lodging, for the interlocutory appeals in this matter. As discussed above, Plaintiffs were required to seek these costs from the Court of Appeals, and waived such costs by not making a timely request to the Ninth Circuit. (ii) Plaintiffs request reimbursement for filing one or more *lis pendens*, which were unnecessary and unrelated to the claims on which they prevailed, and to record resolutions, which also appear to have been unnecessary and unrelated to the conduct of this litigation. (iii) The Supreme Court has held that a court may only tax costs as authorized by statute. ***Crawford Fitting Co. v. J.T. Gibbons, Inc.,*** 482 U.S. 437, 445 (1987). Although 42 U.S.C. § 1988(c) specifically allows the recovery of expert fees, 42 U.S.C. § 3613 does not. Instead, allowable witness fees are set by 28 U.S.C. 1920. *See* ***Crawford Fitting, supra*** (disallowing expert fees); ***Redland Ins. Co., supra,*** at 1258 (noting that "expert fees" are a category of expenses distinct from attorney's fees). Thus, Plaintiffs are only allowed witness fees at the statutory rate of $40 per day. Finally the only expert who testified was Mark Richey. Mr. Richey is a real estate appraiser. His testimony related to the establishment clause claims and focused upon whether the City sold or leased the property for substantially less than market value. Because the City prevailed on this claim plaintiffs are not entitled to claim his fees as costs.

## G.   APPORTIONMENT   BETWEEN   SUCCESSFUL   AND   UNSUCCESSFUL CLAIMS.

In the sections above, defendants identified hours that must be eliminated from the plaintiffs' fee request.  Those hours involve issues where the City of Boise was the prevailing party, issues that are not compensable because the request is excessive or, relate to activities that are unrelated to this litigation.  The balance of the hours sought by the plaintiffs' fee request are compiled as hours requiring apportionment.  *See* Affidavit of Phillip J. Collaer, Exb. L.  These hours are described by the plaintiffs in general terms which cannot be specified as relating to successful or unsuccessful claims or; involve time devoted to trial preparation or attendance at trial which, would involve time pursuing both successful and unsuccessful claims.  Should the court determine an award of attorney fees is warranted, the hours acquiring apportionment should be reduced to take into account the partial success realized by plaintiff CHI.

The second Amended Complaint alleged 19 causes of action.  CHI received a favorable verdict and damage award on one count, the alleged retaliation claim under the FHA.  The individual plaintiffs did not prevail on any theory. CHI lost on all remaining claims.[2]

Due to the partial success achieved, apportionment should be based upon a percentage or ratio, taking into consideration the one claim CHI prevailed upon compared against the numerous claims which were resolved in favor of the City of Boise.  This would result in a 1 in 19 ratio.  An alternative approach would be the reduction adopted by the court in *Mays v. Stobie*, where the court recognized the limited success achieved by the plaintiffs and, adjusted the attorney fee award accordingly.  The court subtract fees which are not compensable and, then allowed the plaintiff to recover 25% of the time devoted to hours which, either required

---

[2] Defendants recognize the equitable claims are outstanding.  However, the majority of those claims arise under state law.  State law does not allow for mandatory attorney's fees should CHI prevail on any of those claims.

apportionment or, involved hours on issues which the plaintiff was clearly the prevailing party. A similar reduction in this case would be warranted.

Dated this ___3___ day of December, 2012.

ANDERSON, JULIAN & HULL LLP

By _____
Phillip J. Collaer, Of the Firm
Attorneys for Defendants

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this this ____ day of December, 2012, I served a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS** by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

|  |  |
|---|---|
| Howard A. Belodoff | [ ]  U.S. Mail, postage prepaid |
| Zoe Ann Olson | [ ]  Hand-Delivered |
| James C. Cook | [ ]  Overnight Mail |
| IDAHO LEGAL AID SERVICES, INC. | [ ]  Facsimile |
| 310 N. 5th Street | [X]  Electronic Delivery |
| P.O. Box 913 | |
| Boise, Idaho  83701 | |

|  |  |
|---|---|
| Cary B. Colaianni | [ ]  U.S. Mail, postage prepaid |
| Scott Muir | [ ]  Hand-Delivered |
| CITY ATTORNEY'S OFFICE | [ ]  Overnight Mail |
| P.O. Box 500 | [ ]  Facsimile |
| Boise, Idaho  83701 | [X]  Electronic Delivery |


_____
Phillip J. Collaer

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES AND COSTS - 21**