# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COMMUNITY HOUSE, INC., et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF BOISE, Idaho; JIM BIRDSALL and BRUCE CHATTERTON, in their official capacities,<br><br>        Defendant. | Case No. 1:05-cv-00283-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiffs brought this action on July 15, 2005, against the City of Boise alleging violations of the Fair Housing Act, Idaho and United States Constitutions, and various laws of the State of Idaho. This matter has been smoldering along since then, and included two appeals to the United States Court of Appeals for the Ninth Circuit. Its history includes also several nondispositive and dispositive rulings by the Court, including a decision and order granting, in part, Defendants' motion for summary judgment.

In the Court's July 29, 2009 Order deciding Defendants' summary judgment motion, the Court held that Plaintiffs were precluded from seeking monetary damages on

their state law claims for relief. These state law claims encompassed Counts 11-16 of the Second Amended Complaint, and alleged breach of contract and breach of partnership, as well as violation of the Idaho nonprofit corporations act, landlord tenant act, and the statute governing the sale of city owned property. While other aspects of the Court's ruling were presented to the Ninth Circuit on appeal, its ruling on Plaintiffs' inability to claim monetary damages for their state law claims was not.

The remaining interrelated claims based upon the Fair Housing Act and Idaho Constitution finally reached a jury in September of 2012. Of the seven counts remaining for trial, the jury found that Plaintiffs Community House, Inc. ("CHI"), Marlene Smith, and Jay Banta proved their claim that Defendants discriminated against them on the basis of gender or familial status in violation of the Fair Housing Act, and that CHI proved its claim that Defendants interfered with CHI in violation of the Fair Housing Act. The jury concluded also that Plaintiffs proved Defendants violated the Free Exercise clause of the Idaho Constitution.

The jury returned a special verdict on September 12, 2012, awarding Plaintiff CHI $1,000,000 in damages for the Defendants' conduct in violation of the Fair Housing Act. The individual Plaintiffs, Jay Banta and Marlene Smith, were awarded no money damages for their claims. The jury did not determine damages for the constitutional claim, because the Court instructed the jury that its determination was limited to liability only.

After the jury trial, the Court later conducted a bench trial regarding the Plaintiffs' equitable claims under state law, as well as the equitable relief, if any, to be awarded for

Plaintiffs' claims under the Idaho Constitution and Fair Housing Act. The Court issued its Findings of Fact and Conclusions of law on March 18, 2014, finding Plaintiffs were not entitled to relief on any of their equitable claims. The Court issued an amended judgment.

Consequently, Plaintiffs' Motion for Attorney Fees, filed on October 24, 2012, and the related motion to strike, filed on January 17, 2013, are now ripe for judicial review. (Dkt. 390, 416.)[1] Plaintiffs submitted also a Bill of Cost on October 24, 2012. (Dkt. 389.) Plaintiffs seek an award of attorney's fees under the FHA in the amount of $1,808,017.50, and $21,474.60 in costs, for a total award of $1,829,492.11. (Dkt. 390.) There is no need for Plaintiffs to submit further applications for attorney fees, as explained below.

## DISPOSITION

### 1.     Arguments of the Parties

Plaintiffs claim they are the victors in this matter, having initiated their fight to prevent closure of the Community House shelter, and then, receiving a jury verdict of $1,000,000 against the City. As prevailing parties under the FHA, Plaintiffs claim they are entitled to a reasonable attorney's fee and costs. Despite having their claims whittled away, Plaintiffs contend their lawsuit cannot be viewed as a series of discrete claims, and the Court should focus instead on the significance of the overall relief. Plaintiffs argue they achieved "excellent results." The results included not only money damages, but also

---

[1] The motion for attorney fees was timely filed in response to the Court's entry of a partial judgment on the verdict on September 26, 2012. (Dkt. 382.) At the time the motion was filed, the City claimed the motion was premature because a final, appealable judgment had not been entered. In one respect, the Court agrees—the case had not yet been concluded, and thus the Court did not consider the motion until now. However, the Court had entered a partial judgment on the verdict, which judgment Defendants appealed on February 14, 2014, prior to the Court's entry of its findings of fact and conclusions of law and the Amended Judgment.

the Court's directed verdict that City Ordinance 6404 stating a preference for men-only at the Community House shelter was discriminatory under the FHA.

The fees and costs claimed include time spent toward the prosecution of this matter and the first appeal. Counsel indicates he exercised billing judgment, excluding time he spent in conferences with co-counsel and 250 hours related to the second appeal to the Ninth Circuit, in which Plaintiffs did not prevail. There were several timekeepers on the case as well, and a chart related to their hourly rates, experience, and time billed, is below:

| Howard Belodoff, Lead Counsel | 34 years experience | $400 x 3,400 hours | $1,360,000.00 |
| Richard Eppink | 5 years experience | $275 x 497.4 | $135,758.00 |
| Zoe Ann Olson | 14 years experience | $275 x 844 | $232,100.00 |
| James Cook | 15 years experience | $275 x 227.9 | $62,672.50 |
| Michael Witry | No experience noted. | $225 x 13.5 | $3,037.50 |
| Vaughn Fisher | 17 years experience | $325 x 41.3 | $13,422.50 |

The City counters with its argument that "Plaintiffs were not the overall prevailing party" because, along the way to the jury, Plaintiffs' claims were whittled down, they lost certain arguments, including the ability to claim money damages on their state law claims, and they lost their broad request for injunctive relief right out of the starting gate. The City proceeds to explain which claims or motions Plaintiffs lost, extracts the hours spent on those claims or issues, and then deducts hours for those claims from the overall total. Further, the City contends Plaintiffs claim fees for activities unrelated to the

litigation, such as time entries related to a conditional use permit for the Interfaith Sanctuary shelter, obtaining IMPACT grant funds, revising CHODO bylaws, and other ancillary matters. The City argues also that the hourly rates are excessive, because they do not reflect what this Court has previously awarded in recent civil rights cases, citing *Mays v. Stobie*, No. 3:08-cv-552-EJL-CWD.

According to the City, the following non-compensable time should be excluded before calculating any award:

| Category | Belodoff | Olson | Eppink | Fisher | Witry | Cook |
|---|---|---|---|---|---|---|
| Motion to dismiss | 124.3 | 1.3 | | | | |
| Motion to Compel | 92.2 | | | | | |
| First Appeal | 535.6 | 524.8 | | 5.2 | | 154.1 |
| Constitutional claims | 232.2 | 6.8 | 11.4 | | | 37.3 |
| Sale to BRM | 204.3 | 9.2 | .4 | | | |
| Individual Plaintiffs' Claims | 272.3 | 127.9 | 21.4 | | | |
| Summary Judgment rulings | 238.5 | 23.6 | 5.5 | 5.5 | | |
| Second appeal | 11.7 | | | | | |
| Uncompensable time | 132.1 | 2.3 | .2 | | | .5 |
| Excessive time | 178.1 | 5.7 | | | 13.5 | 30.6 |
| **TOTALS** | **2021** | **678.1** | **57** | **10.7** | **13.5** | **222.5** |

After its exercise in apportioning Plaintiffs' claims between successful and unsuccessful claims or motions and reducing the hourly rates, the City contends Plaintiffs were successful on one out of nineteen claims, and the Court should apportion the fees accordingly. Alternatively, the City urges the Court to adopt the rationale from *Mays v. Stobie*, which would require the Court to subtract non-compensable fees, and then permit Plaintiffs to recover 25% of the time devoted to hours which either required apportionment or involved hours on issues which Plaintiff s were clearly the prevailing party.

**2.     Attorney Fee Claims Under the Fair Housing Act**

Under the Fair Housing Act, the Court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). In civil rights cases, a prevailing party is "one who has been awarded some relief by the court," and has received some relief on the merits of his claim. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Servs.*, 532 U.S. 598, 603-04 (2001) (considering attorney fees under the FHA). Even an award of nominal damages suffices, so long as there is a court-ordered "change in the legal relationship between the plaintiff and the defendant." *Id.* at 604.

The City does not contend that Plaintiffs did not prevail. Rather, the City contends the Plaintiffs did not "prevail overall," and therefore any fee awarded should be reduced, because the claimed fees are unreasonable. The City's "overall prevailing party" argument is not the standard under the FHA. Plaintiffs clearly prevailed, because they

were awarded relief by the Court. CHI was awarded monetary damages, and although the individual Plaintiffs were not awarded damages, the jury found liability on the part of the City for their claims of discrimination. The Court therefore finds that Plaintiffs are prevailing parties under the FHA, and are entitled to an award of a reasonable attorney's fee and costs.

### 3.    Reasonableness of the Claimed Fees

Upon determining Plaintiffs are entitled to attorney fees, the Court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *cited in Goff v. Washington County, et al.*, Case No. CV 03-268-MHW, 2006 WL 1128222 at *2 (April 10, 2006). Generally, the "lodestar figure" is used, which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* The Court can then adjust the lodestar figure based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976),[2] that have not been subsumed in the lodestar calculation.[3] *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir.2008). After calculating the lodestar, the fee may be adjusted by any non subsumed factors identified in *Kerr*. *Goff*, 2006 WL 1128222 at *2.

---

[2] The twelve *Kerr* factors include: (1) the time and labor required; (2) the complexity of the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[3] "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, ... (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) (internal quotations and citations omitted).

In civil rights litigation, "the degree of the plaintiff's overall success goes to the reasonableness" of a fee award under *Hensley v. Eckerhart,* 461 U.S. 424 (1983). *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 793 (1989)). The most critical factor in determining the reasonableness of a fee award is "the degree of success obtained." *Farrar*, 506 U.S. at 114 (citing *Hensley*, 461 U.S. at 436). If a plaintiff has achieved only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar*, 506 U.S. at 115 (quoting *Hensley*, 461 U.S. at 436). In the absence of "excellent" results, a fully compensatory fee may be excessive and the court should reduce the lodestar figure to account for the limited success. *Hensley*, 461 U.S. at 434. Further, the Court may award low fees or no fees "without reciting the 12 factors bearing on reasonableness, … or multiplying 'the number of hours reasonably expended … by a reasonable hourly rate.'" *Id.* at 115 (quoting *Hensley*, 461 U.S. at 430 n.3, 433).

The City essentially argues the time expended and the hourly rates claimed by Plaintiffs' attorneys are not reasonable and the fee award should be reduced significantly, either by carving out time for claims or motions lost, or by a percentage figure based upon Plaintiffs' limited success. As more fully explained below, the Court agrees, but not to the extent or in the nature requested.

### A.    *Hourly Rate*

Hourly rates must first be reasonable, and should reflect the relevant market. "A district court should calculate this reasonable hourly rate according to the prevailing

market rates in the relevant community, which typically is the community in which the district court sits." *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (internal quotations and citations omitted). The same principle holds true when considering the hourly rates governing fee awards to non-profit legal services organizations in civil rights cases. *See Blum v. Stenson*, 456 U.S. 886, 896 n.11 (1984). The relevant community in this case is Boise, Idaho, where this litigation commenced. "[T]he burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

Plaintiffs' counsel Howard Belodoff and Richard Eppink submitted affidavits in support of the motion for attorney's fees. In Mr. Belodoff's affidavit, he states he handles complex civil rights cases, and has done so since becoming a member of the Idaho state bar in 1978. Mr. Belodoff specializes in representing plaintiffs. In addition to having a part time private practice since 1996, Mr. Belodoff has been the Associate Director of Idaho Legal Aid Services, Inc. ("ILAS") for the past thirty-four years, which provides free civil legal services to low income persons throughout the state of Idaho. Mr. Belodoff states that he is claiming $400 per hour for all time spent on the case based upon the hourly rate he presently charges for federal civil rights litigation.

Mr. Belodoff justifies his $400 hourly rate, which is applied to all hours expended since the inception of the case, due to the complexity of the issues raised, counsel's expertise in civil rights cases, the fact he was retained on a contingency basis, and

because he has not actually been paid since June of 2005. Further, Counsel indicates he has charged and received this hourly rate in other federal court litigation.

Mr. Belodoff required the assistance of several co-counsel, who were all employed by ILAS at the time they assisted with the case. For those attorneys, the hourly rate claimed ranges from $225 for Mr. Witry, up to $325 for Mr. Fisher. Mr. Eppink, who was second-chair at trial, graduated in 2006 from the University of Idaho College of law *summa cum laude*, and after graduating law school, completed a Fulbright Fellowship in the areas of poverty law and civil rights. Mr. Eppink has practiced law since May of 2007. Mr. Eppink performed legal work on the matter since 2008, but only charged for time spent since 2009, during the summary judgment phase. The bulk of Mr. Eppink's work was as second-chair during the 2012 jury trial. Mr. Belodoff indicates in his affidavit that he intentionally assigned Mr. Eppink the same hourly rate as Ms. Olson and Mr. Cook despite Mr. Eppink's more limited practical experience. Based upon his unique academic history and specialized work experience, Mr. Eppink states that his hourly rate of $275 is reasonable.

The other time keepers on the matter—Ms. Olson, Mr. Cook, and Mr. Fisher— have experience with Fair Housing Act issues and civil rights litigation, but Mr. Witry does not. Mr. Belodoff states that the rates assigned to these time keepers are commensurate with what other Boise attorneys having similar skill, reputation and experience charge for similar work. Plaintiffs explained that Mr. Witry's time was edited to exclude 499.2 hours reviewing discovery and preparing documents and exhibits to oppose the City's motion for summary judgment.

Thomas Banducci, an Idaho attorney with thirty-three years of experience who made a brief appearance for Plaintiffs in the action in 2008, submitted an affidavit on Plaintiffs' behalf. In his opinion, the issues presented required a high level of skill, and the record was voluminous. Further, he opines that the hourly rates sought are commensurate with the hourly rates in the community for attorneys with similar experience and skill, especially given that he does "not believe that any other law firms in the state of Idaho would have seriously considered undertaking representation in this action solely on a contingent basis." Aff. of Banducci ¶ 10 (Dkt. 393.) Walter Sinclair, an Idaho trial attorney with thirty-four years of experience in Idaho, is of a similar opinion. Aff. of Sinclair (Dkt. 394.) Mr. Sinclair, senior partner of a large regional law firm with an office in Boise, stated that other attorneys in Boise would charge between $350 and $475 per hour for complex commercial litigation and appellate work, to be charged without regard to the results obtained in the case.

In opposition to Plaintiffs' motion for fees, the City submitted the affidavit of Joseph McCollum, a Boise attorney with a local as opposed to a regional firm, to counter Plaintiffs' contention that Plaintiffs' counsel's rates are the prevailing market rates for similar work in the Boise community. The City argues that the prevailing rate in Boise among local firms engaging in civil rights litigation is between $250 and $320 per hour for senior partners having 15 to 40 years of trial experience, and $195 and $280 for partners with less than 15 years' experience, while junior associates bill between $180 and $260, and associates $145 - $195. The City noted also the Court's opinion in *Mays v. Stobie*, 3:08-cv-552-EJL-CWD, in which the Court considered fees in a North Idaho civil

rights matter, determining $300 per hour for lead counsel was reasonable while $175 for the second chair attorney was reasonable.

The City does not mention, however, the complexity, length, and breadth of this case. This matter has been before the Court since 2005, and involved complex motion practice, an injunction, and two interlocutory appeals before it ever reached a jury. It also involved three judges[4] and two Ninth Circuit panels. The Court finds telling Mr. Banducci's statement that likely no other attorney in Idaho would have seriously considered undertaking this matter given the contingent nature of the case. The Court therefore does not find the distinction the City draws between rates charged by local Boise firms as opposed to regional firms persuasive. Mr. Belodoff and the other attorneys who assisted with the case possessed unique expertise not readily found in the Boise market, and ILAS was likely the only entity willing to take on the case. These factors warrant consideration in determining a reasonable fee award.

Further, while the Court considered its own report and recommendation in *Mays v. Stobie*, 2012 WL 914928 (D. Idaho Feb. 14, 2012 ),[5] it is not dispositive of the hourly rate question. In *Mays*, the Court accepted lead counsel's requested hourly rate of $300 per hour, finding the complexities of the case as well as the atypical discovery justified a somewhat higher fee. 2012 WL 914928 at *6. And, the fee was being considered in a North Idaho case, a different market than Boise and southwest Idaho, which attract

---

[4] The Honorable B. Lynn Winmill was initially the assigned judge. Visiting Judge Ted Stewart presided over several dispositive motions and authored the July 29, 2009 Memorandum Decision and Order deciding Defendants' Motion for Summary Judgment. The parties consented to the undersigned Magistrate Judge on July 12, 2011, and the matter was reassigned on July 14, 2011.
[5] The Court's report and recommendation was adopted by the Honorable Edward J. Lodge on March 16, 2012.

regional firms charging rates that are at the top end of reasonable prevailing market rates. *See LaPeter v. Canada Life Ins. Co. of Am.*, 2009 WL 1313336 *6 (D. Idaho May 11, 2009).[6] The Court did, however, reduce the rate of co-counsel in *Mays* to $175 per hour based upon his limited experience with the type of case.

Given the length, complexity, and the unlikelihood that Boise attorneys would have endeavored to take a case like this one; Mr. Belodoff's experience and national recognition; as well as the Court's decisions in prior cases such as *LaPeter*, the Court finds that Mr. Belodoff's $400 hourly rate is reasonable for all hours expended after January of 2009. Prior to January of 2009, the Court will reduce the applicable hourly rate to $350 per hour.

Mr. Eppink's hourly rate will be reduced based upon his limited experience to a rate of $200 per hour for hours expended after January of 2009, and $175 per hour for hours expended prior to that date. The Court believes this hourly rate, which is at the higher end of the spectrum for attorneys practicing for five years, accounts for Mr. Eppink's unique educational background and experience.

The City concedes that the $275 and $325 rate assigned to the other time keepers having 15 years of experience is within the range of reasonable rates for Boise attorneys, and therefore the Court will not adjust those rates for time spent after January of 2009. However, the Court will reduce the respective rates by $35 per hour for time spent prior to 2009.

---

[6] In *LaPeter*, decided in 2009, the Court found an hourly rate of $405 for Holland and Hart partner Walt Bithell and $350 for senior counsel Newel Squyres reasonable. The Court commented also that "it is typical for rates to increase on a yearly basis." 2009 WL 1313336 at *3.

As for Mr. Witry, the Court has not been presented with any information about Mr. Witry's experience, background, or whether he is an attorney or paraprofessional. Time is being claimed for "investigating the jury pool" at a rate of $225 per hour. No rate or fees for Mr. Witry will be allowed given the lack of support. Therefore, the hourly rate for Mr. Witry will be $0.

Based upon the above, the fees are subject to reduction as follows:

| Howard Belodoff, Lead Counsel | 34 years experience | $400 x 1,511.5 hours<br>$350 x 1,887.9 hours | $604,600.00<br>$660,765.00 |
|---|---|---|---|
| Richard Eppink | 5 years experience | $200 x 464.4<br>$175 x 32.7 | $92,880.00<br>$5,722.50 |
| Zoe Ann Olson | 14 years experience | $275 x 15.2<br>$240 x 828.8 | $4,180.00<br>$198,912.00 |
| James Cook | 15 years experience | $240 x 227.9 | $54,696.00 |
| Michael Witry | No experience noted. | $0 x 13.5 | $0 |
| Vaughn Fisher | 17 years experience | $325 x 41.3 | $11,977.00 |

### B. *Hours Reasonably Expended*

Under the FHA and civil rights cases in general, prevailing parties may be compensated for "reasonable" fees. The moving party bears the burden of establishing the hours claimed and must carry that burden by submitting adequate documentation of those hours. *Hensley*, 461 U.S. at 437. The Court will not grant a fee award for "hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 433–34. It is well settled that a "plaintiff is entitled to recover attorney's fees even for claims on which she did not prevail, if they 'involve a common core of facts or are based on related legal theories.'" *Mendez*, 540 F.3d at 1125–26. Conversely, a plaintiff is not entitled to an award of fees

for unsuccessful claims that were "unrelated to" the successful claims. *Hensley*, 461 U.S. at 434.

Mr. Belodoff states in his affidavit that he necessarily and reasonably devoted the claimed hours to the case, and exercised billing judgment to eliminate time spent for the unsuccessful second appeal as well as excessive hours. Mr. Eppink states the same. Mr. Belodoff described the purposes for which Ms. Olson, Mr. Cook and Mr. Fisher spent time on the case. Further, Plaintiffs indicated unpaid externs, law students, and Idaho Legal Aid staff spent hundreds of hours on the case, for which no fees are requested.

The City objects to the number of hours claimed by Plaintiffs' attorneys, primarily by breaking down the case into battles or theories won and lost. Although the City begins its argument with the proposition that Plaintiffs did not prevail on the majority of their "claims," it proceeds to argue that fees should not be awarded for discrete motions Plaintiffs lost.

For example, the City contends Plaintiffs filed a motion to compel on October 31, 2008, which the Court denied. Therefore, the City argues, no time should be awarded for the 92.2 hours Mr. Belodoff claims related to the motion. The City makes this same argument for the time attributable to the motion for preliminary injunction challenging the sale of the Community House facility to the Boise Rescue Mission, which Plaintiffs lost, but prevailed in part upon appeal. The City similarly argues no time should be awarded for time spent on claims eliminated by the Court upon summary judgment, or for claims, such as the Establishment Clause claim, that the jury rejected. And finally, the City claims that, because Ms. Smith and Mr. Banta were the only individual plaintiffs

that actually proceeded to trial, and they lost, all hours attributable to time spent on the claims raised by the individual Plaintiffs (over 400 hours) should be eliminated.

The argument the City advances—taking a piecemeal approach by motions or individual claims lost—is not the accepted method for determining a reasonable fee in civil rights cases. In *Hensley*, the Supreme Court explained that the relevant inquiry is to address first whether the plaintiff failed to prevail on claims unrelated to the claims on which he succeeded. *Hensley*, 461 U.S. at 434. Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed, and may either be factually distinct or based upon unrelated legal theories. *Webb v. Sloan*, 330 F.3d 1158, 1168-69 (9th Cir. 2003). But, work on different aspects of a case often overlaps, and much of counsel's time will be devoted generally to the litigation as a whole. *Webb*, 330 F.3d at 1169. "If it is impossible to isolate the truly unrelated claims from those related claims, the district court should instead reflect that limited success in *Hensley's* second step." *Webb*, 330 F.3d at 1169.

That second step requires the Court to examine whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434. The court explained that it was inappropriate to divide the hours expended on a claim-by-claim basis for cases involving a "common core of facts … based on related legal theories." *Hensley*, 461 U.S. at 435. The court did not sanction the type of argument the City proposes here, that the overall case should be

viewed as a series of motions or battles won or lost, or apportioned between winning and losing theories. The City has cited no authority for its approach.[7]

The Court finds that this matter involved a common core of facts and related legal theories brought by CHI and the individual Plaintiffs under the FHA for housing related claims and under the Constitution—both federal and state—for religious discrimination. The Court declines to excise attorney fees based upon motions won or lost in the context of the overall matter, as the City urges it to do. The fee award should not be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit" or because the plaintiff raised alternative legal grounds to obtain the desired outcome. *Hensley*, 461 U.S. at 435.

Therefore, the Court declines to reduce the fees by entirely eliminating the hours spent on the first and second preliminary injunction; motion to dismiss; motion to compel; summary judgment motion; and any other motions given the context of the case. The hours related to the motions cited by the City were part of the overall matter, and cannot be excised in such a fashion. *See Webb*, 330 F.3d at 1169 ("the district court should not have excluded all work on the motion on the ground that it was 'unrelated'" because the work done to prepare the motion on the same overall legal theories advanced in the case could have contributed to the final result achieved.). The same holds true for the claims of the individual plaintiffs. All of the claims were interrelated here given that

---

[7] The Court finds the City's reliance upon *Mays* in this regard inapposite. There, the plaintiff brought a civil rights case involving three separate incidents where he claimed the unlawful use of force by different officers of the Lewiston Police Department. The Court found it appropriate to segregate the hours spent on each of the three discrete claims. Here, however, the City inappropriately equates the concept of "claim" with the motions won or lost. The Ninth Circuit in *Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003), rejected a similar approach, relying extensively upon the Supreme Court's decision in *Hensley*.

the individual Plaintiffs stayed in the shelter. The fact that only two individual plaintiffs proceeded to trial does not reduce the overall significance.

The Court next examines Plaintiffs' overall success in the context of the litigation. First, the Court starts with the state law claims. Although the state law claims asserting, among other claims, breach of contract and breach of partnership involved the same core set of facts and universe of documents presented in support of Plaintiffs' FHA claims, they are, in another sense, unrelated to the FHA claims. The state law claims involved questions and interpretation of state law, not federal law. The claims were tried separately to the Court during a bench trial. Plaintiffs did not prevail on the remaining claims for equitable relief on any of those claims. Further, included with their state law claims for equitable relief were Plaintiffs' claims for equitable relief under the FHA and Idaho Constitution, which they lost also.

However, the Court will not exclude time spent prior to the jury trial that may be attributable, in whole or in part, to prosecution of the state law claims. Given the claims involved the same universe of facts and documents used in support of Plaintiffs' FHA claims, the Court declines to engage in that sort of exercise. Further, although Plaintiffs were not allowed to claim money damages under their state law claims, they were allowed to proceed. The Court cannot, therefore, isolate the hours expended prior to the jury trial on the state law claims for relief.

But, it would be unreasonable to award fees for hours the Court can excise and that it would consider excessive in the context of this litigation. The fee application in its present form does not include the time spent for the bench trial phase, which was solely

devoted to the equitable claims under state law and the equitable relief to be awarded under the FHA and Idaho Constitution. Considering the fee application in its present form does not include that time, the Court will not permit an application for any additional fees accounting for that time, as it would be unreasonable to award such fees.[8]

Turning now to the remaining hours, the Court agrees with the City that some of the billing was excessive and spent on matters unrelated to the litigation. Although Counsel may have wished to assist CHI and the individual plaintiffs with other business as it arose during the course of this litigation, such hours are not reasonably claimed. These hours include the entries in 2006 related to the Interfaith Sanctuary shelter's conditional use permit; obtaining IMPACT or FUNDSY grant funds; CHODO bylaws, repairs, and other matters relating to the CHODO;[9] CHI board issues; meetings with the Interfaith Sanctuary staff; and assistance to place displaced homeless residents.[10]

The City has compiled this uncompensated time beginning on page two[11] of Exhibit J to the affidavit of Phil Collaer. (Dkt. 402-2.) Although the Court considers some of the time related to the CHODO compensable given the damages to the CHODO

---

[8] The Court notes, however, that Plaintiffs' counsel submitted his fee application on October 24, 2012, and it does not include time spent preparing the fee application or the briefs submitted thereafter; or time spent preparing the brief in response to the City's post-trial motions, which was filed on December 3, 2012. In its discretion, the Court declines to permit Plaintiffs to amend their fee application for the time spent on post-trial motions, and instead will not allow that time so as to strike the appropriate balance for allowing the time spent on the unsuccessful state law claims during the course of the litigation but prior to the bench trial.

[9] The Court recognizes the CHODO was part of CHI's damages, as it alleged the City improperly seized it for a period of time after February of 2004, and when CHI regained possession, it needed repairs. But work on matters such as the CHODO bylaws is not reasonably related to the FHA claims asserted in this case.

[10] But the Court finds the time spent researching and reading cases regarding the Idaho constitution, reading Judge Stewart's rulings, time relating to the CHODO not lumped with other non-compensable time, and conferences with client representatives documented on Exhibit J, was time reasonably expended in this case. The CHODO, as mentioned, was part of CHI's damage claim. Judge Stewart, a visiting judge, presided over certain motion hearings in this matter, and conferences with clients are compensable.

[11] Page one of Exhibit J documents time Counsel spent in interviews with the media. The Court finds such time and hours were reasonably expended over the course of this litigation given the high profile nature of this matter, and the many news stories about the litigation over the years.

duplex were part of CHI's general damage claim, some of the entries regarding the CHODO are vague and lumped together with other uncompensable time. The Court therefore finds 92.8 hours billed prior to 2009 and 2.1 hours billed after 2009 by Mr. Belodoff, and .9 hours billed by Ms. Olson prior to 2009 (documented on Exhibit J), were unreasonably expended in this matter.[12]

A number of hours were spent upon uncompensable overhead. Again, the City has documented twenty time entries attributable to Mr. Belodoff that it claims was spent on uncompensable overhead activities. (Mem. at 13, Dkt. 402.) The Court agrees that Mr. Belodoff's time spent downloading court documents, organizing files, preparing docketing sheets, making travel arrangements, and the like, are uncompensable overhead tasks. This results in a deduction of 16.4 hours for time before 2009, and .3 hours for time after 2009.

Finally, the City objects to hours claimed by Plaintiffs' attorneys as "excessive." As an example, the City contends that Mr. Belodoff did not reasonably require 95.5 hours to prepare the initial complaint in this matter in addition to the 31 hours spent by Ms. Olson researching the FHA during the same time period. However, on this issue, the Court will defer to Plaintiffs' counsel's judgment. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("by and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case…").

---

[12] Deducting the hours noted results in a total fee of $1,546,982.00.

This leaves the Court with $1,541,122.00 in potentially compensable fees. Under *Hensley*, even if the party has not succeeded on all claims, as happened here, the court should award an amount that is reasonable in relation to the results of the suit. If the results are excellent despite the less than complete success, the fee applicant should obtain a fully compensatory fee, including compensation for hours devoted to the claims that were ultimately unsuccessful.[13] *Hensley*, 461 U.S. at 434. There is no precise rule for making such a determination, and the Court has discretion to simply reduce the award to account for the limited success. *Id.* at 436—37.

The City argues alternatively that Plaintiffs' award of attorney's fees should be significantly reduced given CHI's and the other named Plaintiffs' limited success. The City bases its argument on the fact that the jury awarded CHI damages based solely on one of its FHA claims, and the individual Plaintiffs were awarded no damages. The City contends, therefore, that Plaintiffs should recover 25% of the time devoted to hours, which either required apportionment or involved hours on issues which Plaintiffs clearly prevailed. Again, the Court declines, under *Hensley*, to apportion the issues between winners and losers before applying any reduction based upon "limited success."[14]

The Court finds that the remaining $1,541,122.00 attorney's fee is reasonable given the results obtained in this case, for several reasons. Plaintiffs' FHA claims, upon which CHI prevailed with a damage award, were all based upon a common core of facts

---

[13] To emphasize, *Hensley* does not support the City's piecemeal approach by claim or motion.

[14] *Hensley* expressly rejected this approach, commenting that "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon … provides little aid in determining what is a reasonable fee in light of all relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.11.

and related legal concepts. The court in *Hensley* recognized that "reasonable counsel in a civil rights case, as in much litigation, must often advance a number of related legal claims in order to give plaintiffs the best possible chance of obtaining significant relief." *Hensley*, 461 U.S. at 448 (Brennan, J., dissenting) (explaining that a court should evaluate a number of elements crucial to the calculation of attorney's fees). Thus, while CHI did not "win" every claim and every argument, and lost some as well, CHI ultimately advanced alternative legal theories under the FHA, and CHI won a significant damage award based upon its theories of discrimination and retaliation under the FHA. The Court has already accounted for CHI's loss on its state law claims for relief and equitable claims under the FHA and Idaho Constitution.

Next, Plaintiffs were a group of homeless men and women, and a nonprofit corporation. Plaintiffs' counsel was not a member of a private firm, and undertook this matter because of his position with ILAS. Had Plaintiffs hired a private firm in Boise, the Court could envision fees spanning the same period in the multiple millions of dollars. Plaintiffs' counsel had externs, interns, and staff at ILAS performing what would have been billable work if performed in a private firm, and no compensation is being requested for that time. No paraprofessional services were accounted for, thus there is no billing for such time that would ordinarily be compensable. Finally, counsel exercised billing judgment, and excluded redundant hours. Viewed in this light, the $1,541,122.00 attorney's fee request is more than reasonable. Citizens unable to hire a lawyer must

recover what it costs to vindicate their rights in court. *Hensley*, 461 U.S. at 445 (Brennan, J., dissenting).[15]

Finally, the degree of success obtained given the contentious nature of the litigation and its breadth is excellent. CHI was the only service provider in Boise offering comprehensive services at one location to Boise's homeless population. There currently is no other service provider, public or private, offering similar services in Boise. The $1,000,000 damage award will confer a benefit on the public and there is inherent public value in the damage award. The verdict advances the significant public policy interest of protecting vulnerable populations such as the homeless, and may provide an avenue for CHI to, once again, provide services to the homeless. Thus, although CHI did not obtain equitable relief in the form of rescinding the sale of the Community House property to the Boise Rescue Mission or obtaining a replacement building, the damage award may enable CHI to pursue the same objective via an alternate means. In that regard, although CHI did not prevail on its initial strategy of preventing or rescinding the sale of the building, it achieved an analogous result.

Additionally, the Court's directed verdict that the City's ordinance stating a preference to serve "homeless men," the significant damage award, and the jury's determination that the City's conduct violated the Idaho Constitution constitutes a reminder to government officials that housing and religious discrimination are serious

---

[15] Counsel indicates in his reply brief that ILAS, not any attorney, will receive the attorney fee award. Reply Mem. at 16 (Dkt. 410.) An award of attorney fees to a pro bono organization such as Legal Aid supports the enforcement scheme Congress designed; if no fees are awarded, the burden of the costs is placed upon the organization providing the services, and it may decline to bring such suits in the future. *Morrison v. C.I.R.*, 565 F.3d 658, 664 (9th Cir. 2009) (citing *Hairston v. R&R Apartments*, 510 F.2d 1090, 1092 (7th Cir. 1975)).

matters. The suit effected a change in policy because the City rescinded Ordinance 6404. The suit serves also as a reminder to city officials and others who establish and implement official policies regarding housing for low income persons, and citizens in general. And, the suit furthered the purposes Congress sought to achieve when it enacted the FHA.

**4.     Motion to Strike**

The City filed a motion to strike the Second Affidavit of Howard Belodoff filed in support of Plaintiffs' reply brief on the grounds that the affidavit was untimely filed with Plaintiffs' reply brief, not permissible under the rules, and because Plaintiffs did not obtain leave of the Court. (Dkt. 416.)  "The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings." *U.S. v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999). Specifically, "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Put simply, "[a] motion to strike is limited to pleadings." *Crisp*, 190 F.R.D. at 551 (citing *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). An affidavit is not a pleading and, "[t]hus, by the plain terms [of] Rule 12(f), the rule cannot be used to strike an affidavit." *Aftergood v. Central Intelligence Agency*, 355 F.Supp.2d 557, 564 (D.D.C. 2005). Furthermore, motions to strike are generally disfavored and rarely granted. *See Tonka Corp. v. Rose Art Industries*, 836 F.Supp.  200, 217 (D.N.J., 1993); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp.  945, 947 (C.D. Cal. 1990), *abrogated on other grounds, Stanton Road Assocs. v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993). Such motions

should not be granted "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Id.* (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1382 (1969)).

The Court finds the City's motion to strike improper here under the authorities cited above. Second, Plaintiffs' additional affidavit served to further explain the fee application to the Court. And finally, the Court did not extensively rely upon its contents to arrive at its conclusion, having found the initial affidavits and exhibits sufficient. But the Court did find the additional affidavit and exhibits, which were "identical versions" of the time spent organized in chronological order in an Excel format, helpful. The affidavit and exhibits were submitted to clarify any confusion created by the City's response, and Plaintiffs did not submit new evidence. The Court will deny the motion to strike.

**5.     Costs**

    **A.     *Taxable Costs***

Plaintiffs seek costs under 28 U.S.C. § 1920 in the amount of $6,459.55 (Dkt. 389.) Plaintiffs did not file a supplemental cost bill at any time during the post-trial proceedings. According to Dist. Idaho L. Rule 54.1, costs are allowed to the prevailing party and must be taxed in conformity with 28 U.S.C. §§ 1920-23. It is the Clerk's duty to determine the appropriate costs claimed, and a review of the Clerk's decision may be taken by the Court on a motion to retax pursuant to Fed. R. Civ. P. 54(d).

To preempt further motion practice, however, the Court will comment here. The Court will allow taxation of the copy costs in the amount of $2,000. The copies (all four sets) were required by the Court's order. (Dkt. 292.)

Witness Fawn Pettet will be allowed witness fees of $40. Although Ms. Pettet did not take the stand, if she attended court, such fees are taxable. Dist. Idaho L. Rule 54.1(4). Mr. Belodoff explained that Ms. Pettet was intended to be called as a rebuttal witness as to safety issues justifying the men-only policy, and to comment on Defendants' witnesses, but she did not testify because Defendants did not present testimony on the subject. Rule 54.1 does not require that the witness testify for travel costs to be reimbursed. But the cost of airfare in the amount of $598.70 is not taxable under Rule 54.1(4), because it is not reflective of mileage. Further, Ms. Pettet flew from Tennessee. Mileage fees for travel outside the District must not exceed 100 miles each way without prior Court approval. Those fees are properly excluded from the Bill of Costs. The Court will direct the Clerk approve the Bill of Costs accordingly. (Dkt. 389.)

B. *Other Costs*

However, Plaintiffs seek additional costs, as part of their attorney fee award under 42 U.S.C. § 3613(c)(2), as costs that the Court cannot tax under 28 U.S.C. § 1920, in the amount of $15,015.06. These costs include costs for shipping briefs to the Court of Appeals; lodging costs for counsel to attend the Ninth Circuit arguments; recording fees; certified copy fees; process server fees; expert witness fees; copy costs; office supply costs; and travel costs for indigent witnesses to attend trial.

The City contends costs are not awardable because "Plaintiffs were not the overall prevailing party." The Court rejects this argument under *Hensley*, as explained above. Plaintiffs are the prevailing party, even if they did not win every motion and prevail on each theory or claim.

Second, the City objects to an award of costs on the grounds that costs are not allowed under the FHA. But the FHA specifically allows the prevailing party a "reasonable attorney's fee and <u>costs</u>." 42 U.S.C. § 3613(c)(2). Prevailing plaintiffs are allowed to recover non-taxable costs if an expense-shifting statute authorizes such an award. *Grove v. Wells Fargo*, 606 F.3d 577, 580 (9th Cir. 2010). The FHA is one of those statutes, and therefore costs falling outside of those enumerated in 28 U.S.C. § 1920 are allowed.

Turning to the City's specific objections, the City objects to Fawn Pettet's air travel cost of $598.70 as falling outside the parameters of 28 U.S.C. § 1920. Plaintiffs alternatively request this travel be awarded under 42 U.S.C. § 3613(c)(2). The Court will allow the costs as explained below, as they fall within the parameters of witness travel costs to which the City did not object.

**Shipping ($531.38):** The City objects to $531.38 in costs for shipping, travel, and lodging required to prosecute the interlocutory appeals in this matter, on the grounds that Plaintiffs should have requested these costs from the Court of Appeals. By not doing so, the City argues Plaintiffs waived the right to claim them. However, postage, air courier and attorney travel expenses, although not explicitly listed in 42 U.S.C. § 3613(c)(2), would ordinarily be billed to a fee paying client, and are allowable under other fee statutes. *Keith v. Volpe*, 644 F.Supp. 1317, 1326 (C.D. Cal. 1986) (allowing delivery charges, travel, air courier costs, and other costs "ordinarily billed to a client" as costs under the FHA). These costs will be allowed.

**Recordings/Certified Copies ($230.12):** Third, the City objects to the costs for filing lis pendens, and to record resolutions, which the City claims were unnecessary and unrelated to the conduct of the litigation. Plaintiffs responded that the cost to file the lis pendens under state law was necessary and related to the litigation, noting that the Court denied Defendants' motion to quash the lis pendens. (Dkt. 163.) Plaintiffs did not address the recording costs claimed for the resolutions. The Court finds that the recording costs for the lis pendens is proper given that the lis pendens was recorded in furtherance of the litigation. But the $81.00 for "recording resolutions" is not allowed. The City did not object to the other costs claimed in this category, which included the cost to obtain public records from the City of Boise and Ada County Sheriff's Department. Costs of $149.12 will be allowed.

**Process Server Costs ($90):** The City did not object to these costs. Costs in the amount of $90 will be allowed. 28 U.S.C. § 1920(1); Dist. Idaho L. Rule 54.1(c)(1).

**Expert Witness Fees ($10,250.00):** The City objects to the costs claimed for expert fees because 42 U.S.C. § 3613 does not allow them over and above the statutory rate of $40. Plaintiffs argue to the contrary, contending that § 3613(c)(2) should be interpreted consistent with other fee-shifting statutes, including 42 U.S.C. § 1988, and should be allowed under the FHA. But fees for experts' services are not allowed under § 1988, nor would they be permitted under 28 U.S.C. § 1920 or the FHA absent express authority explicitly allowing expert services fees as part of "costs." *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991); *Huntington Branch NAACP v. Town of Huntington*, 762 F.Supp. 528, 530 (E.D.N.Y. 1991) (disallowing expert witness fees

claimed under the FHA pursuant to *Casey*, and permitting only the statutory $40 witness fee). Costs of $40 will be allowed in this category. The City's objection that no expert fees should be allowed for Mark Richey because his testimony related to the Plaintiffs' unsuccessful establishment clause claim is without merit under *Hensley*.

The City did not object to the $2,928.00 in copy costs claimed for copies of Ninth Circuit briefs and to prepare the excerpts of record; $439.26 in office supplies; and $546.30 for witness travel costs, such as bus tickets, for witness to attend trial. Given there was no objection to the bus tickets for Jay Banta's travel, the Court will allow the cost of the airfare for Ms. Pettet. Although she did not testify, the cost of her travel to attend trial and be available as a rebuttal witness would have been a cost ordinarily billed to a fee paying client. *Keith*, 644 F.Supp. at 1326. Accordingly, costs of $1,145 will be allowed for travel. The remainder of the costs in these categories will be allowed.

## CONCLUSION

The Court determines that a reasonable attorney's fee after arriving at the appropriate lodestar calculation is $1,541,122.00. Costs other than those set forth on the Bill of Costs will be allowed in the amount of $5,322.64 under 42 U.S.C. § 3613(c)(2).

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Motion for Attorney Fees (Dkt. 390) is **GRANTED IN PART AND DENIED IN PART.**

2) Defendants' Motion to Strike (Dkt. 416) is **DENIED**.

Dated: **March 25, 2014**

Honorable Candy W. Dale
United States Magistrate Judge